**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-939-DDD-SKC

BELLA HEALTH AND WELLNESS, et al.,
     Plaintiffs,
v.

PHIL WEISER, in his official capacity as Attorney General of Colorado, et al.,
     Defendants.

---

**STATE DEFENDANTS' RESPONSE TO EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

---

    Philip J. Weiser, Attorney General of Colorado, and members of the Colorado
Medical Board and Colorado State Board of Nursing, each in their official
capacities, file this response to Plaintiffs' emergency motion for a temporary
restraining order and preliminary injunction [Doc. 7, filed April 14, 2023].

    Bella Health and Wellness and its co-plaintiffs (together, "Bella Health") seek
a broad preliminary injunction enjoining enforcement of a new Colorado law
governing so-called abortion reversal treatments. The propriety of such treatments
has been questioned by professional medical associations, and this Court's order
granting a temporary restraining order recognizes the efficacy of such treatments is
debatable. Given this debate, the General Assembly prudently instructed Colorado's
medical regulators to engage in a robust rulemaking process, with stakeholder
input, to determine whether abortion reversal treatments constitute a generally
accepted standard of practice. If it does, as Bella Health contends, the harm it has

sued to prevent will not come to pass. To avoid initiating premature enforcement actions that may ultimately prove unnecessary, Defendants have determined they will not enforce the new Colorado law against any licensee until after the rulemaking contemplated by the legislation is complete. As a result, Bella Health faces no credible reason to fear prosecution under the new Colorado law, depriving it of standing, and this case is not ripe for judicial review.

In addition, Bella Health misstates the effect of the new law on the Colorado Consumer Protection Act, rendering it even more unlikely to succeed on the merits. Finally, the requirements for *Burford* abstention are easily met here, counseling strongly in favor of this Court abstaining from review. Accordingly, the Court should deny Bella Health's request for a preliminary injunction.

## BACKGROUND

### A.     Senate Bill 23-190.

On April 14, 2023, Governor Polis signed Senate Bill 23-190 ("the Act") into law. The Act does two things following its legislative declaration. First, it amends the Colorado Consumer Protection Act ("CCPA") by making it a deceptive trade practice for persons to advertise that they provide abortions or emergency contraceptives when they don't. *See* Exhibit 1 (SB 23-190), § 2. Specifically, it states:

> A person engages in a deceptive trade practice when the person makes or disseminates to the public or causes to be made or disseminated to the public any advertisement that indicates that the person provides abortions or emergency contraceptives, or referrals for abortions or emergency contraceptives, when the person knows or reasonably should have known, at the time of publication or dissemination to the public of

the advertisement, that the person does not provide those specific services.

*Id.* By its terms, this part of the Act does not include medication abortion reversals.

Second, the Act directs three state boards to develop rules "concerning whether engaging in medication abortion reversal is a generally accepted standard of practice." *Id.*, § 3. It further provides that anyone licensed by these boards—the Colorado Medical Board, the State Board of Pharmacy, and the State Board of Nursing—"engages in unprofessional conduct or is subject to discipline" if the licensee "provides, prescribes, administers, or attempts medication abortion reversal," unless the boards enact rules "finding that it is a generally accepted standard of practice to engage in medication abortion reversal." *Id.* The Act instructs the boards to promulgate such rules no later than October 1, 2023. *Id.*

### B.     The Colorado Medical Board and Nursing Board.

The Medical Board is charged with regulating medical practitioners to protect Coloradans from the unauthorized, unqualified, and improper practice of medicine. Colo. Rev. Stat. § 12-240-102. To that end, the Medical Board holds rulemaking powers and authority to conduct investigations related to the practice of medicine. § 12-240-106(1)(a)-(b). The Medical Board is a "type 1 entity," meaning that it exercises its statutory powers independently of the head of the principal department. §§ 12-240-105(1)(a), 24-1-105(1)(b).

The Medical Board also holds discretionary authority to pursue discipline against licensees. *See* § 12-20-404(1) (stating that a regulator "may" impose

discipline for conduct that constitutes grounds for discipline or unprofessional conduct); § 12-240-125(4)(c)-(5)(c)(III) (authorizing the board to resolve its investigations of licensees with outcomes ranging from dismissal to revocation). Consistent with this authority, the Medical Board evaluates each allegation of unprofessional conduct on a case-by-case basis. Exhibit 2 (Delp Decl. at 4 ¶ 10).

Similarly, the State Board of Nursing is vested with authority to regulate the practice of nursing in the interest of public protection and to safeguard the life, health, property, and public welfare of Coloradans. Colo. Rev. Stat. § 12-255-102(1). In regulating the practice of nursing, the Nursing Board holds discretionary authority to take disciplinary action upon proof that a licensee engaged in an act that constitutes grounds for discipline under section 12-255-120. *See* § 12-255-107(1)(c)(I), (1)(h). Consistent with this authority, the Nursing Board evaluates each allegation of substandard nursing care on a case-by-case basis. Exhibit 2 (Delp Decl. at 4 ¶ 10). The Nursing Board, which is a "type 1 entity," also holds authority to adopt rules to carry out the purposes of the Nurse and Nurse Aide Practice Act. § 12-255-107(1)(j).

Because the Medical Board and Nursing Board are charged with ensuring the proper practice of medicine and nursing in Colorado, they evaluate complaints against licensees to ensure their care meets generally accepted standards of practice. Acts or omissions by a licensee that fail to meet generally accepted

standards of practice constitute one of the many bases on which the Medical and
Nursing Boards may conclude a licensee has engaged in unprofessional conduct. *See*
§§ 12-240-121(1)(j), 12-255-120(1)(f).

The Act instructs the boards to engage in rulemaking to determine whether
abortion reversal treatment constitutes a generally accepted standard of practice.
Exhibit 1, § 3. To avoid creating divergent tracks of administrative enforcement
(one subject to administrative regulation and one not), the Medical and Nursing
Boards have each determined that they will not enforce the Act against licensees
until they have completed the rulemaking process contemplated by section 3 of the
Act. Exhibit 2 (Delp Decl. at 4 ¶ 10). As such, no licensee will be subject to
professional discipline under the Act until after final rules are promulgated. The
rulemaking process will permit the boards to hear from interested stakeholders,
medical and scientific experts, patients, and others on the efficacy of abortion
reversal treatments in a wide array of settings. Armed with this body of evidence,
the subject-matter experts on the boards will then be able to craft final rules that
govern abortion reversal treatments in Colorado. The boards anticipate the rules
required by the Act will be promulgated no later than September 2023. *Id.*

C.     **The Attorney General's and District Attorneys' authority under
       the Colorado Consumer Protection Act.**

The Attorney General and district attorneys of the state are authorized to
enforce the CCPA. *See* Colo. Rev. Stat. § 6-1-103. Section 6-1-105 describes the
unfair, unconscionable, and deceptive trade practices that violate the CCPA. Under

the CCPA, government enforcers may seek injunctive relief, equitable monetary relief, and civil money penalties for violations of the statute. §§ 6-1-110, 112.

As discussed below, the Act does not create a new *per se* violation of the CCPA for the Attorney General or district attorneys to enforce. To the extent the Act may be interpreted differently, however, in an abundance of caution the Attorney General's Office and the named district attorneys have each determined they will not bring any enforcement action under the CCPA for a *per se* violation of the Act until the boards conclude their rulemaking as required by the legislation. *See* Exhibit 3 (Hanlon Leh Decl. at 4 ¶ 12); Exhibit 4 (Dougherty Decl. at 4 ¶ 12); Exhibit 5 (McCann Decl. at 4 ¶ 12).[1]

## ARGUMENT

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Lawrence v. Colorado*, 455 F. Supp. 3d 1063, 1070 (D. Colo. 2020) (quotations omitted). A plaintiff seeking a preliminary injunction must establish (1) a substantial likelihood of success on the merits, (2) that they will suffer irreparable injury if the preliminary injunction is denied, (3) that the threatened injury outweighs the injury caused by the injunction, and (4) that an injunction is not adverse to the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20

---

[1] Upon conferral with counsel for Defendant John Kellner, District Attorney for the Eighteenth Judicial District, counsel indicated that Mr. Kellner's office would be unaffected by a preliminary injunction because it does not bring deceptive trade practice cases under the CCPA. *Accord* Doc. 30 at 3.

(2008). Bella Health bears the burden of proof to demonstrate that each factor tips

in its favor. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188-89 (10th Cir. 2003).

## I.   Bella Health is not substantially likely to succeed on the merits.

### A.   Bella Health lacks standing because it faces no credible threat of enforcement, rendering it unlikely to succeed on the merits.

Under Article III, federal courts lack jurisdiction to "pass upon abstract,

intellectual problems." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (quoting

*Coleman v. Miller*, 307 U.S. 433, 460 (1939) (opinion of Frankfurter, J.)). No matter

how vehemently a plaintiff may disagree with government action, it must

demonstrate "a genuine, live dispute" stemming from that action, affecting its own

interests, before it can invoke federal court jurisdiction. *Carney*, 141 S. Ct. at 498.

The standing doctrine requires the plaintiff to "prove that he has suffered a

concrete and particularized injury that is fairly traceable to the challenged conduct,

and is likely to be redressed by a favorable judicial decision." *Hollingsworth v.

Perry*, 570 U.S. 693, 704 (2013). "As the Supreme Court aptly put it, standing

reduces to one question: 'What's it to you?'" *Lupia v. Medicredit, Inc.*, 8 F.4th 1184,

1190 (10th Cir. 2021) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203

(2021)). The touchstone of this inquiry is whether a plaintiff suffers concrete harm.

"No concrete harm, no standing." *TransUnion LLC*, 141 S. Ct. at 2200.

In a narrow category of cases, a plaintiff who fears enforcement of a

challenged law may seek pre-enforcement review, as Bella Health does here. *See

Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014) ("*SBA List*"). But to

preserve the concrete harm requirement, pre-enforcement challenges are limited to those cases where enforcement is "certainly impending, or there is a substantial risk that the harm will occur." *Id.* at 158 (quotations omitted); *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 873 (10th Cir. 2020) ("Our pre-enforcement standing case law requires a plaintiff to show a credible and imminent threat of enforcement to have standing[.]"). The "'mere presence on the statute books of an unconstitutional statute, in the absence of enforcement or credible threat of enforcement, does not entitle anyone to sue, even if they allege an inhibiting effect on constitutionally protected conduct prohibited by the statute.'" *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007) (quoting *Winsness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006)).

Thus, to maintain a pre-enforcement challenge, a plaintiff "must typically demonstrate (1) 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by the challenged statute,' and (2) that 'there exists a credible threat of prosecution thereunder.'" *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 545 (10th Cir. 2016) (quoting *SBA List*, 573 U.S. at 159). In analyzing whether a credible threat of prosecution exists, the courts consider whether the plaintiff has shown past enforcement against the same conduct, whether authority to initiate charges is limited to a prosecutor or agency,

and whether the state disavowed future enforcement. *See Peck v. McCann*, 43 F.4th 1116, 1132 (10th Cir. 2022).[2]

Here, Bella Health lacks standing because it faces no credible threat of enforcement. Bella Health points to no past enforcement against other providers of abortion reversal treatments. Moreover, each defendant has stated they will not enforce the Act until, at minimum, the rulemaking contemplated by the Act is complete. *See supra* at 5-6. As indicated, that rulemaking may result in a determination that abortion reversal treatment constitutes a generally accepted standard of practice in certain circumstances. *See* Exhibit 1, § 3. By disavowing enforcement pending this determination, Defendants sensibly avoid creating a tangled web of enforcement with divergent tracks—one subject to administrative regulation and one not.

This disavowal of enforcement defeats any credible threat of prosecution under sections 1 and 3 of the Act. *See Mink*, 482 F.3d at 1254-55 (finding no standing where "the district attorney disclaimed an intent to prosecute immediately after the lawsuit was filed"); *accord D.L.S. v. Utah,* 374 F.3d 971 (10th Cir. 2004) (disavowal of an intent to enforce a criminal statute against the plaintiff after the complaint was filed was enough to defeat standing). While Bella Health might argue that *nonparties* might attempt to enforce the Act, only the Medical Board and

---

[2] Bella Health does not specify whether its alleged injury is based on a chilling effect or a credible threat of enforcement, but the same analysis applies either way. *See Peck*, 43 F.4th at 1129 n.9.

Nursing Board hold statutory authority to bring professional licensing charges against their licensees. *See* Colo. Rev. Stat. §§ 12-20-404(1), 12-240-106(1), 12-255-107(1)(c). Both have disavowed enforcement under the Act until their rulemaking is complete, which is not anticipated until September 2023. Exhibit 2 (Delp Decl. at 4 ¶ 10).

As to enforcement under the CCPA, section 1 of the Act does not create a *per se* violation of the CCPA for the Attorney General or district attorneys to enforce. *See infra*, Argument § I.C. But if the Court interprets the Act differently, the Attorney General's designee and named district attorneys have each indicated they will not bring an enforcement action that treats progesterone treatment for abortion pill reversal as a *per se* violation of the CCPA until, at minimum, the relevant boards conclude their rulemaking. *See* Exhibit 3 (Hanlon Leh Decl. at 4 ¶ 12); Exhibit 4 (Dougherty Decl. at 4 ¶ 12); Exhibit 5 (McCann Decl. at 4 ¶ 12); *see also supra* at 6 n.1.

As to enforcement under the CCPA by unnamed district attorneys or private citizens, it's not necessary or possible for Defendants to eliminate *all* risk of enforcement by unnamed actors. *Mink*, 482 F.3d at 1255 ("It is not necessary for defendants [ ] to refute and eliminate all possible risk that the statute might be enforced to demonstrate a lack of a case or controversy." (quotations omitted)); *Winness*, 433 F.3d at 733 (the risk need not be "reduced to zero"). Such unnamed actors would "not be bound" by injunctive relief issued against Defendants here in

any event. *Winsness*, 433 F.3d at 733. At bottom, eliminating *credible* threats of enforcement through specific disavowals by the named defendants is all that is necessary to show lack of standing. Defendants have done so here.

### B. If Bella Health has standing, the Court should decline jurisdiction under the prudential ripeness doctrine.

Even if the Court concludes that Bella Health has standing, the Court should still decline jurisdiction under the prudential ripeness doctrine.

The prudential ripeness doctrine "contemplates that there will be instances when the exercise of Article III jurisdiction is unwise." *Wyoming v. Zinke*, 871 F.3d 1133, 1141 (10th Cir. 2017). The doctrine is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect . . . agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quotations omitted). A court should decline jurisdiction for lack of ripeness when the claim rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotations omitted); *accord United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019).

Even assuming a statute is constitutionally problematic, "the mere existence" of a such a provision "is ordinarily not enough to sustain a judicial challenge, even by one who reasonably believes that the law applies to him and will be enforced

against him." *Cabral*, 926 F.3d at 694 (quotations omitted); *see also Nat'l Park Hospitality Ass'n*, 538 U.S. at 808 ("[A] regulation is not ordinarily considered . . . 'ripe' for judicial review . . . until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990))). For these reasons, this Court declines jurisdiction under the prudential ripeness doctrine when an administering agency has not yet developed implementing guidelines for a statute that a plaintiff claims is unconstitutional. *See Hardre v. Markey*, No. 20-cv-03594-PAB-KMT, 2021 WL 1541714, at *4 (D. Colo. Apr. 19, 2021) (declining jurisdiction because "it is presently unknown how several key provisions of the Act will be implemented" by the Colorado Office of Economic Development and International Trade).

The Court analyzes prudential ripeness "'by evaluating both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Id.* at *5 (quoting *Zinke*, 871 F.3d at 1141). In analyzing the fitness for review, a court is to "consider a number of factors, such as whether the issue is a purely legal one, whether the agency decision in dispute was final, and whether further factual development would significantly advance [the] ability to deal with the legal issues presented." *Id.* (quotations omitted). Each factor weighs against the Court prematurely exercising jurisdiction here.

First, as to fitness for review, the issue is not a purely legal question but rather involves complicated questions of scientific and medical judgment that will require extensive expert testimony and factual development. The American College of Obstetricians and Gynecologists ("ACOG") has said, for example, that the so-called abortion reversal procedure is "unproven and unethical,"[3] and this Court has recognized that its efficacy "appears debatable." Doc. 8 at 5. It's precisely because the procedure is subject to such debate that the General Assembly wisely instructed Colorado regulators—those with subject-matter expertise—to engage in a robust rulemaking process with stakeholder input to determine whether the procedure should be recognized as a generally accepted standard of practice. Exhibit 1, § 3.

If so recognized, and absent separate misconduct, licensees at Bella Health will not be subject to professional discipline in Colorado for providing progesterone to maintain a pregnancy after the patient takes mifepristone. In other words, the feared outcome that Bella Health has sued to prevent will "not occur at all." *Texas*, 523 U.S. at 300 (quotations omitted). But that rulemaking process is nascent and the outcome is unknown, rendering this case unfit for judicial review.[4] *See, e.g.,*

---

[3] ACOG, *Facts Are Important: Medication Abortion "Reversal" is Not Supported by Science* (Aug. 2017), *available at*: https://tinyurl.com/2cpmwbmn.

[4] Moreover, the information gleaned through the administrative rulemaking process, regardless of its outcome, will "significantly advance" the Court's ability to adjudicate the legal issues based on fully developed facts (should the need arise). *Zinke*, 871 F.3d at 1141 (quotations omitted). By contrast, a court order enjoining

*Farrell-Cooper Min. Co. v. U.S. Dep't of the Interior*, 728 F.3d 1229, 1235 (10th Cir. 2013) (finding judicial review could "disrupt the administrative process" where the Department of Interior's "ongoing administrative review" could "well agree" with plaintiffs' position) (quotations omitted).

Second, no hardship to the parties will occur if the Court withholds consideration pending the outcome of the rulemaking. Under this factor, the Court considers whether a party would suffer "significant costs, financial or otherwise," and whether the defendant has "taken some concrete action that threatened to impair—or had already impaired—the plaintiffs' interests." *Zinke*, 871 F.3d at 1143 (quotations omitted).

Here, Bella Health will not suffer any costs by waiting for the rulemaking's outcome. Nor have Defendants taken or threatened to take any action that impairs Bella Health's interests while the rulemaking plays out. To the contrary, Defendants have made clear they will not enforce the Act or subject licensees at Bella Health to professional discipline under its provisions before the rulemaking concludes. Even then, enforcement will depend on the outcome of the rulemaking and, as in every complaint, a case-by-case evaluation of the specific facts. Accordingly, no party will suffer hardship by this Court withholding review pending the rulemaking's outcome. *See Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515,

---

Defendants at this early stage before rulemaking has commenced would "inappropriately interfere with further administrative action." *Id.*

550 (1937) ("[A] court of equity may refuse to give any relief when it is apparent that that which it can give will not be effective or of benefit to the plaintiff."); *Hardre*, 2021 WL 1541714, at *6 (finding "no apparent harm to plaintiffs in having to wait until OEDIT promulgates its standards for eligibility").

### C. Bella Health is not substantially likely to succeed because it mischaracterizes the Act's amendment to the CCPA and, in any event, does not face a credible threat of injury.

Bella Health asserts that the Act amends the CCPA to prohibit advertising or offering its abortion pill reversal treatment. Doc. 1 at 36 ¶ 145 ("SB 23-190, section 1 prohibits publicizing abortion pill reversal."); Doc. 7 at 26 (similar). This is false. The Act's *legislative declaration* "finds and declares" that the CCPA's "prohibition on deceptive trade practices applies to" advertising or providing "medication abortion reversal." Exhibit 1, § 1. But such legislative declarations are not substantive law.

State legislatures and Congress regularly describe their considerations, intents, rationales, and views on laws they enact through declarations contained in their legislation. And for good reason—in Colorado, for example, a statute's legislative declaration may be used to construe an ambiguous statute. Colo. Rev. Stat. § 2-4-203(1)(g). But "[w]hen the language [of a statute] is clear and unambiguous," "the statute must be applied as written." *Van Waters & Rogers, Inc. v. Keelan*, 840 P.2d 1070, 1076 (Colo. 1992). This is because legislative declarations are mere aids in statutory construction. They do not change the law. Antonin Scalia

& Brian Garner, *Reading Law* 217 (Thompson/West 2012) (legislative preamble is "an aside" and "*not* part of the congressionally legislated . . . set of rights and duties."); *see also United States v. Sterling Islands, Inc.*, 391 F. Supp. 3d 1027, 1043 n.4 (D. N.M. 2019) ("A concurrent or joint resolution of [the] legislature is not 'a law.'" (citing cases)); *Uzzell v. Lunney*, 104 P. 945, 949 (Colo. 1909) ("The fact that the board of county commissioners" "saw fit to pass [a] resolution . . . does not change the law."); *State v. Conkling*, 19 Cal. 501, 512 (1861) ("[I]t is very obvious that a mere legislative declaration . . . is not a law" because "there can be no law without a legislative intent that it become such[.]"); *cf. Phelan v. Laramie Cnty. Cmty. Coll. Bd. of Trustees*, 235 F.3d 1243, 1248 (10th Cir. 2000) (censure by a board did not violate plaintiff's First Amendment rights because the censure "carried no penalties" nor did it "restrict her opportunities to speak").

A finding that legislative declarations and resolutions are the same as enforceable law would be an extraordinary step. The legislature knows how to enact laws—had the General Assembly intended to create a statute making "advertising for or providing . . . medication abortion reversal" unlawful, it would have done so by substantively amending the CCPA. *See Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1942 (2022) ("Congress knows exactly how to adopt into federal law the terms of another writing or resolution when it wishes.") (Gorsuch, J.). In fact, in the 2022 legislative session, the legislature expressly amended the CCPA to add new

violations in seven different bills.[5] Each bill amended the words of the CCPA statute. Section 1 of the Act does not.

The non-substantive and nonbinding nature of legislative declarations applies with special force here. Section 1 of the Act will not be codified in the Colorado Revised Statutes. *See* Exhibit 1, § 1. The Colorado Revised Statutes are "the official statutes of the state of Colorado" and are "the only publication of the statutes entitled to be considered as evidence in Colorado courts." Colo. Rev. Stat. § 2-5-118(1)(a). They publicize "all laws of the state of Colorado of a general and permanent nature." § 2-5-101(1). And while legislative declarations sometimes are codified in the Colorado Revised Statutes,[6] section 1 of the Act is not.

The Act's only actual amendment to the CCPA is in section 2, which prohibits a business from advertising abortion or emergency contraception services when they do not offer those services. *See* Exhibit 1, § 2 (amending Colo. Rev. Stat. § 6-1-734(2)). This amendment is not challenged by Bella Health in its motion, nor does Bella Health assert that it engages in such advertising. This makes sense. The amendment in section 2 is simply a new flavor of the same prohibition that has protected Coloradans since the CCPA was first enacted: businesses operating in Colorado must truthfully describe the services they offer. And this language is

---

[5] H.B. 22-1099, H.B. 22-1242, H.B. 22-1287, S.B. 22-205, H.B. 22-1031, H.B. 22-1284, H.B. 22-034, 73rd Gen. Assem., 2nd Reg. Sess. (Colo. 2022).

[6] *See, e.g.*, Colo. Rev. Stat. §§ 22-69-102, 24-72.4-101.

unambiguous—it makes it a CCPA violation to falsely advertise abortion services, but it says nothing about the practice of medication abortion reversals. Accordingly, this statute must be applied as written, which leaves unaffected Bella Health's ability to discuss and advertise medication abortion reversals.

Because the Act does not do what Bella Health says it does, Bella Health faces no credible threat prosecution under the Act. The Act does not amend the CCPA to make advertising or offering medication abortion reversal a *per se* deceptive trade practice. Rather, Bella Health is subject to the same prohibitions as all other providers of medical services in the state—it must not knowingly or recklessly make a false representation as to the benefits of its services, or engage in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice. Colo. Rev. Stat. § 6-1-105(1)(e), (rrr).

Finally, even if this Court were to find that the Act's legislative declaration has the force of law, Bella Health still faces no credible threat of enforcement. As discussed, pending the rulemaking's outcome by the boards, none of the CCPA enforcers sued here will bring a deception action on the grounds that abortion pill reversal treatment is a *per se* violation of the CCPA. *See supra* at 6, 10.

### D.     The Court should abstain from review under *Burford*.

Next, even putting aside the above standing and ripeness problems, this Court should abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

"Under the *Burford* abstention doctrine, federal courts must decline to interfere with the proceedings of state administrative agencies when the court is sitting in equity, timely and adequate state-court review is available, and either 'there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar' or 'the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Wildgrass Oil & Gas Comm. v. Colorado*, 843 F. App'x 120, 122 (10th Cir. 2021) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989)).

It's difficult to imagine a case more perfectly suited for applying *Burford* abstention than here. This Court is sitting in equity, and after *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022), it's the prerogative of the states to regulate abortions. Such regulations carry a "strong presumption of validity." *Id.* at 2284 (quotations omitted). The Colorado legislature has seized that opportunity and instructed its medical regulators to engage in rulemaking to determine whether abortion reversal treatment constitutes a generally accepted standard of practice. Colorado's interest in developing a coherent policy on this difficult question undeniably constitutes an issue of "substantial public import" and its outcome transcends the result in this particular case. *Wildgrass*, 843 F. App'x at 122.

Moreover, federal court review at this stage—particularly an injunction—would disrupt the upcoming rulemaking by placing a judicial thumb on the scale even before Colorado's subject-matter experts have the opportunity to review the substantial body of work underlying abortion reversal treatments. Last, timely and adequate state court review is available, both for the rulemaking and any licensure action. *See, e.g.,* Colo. Rev. Stat. § 24-4-106.

Accordingly, because this case squarely fits *Burford*'s requirements, this Court should abstain from review.

## II.     Bella Health will not suffer irreparable harm absent a preliminary injunction.

For the same reasons, Bella Health will not suffer irreparable harm absent a preliminary injunction. *See Free the Nipple v. City of Ft. Collins*, 916 F.3d 792, 806 (10th Cir. 2019) (stating the first and second preliminary-injunction prongs collapse in constitutional claims).

A plaintiff seeking the extraordinary remedy of a preliminary injunction must establish more than simply the "injury" that is required to have standing to bring the case in the first place. The plaintiff must show that it will suffer irreparable harm that is "certain, great, actual, and not theoretical.*" Heideman*, 348 F.3d at 1189. "Purely speculative harm will not suffice." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009). Instead, the party seeking preliminary injunctive relief "must show that the injury complained of is of such *imminence* that

there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman*, 348 F.3d at 1189.

Applying these precedents, this Court has not hesitated to deny preliminary injunctive relief when the plaintiff falls short in showing irreparable harm. *See, e.g.*, *Postnet Int'l Franchise Corp. v. Wu*, 521 F. Supp. 3d 1087, 1104-05 (D. Colo. 2021); *SEBO America, LLC v. K&M Housewares & Appliances Inc.*, No. 20-cv-03683-DDD-NRN, 2021 WL 1329077, at *2 (D. Colo. March 18, 2021).

Here, Bella Health has not shown irreparable harm for the same reasons that it lacks standing and the case is not ripe. Defendants have disavowed enforcement of the Act until, at minimum, the boards determine whether abortion reversal treatment constitutes a generally accepted standard of practice. The irreparable injury that Bella Health fears relies on contingent future events that may not occur as anticipated, or indeed may not occur at all. Bella Health's reliance on speculative harm does not justify the extraordinary remedy of a preliminary injunction.

Bella Health also argues that the loss of First Amendment freedoms, standing alone, gives rise to irreparable injury. Doc. 7 at 32. But this ignores that the Court must "nonetheless engage in [the] traditional equitable inquiry as to the presence of irreparable harm in such a context[.]" *Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016). Here, Bella Health's decision to remove information about abortion reversal treatment from its website was the product of its own choice, not government coercion. Bella Health made no effort to contact its governing

regulatory boards to ascertain whether the Act would be enforced before the boards completed their rulemaking. Exhibit 2 (Delp Decl. at 5 ¶ 12). Had it done so, Bella Health would have learned that it's under no threat of imminent irreparable injury. Under these circumstances, Bella Health has failed to establish irreparable injury.

## III. The balance of the equities and public interest weigh heavily in Colorado's favor.

The last two factors, the balance of equities and the public interest, "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). As detailed above, Bella Health is not currently suffering any injury from the Act, so the balance of harms and public interest tilt in Defendants' favor. *See Magluta v. U.S. Fed. Bureau of Prisons*, No. 11-CV-02381-RM-KLM, 2013 WL 4781596, at *4 (D. Colo. Sept. 6, 2013) (holding that where plaintiff "will suffer no injury if an injunction is not entered," the balance of harm factor weighs in defendants' favor). Colorado's legislature has declared what it believes to be the public interest by passing the Act, and it is in a better position than Bella Health or this Court to determine the public interest. *See Fish*, 840 F.3d at 755 ("our democratically elected representatives are in a better position than this Court to determine the public interest"); *accord Thompson v. Dewine*, 959 F.3d 804, 812 (6th Cir. 2020) ("giving effect to the will of the people by enforcing the laws they and their representatives enact serves the public interest"). Therefore, this factor also weighs against a preliminary injunction.

## CONCLUSION

For these reasons, Bella Health's motion for a preliminary injunction should be denied.

Dated: April 20, 2023

PHILIP J. WEISER
Attorney General

s/ Grant T. Sullivan

*Grant T. Sullivan*, Assistant Solicitor General
*Michael T. Kotlarczyk,* Sr. Assistant Attorney General
*Abigail Hinchcliff*, First Assistant Attorney General
Counsel to Attorney General Philip J. Weiser

*Brian Urankar*, Assistant Attorney General
Counsel to the Colorado Medical Board

*Elizabeth Kenny*, Assistant Attorney General
Counsel to the Colorado State Board of Nursing

1300 Broadway
Denver, Colorado 80203
Telephone: (720) 508-6349
Email: grant.sullivan@coag.gov;
michael.kotlarczyk@coag.gov
abigail.hinchcliff@coag.gov
brian.urankar@coag.gov
elizabeth.kenny@coag.gov

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).


**CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2023, I served a true and complete copy of the foregoing **DEFENDANTS' RESPONSE TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** upon all parties herein by e-filing with the CM/ECF system maintained by the court and/or email.


*s/* Xan Serocki
*Xan Serocki*