IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Action No. 1:23-cv-00939-DDD-SKC

BELLA HEALTH AND WELLNESS, et al.,

    Plaintiffs,

v.

PHIL WEISER, in his official capacity as Attorney General of Colorado, et al.,

    Defendants.

---

**ORDER DENYING PLAINTIFFS' MOTION
FOR A PRELIMINARY INJUNCTION**

---

The plaintiffs move for issuance of a preliminary injunction to prevent enforcement of Senate Bill 23-190. Because the defendants have already agreed to suspend any enforcement that would affect the plaintiffs, the motion is denied, and the temporary restraining order (Doc. 8) is dissolved.

## BACKGROUND

On April 14, 2023, Colorado Governor Jared Polis signed into law Senate Bill 23-190, which went into effect immediately. Doc. 32-1. The bill includes a legislative declaration explaining, among other things, that its purpose is to "stop deceptive trade practices and unprofessional conduct with respect to the provision of abortion services and medication abortion reversal." *Id.* (Section 1). It then amends Colorado's Consumer Protection Act by stating that "a person engages in a deceptive trade practice" by disseminating any advertisement that "indicates that the person provides abortions or emergency contraceptives" if they do not

actually provide those services. *Id.* (Section 2). Finally, SB 23-190 declares that it is unprofessional conduct for a licensed medical professional to provide or attempt to provide "medication abortion reversal," which is defined as providing "a drug with the intent to interfere with, reverse, or halt a medication abortion."[1] *Id.* (Section 3).

The plaintiffs are a nonprofit, faith-based medical clinic called Bella Health and Wellness and three medical professionals who, among other things, provide so-called "abortion pill reversal" in the form of progesterone to patients who have taken mifepristone but then wish to keep their pregnancies. Bella states in its practice agreement that its goal is "to provide comprehensive, life-affirming health care with dignity and compassion." Doc. 1-2 at 2. Bella's mission statement on its website similarly presents Bella as "the first comprehensive, life-affirming OB-GYN practice in the State of Colorado." Doc. 1-3 at 3. Bella's online FAQ page explains that if a person has taken the "abortion pill," "[and] we act quickly, there is a possibility we can save your baby through a safe, painless therapy known as Abortion Pill Reversal." Doc. 1-4 at 12.

On April 14, before SB 23-190 was signed and took effect, the plaintiffs lawfully began providing progesterone to a new patient who wishes to continue her pregnancy after taking mifepristone. Doc. 1 ¶ 104; *see also* Doc. 7 at 2-3. After the bill was signed, the plaintiffs moved for a temporary restraining order and preliminary injunction to prevent its enforcement, stating that "[a]bsent immediate relief, this patient risks having her care interrupted," and the plaintiffs "will be in an impossible position: either deny care in accordance with this new law and violate their sincerely held religious beliefs or continue to provide life-affirming

---

[1] Section 2 of SB 23-190 is codified at Colo. Rev. Stat. § 6-1-734, and Section 3 at § 12-30-120.

- 2 -

care to their patients at the risk of losing their licenses." Doc. 7 at 3. On April 15, I granted the motion for a temporary restraining order, which will expire on April 29. Doc. 8. On April 20, Attorney General Weiser and members of the Colorado Medical Board and Colorado State Board of Nursing filed a response to the plaintiffs' motion, declaring that they "will not enforce the new Colorado law against any licensee" until after three boards of Colorado's medical regulators go through a rulemaking process to determine whether provision of medication abortion reversal treatment is a generally accepted standard of practice. Doc. 32 at 1-2. On April 24, the parties appeared before the Court at a preliminary-injunction hearing.

## LEGAL STANDARDS

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019). One may be granted "only when the movant's right to relief is clear and unequivocal." *McDonnell v. City & Cty. of Denver*, 878 F.3d 1247, 1257 (10th Cir. 2018). To succeed on a motion for preliminary injunction, the moving party must show: (1) that it is "substantially likely to succeed on the merits" of its claims; (2) that it will "suffer irreparable injury" if the court denies the injunction; (3) that its "threatened injury" without the injunction outweighs the opposing party's under the injunction; and (4) that the injunction is not "adverse to the public interest." *Mrs. Fields*, 941 F.3d at 1232; *accord Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The third and fourth preliminary injunction factors "merge" when the government is the party opposing the injunction. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

It is well-settled that "a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004). To qualify as an irreparable harm, the threatened injury must be "imminent, certain, actual and not speculative." *State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 886 (10th Cir. 2021). If the party seeking the preliminary injunction fails to meet its burden of establishing irreparable injury, the Court "need not address the remaining preliminary injunction factors." *N.M. Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1249 (10th Cir. 2017).

## DISCUSSION

A preliminary injunction is not necessary, and therefore not appropriate, at this time because the defendants have represented to the Court that they are treating SB 23-190 as if it were not yet in effect and has not changed preexisting law. As the plaintiffs point out, the defendants have not at this stage made any defense on the merits of the plaintiffs' claims challenging the constitutionality of SB 23-190, but that is only one factor to be considered. While there is room for lawyerly quibbling with some of the language used in the defendants' declarations, I am satisfied that the defendants' intent and commitment to the Court is that they will preserve the status quo *ante* SB 23-190 at least until the rulemaking process contemplated by the bill takes place. And since the sole purpose of the plaintiffs' requested preliminary injunction is to preserve that status quo, it is not warranted. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.").

Under that status quo, the plaintiffs do not face an irreparable injury in the immediate future, so they do not meet the standard required to obtain the extraordinary measure of a preliminary injunction. The plaintiffs argue that the defendants have only offered a "qualified, equivocal and discretionary present intention not to prosecute." Doc. 45 at 1 (quoting *United Food v. IBP, Inc.*, 857 F.2d 422, 429 (8th Cir. 1988)). In their reply brief and at the preliminary-injunction hearing, the plaintiffs argued that they continue to accrue liability and may yet be prosecuted at any time, which both imposes a contemporary chilling effect on their speech and forces them to choose between providing abortion pill reversal treatment or averting potential prosecution. *See* Doc. 45 at 7. Courts are encouraged to be more flexible recognizing First Amendment injuries than other types of injuries, but "mere allegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004). To constitute an injury, a chilling effect "must arise from an objectively justified fear of real consequences, which can be satisfied by showing a credible threat of prosecution or other consequences following from the statute's enforcement." *Id*.

It is true that by its terms, SB 23-190 is now the law in Colorado. And it is unusual for the executive branch of government to commit to not enforcing the laws on its books. But as both sides made plentifully clear during the hearing, SB 23-190 is an unusual law, and I have no reason to doubt that the defendants' position is a good-faith effort to balance their obligations under that law with those under the Constitution while the rulemaking process plays out. The plaintiffs' desire to have the additional comfort of a court order in addition to the defendants' assurances is understandable. But the mere presence of an arguably unconstitutional law on the books is not enough to warrant the

extraordinary judicial intervention of a preliminary injunction when the movants do not face an immediate threat of loss of the constitutional freedoms upon which they base their complaint. *See, e.g.*, *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003). This decision is based on the defendants' having made it clear to the Court that the plaintiffs' current and planned activities do not subject them to the threat of enforcement in the imminent future. Should that change, the plaintiffs can bring a new motion.

Given the defendants' commitment via board votes, signed declarations, and counsel's representations, I find that the harm that may result from the defendants' failure to keep their promises is too speculative at this time to grant preliminary injunctive relief. The plaintiffs' motion for a preliminary injunction must be denied.

## Conclusion

It is **ORDERED** that:

The Temporary Restraining Order, **Doc. 8**, is **DISSOLVED**;

Plaintiffs' Emergency Motion for a Preliminary Injunction, **Doc. 7**, is **DENIED**; and

The defendants must file a status report within two business days of any material action that occurs in the rulemaking process contemplated by Senate Bill 23-190, including any issuance of a notice of proposed rulemaking, any public hearing regarding a proposed rule, any adoption of a temporary or emergency rule, and any final adoption of a proposed

- 7 -

rule by the Colorado Medical Board, the State Board of Pharmacy, or the State Board of Nursing.

DATED: April 28, 2023                     BY THE COURT:

                                                Daniel D. Domenico
                                                United States District Judge