IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-939-DDD-SKC

BELLA HEALTH AND WELLNESS, et al.,
    Plaintiffs,
v.

PHIL WEISER, in his official capacity as Attorney General of Colorado, et al.,
    Defendants.

## ATTORNEY GENERAL WEISER'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

Philip J. Weiser, Attorney General of Colorado, moves to dismiss the claims against him under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

<u>Certificate of Conferral</u>: The undersigned conferred with Plaintiffs' counsel regarding this motion. Plaintiffs oppose the relief requested. The Attorney General does not believe the identified defects are curable by amendment.

## INTRODUCTION

On April 14, 2023, the Governor signed into law SB 23-190. *See* Ex. 1. The Act contains three sections:

- Section 1 is a legislative declaration;

- Section 2 amends the Colorado Consumer Protection Act to make clear that falsely advertising abortion and emergency contraception services is a deceptive trade practice; and

- Section 3 directs the state's medical, nursing, and pharmacy boards to promulgate rules concerning whether medication abortion reversal is a generally accepted standard of practice.

Hours later, Plaintiffs Bella Health and Wellness and three of its providers ("Bella Health") sued the Medical Board, the Nursing Board, the Attorney General, and three District Attorneys. Bella Health's seven-count complaint does not specify which claims are brought against which defendant. But any claims brought against the Attorney General should be dismissed because:

- Claims arising under Section 1 fail to state a claim for relief because a legislative declaration does not create any substantive law.
- Bella Health does not have standing to bring a claim under Section 2 because the Act is not reasonably likely to be enforced against it. Even if Bella Health did have standing, it has failed to state a claim for relief.
- To the extent any claims under Section 3 are brought against the Attorney General, he is immune from those claims under the Eleventh Amendment.

## LEGAL STANDARD

A motion to dismiss on the grounds that the plaintiff lacks standing is a challenge to the Court's subject matter jurisdiction. *Irvine v. I.C. Sys., Inc.*, 198 F. Supp. 3d 1232, 1235 (D. Colo. 2016). The plaintiff "bears the burden of establishing" standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An Eleventh Amendment

immunity defense also challenges subject matter jurisdiction. *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1259 (10th Cir. 2002).

This motion also challenges whether Bella Health has stated a claim for relief against the Attorney General. To survive a motion under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a plausible claim to relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted).

## ARGUMENT

### I. Bella Health lacks standing to challenge Section 1 or, alternatively, fails to state a claim for which relief can be granted under Section 1.

The Complaint alleges "section 1 prohibits publicizing abortion pill reversal." Doc. 1 at 36 ¶ 145. It does not. Section 1 is a legislative declaration. It "finds and declares" that the CCPA's "prohibition on deceptive trade practices applies to" advertising or providing "medication abortion reversal." Ex. 1, § 1. But such legislative declarations are not substantive law. They are at most used to construe ambiguous statutes. Colo. Rev. Stat. § 2-4-203(1)(g); *see* Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts* 217 (Thomson/West 2012) (legislative preamble is "an aside" and "*not* part of the congressionally legislated . . . set of rights and duties."). Bella Health therefore faces no credible threat of enforcement as to Section 1 and lacks standing to challenge it. Alternatively, Bella Health has not stated a claim for which relief can be granted as to Section 1.

Section 1 expresses the General Assembly's understanding of what constitutes a deceptive trade practice, but the General Assembly did not change or

alter any law. The legislature knows how to enact laws—had it wanted to create a statute making "advertising for or providing . . . medication abortion reversal" unlawful under the CCPA, it would have done so. In fact, in the 2022 legislative session, the legislature expressly amended the CCPA to add new violations in seven different bills.[1] It chose not to do so here. The complaint should therefore be dismissed as to any claims arising under Section 1.

The Supreme Court has considered, and rejected, similar claims in the past. In *Webster v. Reproductive Health Services*, the Court held that a legislative preamble stating "the life of each human begins at conception" does not have the force of law because it "does not by its terms" regulate abortion or appellees' medical practice. 492 U.S. 490, 504-06 (1989). Just so here. The preamble states a legislative understanding of what is covered by subsections ((1)(e) and (1)(rrr)) of the CCPA but does not amend that statute. Unless and until the General Assembly amends the CCPA to prohibit abortion pill reversal, courts may not declare "principles or rules of law which cannot affect the result as to the thing in issue in the case before it." *Id.* at 507 (quotations omitted); *California v. Texas*, 141 S. Ct. 2104, 2116 (2021) (quotations omitted). Bella Health's claims under Section 1 must be dismissed.

---

[1] H.B. 22-1099, H.B. 22-1242, H.B. 22-1287, S.B. 22-205, H.B. 22-1031, H.B. 22-1284, H.B. 22-034, 73rd Gen. Assemb., 2nd Reg. Sess. (Colo. 2022).

4

## II. Plaintiffs lack standing to assert claims under Section 2, and those claims also fail to state a basis for relief.

### A. Plaintiffs lack standing because there is no credible threat that Section 2 will be enforced against them.

Section 2 amends the CCPA to clarify that a person engages in a deceptive trade practice when the person advertises that they provide abortions or emergency contraceptives when the person "knows or reasonably should have known" that they do not actually provide "those specific services." Ex. 1, § 2 (adding Colo. Rev. Stat. § 6-1-734(2)). But the complaint contains no allegations explaining how Section 2 injures Plaintiffs or puts them at risk. That is not surprising because Plaintiffs have made clear that they do not advertise abortions or emergency contraceptives, the only conduct that Section 2 targets. Under these circumstances, Plaintiffs lack standing to challenge Section 2.

For standing to exist, the plaintiff must prove they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. To establish injury in fact, the plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent[.]" *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). The touchstone of this inquiry is whether a plaintiff suffers concrete harm: "no concrete harm, no standing." *TransUnion LLC v. Ramirez*, 141

5

S. Ct. 2190, 2200 (2021). The plaintiff bears the burden of proof on each element. *Spokeo*, 578 U.S. at 338.

In a narrow category of cases, a plaintiff who fears enforcement of a challenged law may seek pre-enforcement review, as Plaintiffs do here. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014) ("*SBA List*"). But to preserve the concrete harm requirement, pre-enforcement challenges are limited to those cases where enforcement is "certainly impending, or there is a substantial risk that the harm will occur." *Id.* at 158 (quotations omitted); *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 873 (10th Cir. 2020). Without a credible threat of imminent enforcement, the mere presence of an unconstitutional statute "does not entitle anyone to sue, even if they allege an inhibiting effect on constitutionally protected conduct prohibited by the statute." *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007) (quotation omitted).

Thus, to maintain a pre-enforcement challenge, a plaintiff "must typically demonstrate (1) an intention to engage in conduct arguably affected with a constitutional interest but proscribed by the challenged statute, and (2) that 'there exists a credible threat of prosecution thereunder.'" *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 545 (10th Cir. 2016) (quotation omitted). Plaintiffs' challenge to Section 2 fails on both elements.

As to the first element, Section 2 of the Act does not proscribe Plaintiffs' desired conduct. Section 2 is narrow. It clarifies that it constitutes a deceptive trade

6

practice for a person to advertise that they provide abortions or emergency contraceptives when the person knows or reasonably should have known that they do not provide those services. Even before the Act existed, the CCPA made false representations about such services unlawful. Colo. Rev. Stat. § 6-1-105(1)(e), (1)(rrr). The Act simply added more specificity in the context of abortions and emergency contraceptives and permits additional civil penalties for violating the more specific prohibition in § 6-1-734. *See* Colo. Rev. Stat. § 6-1-112 (providing civil penalties for *each* violation of the CCPA). But Plaintiffs have made clear that, in their opinion, there is no question that they are complying with the CCPA and that they do not advertise care they do not provide. *See* Ex. 2, TR 4/24/23, at 16:25-17:1 ("No, we do not advertise anything regarding abortion care.").[2] Plaintiffs therefore do not intend to engage in conduct proscribed by Section 2.

      The absence of the first element alone deprives Plaintiffs of standing. But the second element is also absent because Plaintiffs face no credible threat of enforcement. Plaintiffs do not allege they violate Section 2 or have any intention of doing so. Plaintiffs also identify no history of either the CCPA or the Act being enforced against similar clinics or practitioners. *See SBA List*, 573 U.S. at 164.

---

[2] The Attorney General brings a factual attack on the presence of subject matter jurisdiction. *See, e.g.*, *Baker,* 979 F.3d at 872. The Court thus does not presume the truthfulness of the complaint's allegations. *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1272 n.1 (10th Cir. 2012).

The closest Bella Health comes to alleging a credible fear of enforcement is their interpretation of certain legislator statements that advertising "comprehensive" services indicates the provider offers abortion-related services. Ex. 2, at 93:1-9; Doc. 1-8. These statements in the legislative history are far from sufficient to create a credible threat of enforcement. First, legislators do not make enforcement decisions. Second, Bella Health disagrees with the statements and has expressly testified that it tries to make clear what services it does and does not offer—including by advertising "comprehensive, *life-affirming* health care." Doc. 1-2 at 2; Doc. 1-3 at 5; *see* Ex. 2, at 35:5-10 (emphasizing "honesty and transparency" in Bella Health's statements). And finally—and most critically—the Attorney General has already disavowed enforcement of Section 2 for this statement, standing alone. Ex. 2, at 103:22-23 ("[T]hat statement in and of itself is not going to be the basis for any sort of action under here."). A prosecutor's disavowal of this type is strong evidence that Plaintiffs face no credible threat of enforcement. *See Winsness v. Yocom*, 433 F.3d 727, 732-33 (10th Cir. 2006); *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004).

At bottom, Plaintiffs' claimed fear of Section 2 being enforced against them is "imaginary or speculative." *Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (quotations omitted). Plaintiffs therefore lack standing and their Section 2 claims must be dismissed.

### B. Bella Health has not plead that Section 2 violates the First Amendment and any such argument would be meritless.

Bella Health does not assert that the Act's prohibition on falsely advertising abortion services violates the First Amendment. Nor could it. Bella Health does not have a free speech right to false advertising. Nor does it have a free exercise right to deceive patients about its health care offerings. Any First Amendment claims relating to Section 2 must be dismissed.

Bella Health's First Amendment claims are all tied directly to the portions of the Act that relate to abortion pill reversal treatment—not the law's prohibition on false advertising. *See* Doc. 1 ¶¶ 180-205 (Claims 1 and 2; free exercise claims focused solely on abortion pill reversal treatment); ¶¶ 206-19 (Claim 3; free speech claim for content and viewpoint discrimination specifically referencing Section 1 of SB 23-190 and abortion pill reversal); ¶¶ 220-46 (Claim 4; right to receive information relating to abortion pill reversal).[3] None of these allegations state a First Amendment claim for relief based on the Act's prohibition on falsely advertising abortion or contraception care.

The only facts in the complaint that specifically reference Section 2's prohibition on false advertising *at all* are the paragraphs quoting Section 2 and asserting that it is void for vagueness. *See* Doc. 1 ¶ 146 (quoting Section 2); ¶¶ 247-

---

[3] Claims 5 and 6 are due process and equal protection claims that relate to abortion pill reversal treatment.

9

58 (asserting that Section 2 is void for vagueness).[4] Only two other paragraphs (read charitably) could plausibly relate to Section 2's prohibition on false advertising: paragraphs 153 and 159, which quote two legislators' concerns about "religious organizations" "us[ing] disinformation " or "engaging in a 'bait and switch'"—though the complaint does not specify whether these concerns relate to abortion pill reversal or falsely advertising abortion care. *Id.* ¶ 159.[5]

Even viewed in the light most favorable to Bella Health, these facts *at best* suggest that two legislators were worried that some religiously affiliated clinics might deceive patients about availability of abortion. There are no facts that state a claim that the text of Section 2 is not viewpoint neutral, that it implicates the free speech or free exercise rights of Bella Health, or that Bella Health is threatened by an unconstitutional application of the statute. Any such claim must therefore be dismissed because the Complaint does not state a plausible claim. *See Robbins*, 519 F.3d at 1247.

Nor could Bella Health state such a claim based on Section 2's prohibition on false advertising. There is no free exercise exemption to fraud laws like this one, which are precisely the sort of neutral rule of general applicability that are exempt from heightened constitutional scrutiny. *Church of the Lukumi Babalu Aye, Inc. v.*

---

[4] *See also* Doc. 1 ¶¶ 130-137 (discussing the CCPA generally, with focus on (1)(e) and (1)(rrr)); ¶¶ 138-150 (discussing SB 23-190).

[5] One other paragraph, 156, quotes a third legislator describing the use by some clinics of "free pregnancy tests," ultrasounds, and prenatal care as "disinformation[.]"

*City of Hialeah*, 508 U.S. 520, 531 (1993). Fraudulent speech has never been protected by the First Amendment. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980); *see also Illinois ex rel. Madigan v. Telemarketing Assoc., Inc.*, 538 U.S. 600, 612, (2003) (citing cases).

      At the preliminary injunction hearing—though not in its Complaint—Bella Health suggested that Section 2 is not viewpoint neutral. *See* Ex. 2 at 92:23-93:17. The First Amendment's "core requirement of viewpoint neutrality" applies "even though the statute regulates otherwise unprotected speech." *Chaker v. Crogan*, 428 F.3d 1215, 1226 (9th Cir. 2005) (citing cases). So the Act may nonetheless be subject to heightened scrutiny if it favors some messages or speakers at the expense of others. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 383-84, 386 (1992).

      The Act does not do so. The law does not pick ideological winners for any underlying message related to abortion or contraception—businesses remain entirely free to support or criticize these treatments so long as their advertisements are truthful. *E.g.*, *R.A.V.*, 505 U.S. at 383 (prohibiting only fighting words *against* racial equality); *Chaker*, 428 F.3d at 1215 (prohibiting only false speech *critical* of law enforcement). Nor does the application of Section 2 depend whatsoever on the speaker's motives. *E.g.*, *Animal Legal Def. Fund v. Kelly*, 9 F.4th 1219 (10th Cir. 2021) (prohibiting lying to gain control of an animal facility with *intent to damage* the enterprise). The Act's prohibition on false advertising applies whether a business misrepresents its care for money or for ideological reasons. Nor does the

11

Act turn on the speaker's identity. The law applies equally to a secular clinic as to Bella Health. If, for example, a Planned Parenthood clinic offers only wellness checkups, it is also prohibited by Section 2 from advertising that it provides abortion services.

At the hearing, Bella Health seemed to suggest that Section 2 is not viewpoint neutral because it applies only to falsely advertising particular services (abortion and emergency contraception) and not other kinds of pregnancy care. *See* Ex. 2, at 92:23-93:17; 96:23-97:9 (arguing that Section 2 "applies only to one side of the debate" because it "doesn't apply to anyone who offers abortions"). But legislators are not required to identify every possible problem when they pass laws about a subject matter, even one that is politically charged. As the Supreme Court has explained, "a State may choose to regulate [] advertising in one industry but not in others, because the risk of fraud . . . is in its view greater there." *R.A.V.*, 505 U.S. at 388-89 (internal citation omitted). And so long as the law's prohibitions do not discriminate on the basis of viewpoint, a regulation "may address some offensive instances and leave other, equally offensive, instances alone." *Id.* at 390.

Just so here. Unfair and deceptive practice acts frequently contain subparts addressed to specific wrongful acts that the legislature believes are particularly prevalent or harmful. The CCPA contains many such provisions; from falsely representing the need for radon mitigation (§ 6-1-105(*ll*)) to falsely claiming to possess an academic degree (§ 6-1-707). The CCPA does not specifically ban every

12

possible misrepresentation on these topics and these provisions apply only to a subset of businesses or persons.

Section 2 is designed to prevent harm caused by the false advertising of two medical treatments that are time-sensitive such that truthful advertising is critical for patients. The law does not ban false advertising of all possible medical treatments (including other medical treatments related to pregnancy) but it does not have to. And while Bella Health is correct that Section 2 applies only to those business that don't offer abortions and emergency contraception, that is not evidence of viewpoint discrimination. Just as § 6-1-105(*ll*) applies only to businesses that offer radon mitigation, such selectivity occurs simply because those are the entities that *could* commit the fraud with which the legislature was concerned, not because those entities hold any particular views or speak any particular messages. *See R.A.V.*, 505 U.S. at 389-90.

### C.     Plaintiffs' claim that Section 2 is unconstitutionally vague fails as a matter of law.

Section 2 is not vague. The law makes it a deceptive trade practice for a business to indicate it offers services it does not offer. Bella Health chiefly objects to the word "indicates"—they contend that a company advertising comprehensive OB/GYN services could be found to "indicate" that it provides abortion services. But as other courts and commonsense make clear, "indicates" has a plain and ascertainable meaning to the ordinary reader and is not unconstitutionally vague.

13

A statute is not vague if its prohibitions are "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest." *Dodger's Bar & Grill, Inc. v. Johnson Cnty. Bd. of Cnty. Comm'rs*, 32 F.3d 1436, 1443 (10th Cir. 1994) (quotations omitted). "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). Additionally, courts have expressed "greater tolerance" of regulations, like this one, which impose only civil penalties. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982).

The Eighth Circuit previously rejected a similar challenge, holding that the word "indicates" is not vague in a statute prohibiting charitable solicitation if a recipient "indicates" a desire not to hear about the charity. *Nat'l Fed. of the Blind of Ark., Inc. v. Pryor*, 258 F.3d 851 (8th Cir. 2001). The court first relied on the ordinary meaning of "indicates," which means "to show or make known with a fair degree of certainty" or "reveal in a fairly clear way." *Id.* at 857 (quoting Webster's 3d New Int'l Dictionary 1150). Based on this ordinary meaning, the court recognized that while "we can never expect mathematical certainty from our language," the words of the statute "are marked by flexibility and reasonable breadth, rather than meticulous specificity, but we think it is clear what the [statute] as a whole prohibits." *Id.* (quotation omitted); *see also EMILY's List v. FEC*, 569 F. Supp. 2d 18,

53 (D.D.C. 2008) (holding campaign finance regulation using the word "indicates" is not vague), *overruled on other grounds*, 581 F.3d 1 (D.C. Cir. 2009).

The same is true here. The statute makes clear what it seeks to prohibit: consumers being led by false pretenses to a provider that does not offer abortion care. The word "indicates" makes reasonably clear what is prohibited while still allowing the flexibility and reasonable breadth necessary to accomplish the aims of a deceptive trade practices statute. Persons of ordinary intelligence can understand the meaning of Section 2.

**III. To the extent the complaint brings claims against the Attorney General under Section 3, the Attorney General is immune under the Eleventh Amendment.**

The Attorney General enjoys Eleventh Amendment immunity from any claims related to Section 3 of the Act. "The Eleventh Amendment constitutionalizes the doctrine of state sovereign immunity." *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021). This immunity "extends to 'suit[s] against a state official in his or her official capacity' because such suits are 'no different from a suit against the State itself.'" *Id.* (quotation omitted).

The *Ex parte Young* doctrine creates an exception to Eleventh Amendment immunity. *Ex parte Young*, 209 U.S. 123 (1908). Under that exception, "a plaintiff may sue individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks only prospective relief." *Hendrickson*, 992 F.3d at 965. Critically, "[t]o satisfy this exception, the

named state official 'must have some connection with the enforcement' of the challenged statute." *Id* (quotation omitted). This means the official must "have [1] a particular duty to enforce the statute in question and [2] a demonstrated willingness to exercise that duty." *Id.* (quotations omitted).

The Attorney General has no "particular duty" to enforce Section 3 beyond a duty to prosecute complaints on behalf of the client boards. In the complaint, Plaintiffs correctly identify the Medical Board and Nursing Board statutes that direct the Attorney General to prosecute complaints that are referred to him by the boards. Colo. Rev. Stat. §§ 12-240-125(5)(d); 12-255-119(4)(d). But these client-service duties are the type of general enforcement power that cannot overcome the Eleventh Amendment. *See Chamber of Commerce v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010) ("merely because an attorney general has a duty to prosecute all actions in which the state is interested is not enough to make him a proper defendant in every such action") (quotation omitted).

This immunity from suit based on a defendant's general enforcement powers makes sense, because the relief Plaintiffs' seek is contingent on the acts of other Defendants. Plaintiffs seek injunctive relief against the boards themselves. If they are successful, the boards will be enjoined from referring to the Attorney General any charges related to the provision of medication abortion reversal treatment. Without such referrals, the Attorney General has neither a duty (nor demonstrated willingness) to enforce Section 3. The Attorney General is thus immune from suit.

16

## CONCLUSION

For these reasons, the claims against the Attorney General should be dismissed.

Dated: June 20, 2023

PHILIP J. WEISER
Attorney General

s/ Grant T. Sullivan
s/ Michael T. Kotlarczyk
s/ Abigail Hinchcliff

*Grant T. Sullivan*, Assistant Solicitor General
*Michael T. Kotlarczyk*, Sr. Assistant Attorney General
*Abigail Hinchcliff*, First Assistant Attorney General
Counsel to Attorney General Philip J. Weiser

1300 Broadway, Denver, CO 80203
Telephone: (720) 508-6349
Email: grant.sullivan@coag.gov;
michael.kotlarczyk@coag.gov
abigail.hinchcliff@coag.gov

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2023, I served a true and complete copy of the foregoing **ATTORNEY GENERAL WEISER'S MOTION TO DISMISS** upon all parties herein by e-filing with the CM/ECF system maintained by the court and/or email.

*s/* Carmen Van Pelt
*Carmen Van Pelt*