# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

BELLA HEALTH AND WELLNESS
et al.,

    *Plaintiffs,*

    v.

PHIL WEISER, in his official capacity as
Attorney General of Colorado, et al.,

    *Defendants.*

Case No. 1:23-cv-939-DDD-SKC

## PLAINTIFFS' RESPONSE TO MOTIONS TO DISMISS OF DEFENDANTS PHIL WEISER, BETH MCCANN, AND JOHN KELLNER

Mark L. Rienzi
Rebekah P. Ricketts*
Laura W. Slavis
Daniel M. Vitagliano**
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave, N.W.
Suite 400
Washington, D.C. 20006
(202) 955-0095
mrienzi@becketlaw.org

*Admitted only in Texas. Supervised by a member of the D.C. Bar.

**Admitted only in New York. Supervised by a member of the D.C. Bar.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................ 1

BACKGROUND .......................................................................................................... 1

LEGAL STANDARD ................................................................................................... 5

ARGUMENT .............................................................................................................. 6

I.   Plaintiffs have standing to challenge Section 1 and have stated
     a plausible claim for relief. ............................................................................... 6

II.  Plaintiffs have standing to challenge Section 2 and have stated
     a plausible claim for relief. ............................................................................... 8

     A.  There is a credible threat that Section 2 will be enforced
         against Plaintiffs. ..................................................................................... 8

     B.  Plaintiffs have plausibly alleged that Section 2 violates the
         First Amendment. ................................................................................. 13

     C.  Plaintiffs have plausibly alleged a void-for-vagueness claim. ........................ 16

III. The Attorney General is not immune under the Eleventh
     Amendment from Section 3 claims. .................................................................. 18

IV.  Plaintiffs have standing to sue the District Attorneys. .................................... 20

CONCLUSION ........................................................................................................ 21

CERTIFICATE OF COMPLIANCE ............................................................................ 23

CERTIFICATE OF SERVICE ................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis,*
  6 F.4th 1160 (10th Cir. 2021) ........................................................................ 7, 8, 9

*Already, LLC v. Nike, Inc.,*
  568 U.S. 85 (2013) ................................................................................... 11-12, 21

*Audubon of Kan., Inc. v. U.S. Dep't of Interior,*
  67 F.4th 1093 (10th Cir. 2023) ................................................................................ 6

*Chamber of Com. of U.S. v. Edmondson,*
  594 F.3d 742 (10th Cir. 2010) ........................................................................ 18, 19

*Colo. Prop. Tax Adm'r v. CO2 Comm., Inc.,*
  527 P.3d 371 (Colo. 2023) ...................................................................................... 12

*Colo. State Bd. of Med. Exam'rs v. Boyle,*
  924 P.2d 1113 (Colo. App. 1996) ......................................................................... 19

*Finstuen v. Crutcher,*
  496 F.3d 1139 (10th Cir. 2007) ............................................................................ 18

*Gentile v. State Bar of Nev.,*
  501 U.S. 1030 (1991) .............................................................................................. 17

*Home Depot USA v. Jackson,*
  139 S.Ct. 1743 (2019) ........................................................................................ 16-17

*Hynes v. Mayor of Oradell,*
  425 U.S. 610 (1976) ................................................................................................ 16

*Jordan v. Pugh,*
  425 F.3d 820 (10th Cir. 2005) ........................................................................ 16, 17

*Kennecott Utah Copper Corp. v. U.S. Dep't of Interior,*
  88 F.3d 1191 (D.C. Cir. 1996) ................................................................................. 7

*Kitchen v. Herbert,*
  755 F.3d 1193 (10th Cir. 2014) ................................................................. 18, 19, 20

*McCullen v. Coakley,*
  573 U.S. 464 (2014) ................................................................................................ 15

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007) ................................................................................. 9

*Mendoza v. Perez,*
    754 F.3d 1002 (D.C. Cir. 2014).............................................................. 7-8

*Miller v. Bonta,*
    __F.Supp.3d__, 2022 WL 17363887 (S.D. Cal. Dec. 1, 2022) ................................ 21

*Mink v. Suthers,*
    482 F.3d 1244 (10th Cir. 2007) ........................................................ 12, 21

*Nat'l Fed. of the Blind of Ark., Inc. v. Pryor,*
    258 F.3d 851 (8th Cir. 2001) ................................................................ 17

*Pahls v. Thomas,*
    718 F.3d 1210 (10th Cir. 2013) ............................................................. 14

*Peck v. McCann,*
    43 F.4th 1116 (10th Cir. 2022)................................................... 10-11, 12

*People v. D.K.B.,*
    843 P.2d 1326 (Colo. 1993)................................................................... 6-7

*Prairie Band Potawatomi Nation v. Wagnon,*
    476 F.3d 818 (10th Cir. 2007) .................................................. 17, 18, 20

*R.A.V. v. City of St. Paul,*
    505 U.S. 377 (1992) ......................................................................... 14, 15

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015) ......................................................................... 14, 15

*Rosenberger v. Rector & Visitors of Univ. of Va.,*
    515 U.S. 819 (1995) ............................................................................. 14

*S. Utah Wilderness All. v. Palma,*
    707 F.3d 1143 (10th Cir. 2013) ............................................................ 5-6

*Scott v. Hiller,*
    No.21-cv-02011-NYW-KLM, 2022 WL 4726038 (D. Colo. Oct. 3, 2022).............. 10

*Shell Oil Co. v. Noel,*
    608 F.2d 208 (1st Cir. 1979)................................................................. 19

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) .......................................................................*passim*

*Ullery v. Bradley,*
    949 F.3d 1282 (10th Cir. 2020) ...................................................................... 13

*United Food v. IBP, Inc.,*
    857 F.2d 422 (8th Cir. 1988) ....................................................................... 21

*Vitagliano v. County of Westchester,*
    __F.4th__, 2023 WL 4095164 (2d Cir. 2023) ......................................... 10

*Weber v. Colo. State Bd. of Nursing,*
    830 P.2d 1128 (Colo. App. 1992) .............................................................. 19

*State ex rel. Weiser v. Ctr. for Excellence in Higher Educ., Inc.,*
    499 P.3d 1081 (Colo. Ct. App. 2021) ....................................................... 12

*Webster v. Reproductive Health Services,*
    492 U.S. 490 (1989) ..................................................................................... 8

*Whole Woman's Health v. Jackson,*
    142 S.Ct. 522 (2021) ........................................................................... 19, 20

*WildEarth Guardians v. Pub. Serv. of Colo.,*
    690 F.3d 1174 (10th Cir. 2012) ......................................................... 11, 20

**Statutes**

C.R.S. §6-1-105 ........................................................................................... 3

C.R.S. §6-1-103 ........................................................................................... 3

C.R.S. §6-1-113 ...................................................................................... 3, 11

C.R.S. §12-20-403 ....................................................................................... 2

C.R.S. §12-20-404 ....................................................................................... 3

C.R.S. §12-240-125 ................................................................................ 3, 18

C.R.S. §12-255-119 ................................................................................ 3, 18

S.B. 23-190, 74th Gen. Assemb., Reg. Sess. (Colo. 2023) ................... *passim*

**Other Authorities**

Fed.R.Civ.P.10(c) ...................................................................................... 13

DDD.Civ.P.S.III.D(a) .................................................................................. 6

Colo. Off. of Legis. Legal Servs., *Colorado Legislative Drafting Manual* (2023) ................................................................................................................ 7

Senate Judiciary Hearing, Mar. 15, 2023 ................................................................. 4-5

## INTRODUCTION

In three separate motions to dismiss, Defendants make little attempt to defend SB 23-190 on the merits. Instead, they try to pass the enforcement buck. District Attorneys McCann and Kellner say that enforcing SB 23-190—Section 2 in particular—is the job of the Attorney General, so they should be dismissed from the case. AG Weiser, in turn, says Plaintiffs cannot challenge Section 2—not because *he* has disavowed enforcement, but because *Plaintiffs* view their own conduct as honest—and enforcing Section 3 is the job of the Boards, so he is immune from suit.

None of these efforts succeed in depriving this Court of Article III jurisdiction. Neither the AG nor the DAs has offered a binding and permanent disavowal of enforcement that would suffice to bar Plaintiffs at the courthouse door. The few merits responses the AG offers are wrong about what Plaintiffs allege and what the Free Speech and Due Process Clauses require. And his immunity claim ignores the plain language of his statutory enforcement duty—that he "*shall* prosecute" charges referred to him by the Boards. Because Plaintiffs have standing to challenge SB 23-190 and have plausibly stated claims for relief, the motions to dismiss should be denied.

## BACKGROUND

***Plaintiff Bella Health and Wellness.*** Bella is a nonprofit, faith-based medical clinic that offers life-affirming, dignified health care. Compl., Dkt.1 ¶¶22, 33. Bella offers obstetrics-gynecology care as well as family medicine, pediatrics, and functional medicine. *Id.* ¶¶33-34.

Bella commits "to provide comprehensive, life-affirming health care" and "to offer[] you medical solutions that respect your dignity, preserve your integrity, and work in cooperation with your body." *Id.* ¶46. Thus, Bella "do[es] not offer contraception, sterilizations, or abortions." *Id.* Bella's website describes it as a "comprehensive, life-affirming OB-GYN practice." Compl.Ex.C at 3. It separately describes Bella as offering both a "full continuum of care" and "comprehensive health care at every stage of life." Compl.Ex.C at 5; *see* Compl.Ex.D at 13 ("We are a life-affirming, full-service Family Medicine and OB-GYN medical center.").

Bella and its providers are devoted to honoring the dignity of the women they serve and their unborn children. Compl. ¶47. Consistent with their religious beliefs, Bella and its providers are religiously obligated to offer abortion pill reversal (APR). *Id.* ¶98. Bella has treated dozens of APR patients who successfully maintained their pregnancies. *Id.* ¶103. Bella's website affirms its commitment to "save mothers and babies through sound medical counseling and [APR]." *Id.* ¶110; *see* Chism Supp. Decl., Dkt.34. Bella also publicizes the availability of APR on its social media accounts. Dkt.34.

***Colorado Medical and Nursing Licensing Regimes.*** As "regulators" of their respective professions, the Colorado Medical Board and the State Board of Nursing "may investigate, hold hearings, and gather evidence in all matters related to the exercise and performance of [their] powers and duties." C.R.S. §12-20-403(1). Each Board may discipline licensees who engage in "conduct that constitutes grounds for

discipline or unprofessional conduct." *Id.* §12-20-404(1). If a Medical Board investigation "discloses facts that warrant further proceedings by formal complaint," the complaint "shall be referred" to the AG, who then "shall prosecute those charges." *Id.* §12-240-125(4)(c)(V), (5)(d); *see also id.* §12-255-119(3)(c)(V), (4)(d) (AG "shall prosecute" complaints referred by Nursing Board).

**Colorado Consumer Protection Act.** The CCPA makes it a "deceptive trade practice" to "knowingly or recklessly make[] a false representation as to the characteristics, … uses, [or] benefits … [of] services," *id.* §6-1-105(1), (1)(e), or to "knowingly or recklessly engage[] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice," *id.* §6-1-105(1)(rrr). The AG and DAs are "concurrently responsible" for CCPA enforcement. *Id.* §6-1-103. Private parties who are "actual or potential consumer[s]" and are injured by a deceptive practice can also sue. *Id.* §6-1-113(1)(a).

**SB 23-190.** On April 14, 2023, Governor Jared Polis signed into law SB 23-190. Section 1 declares, among other things, that "anti-abortion centers" are the "ground-level presence of a well-coordinated anti-choice movement" and engage in "deceptive advertising tactics to target and acquire clients." §1(1)(d)-(e). It specifically accuses "anti-abortion centers" of "go[ing] so far as to advertise medication abortion reversal, a dangerous and deceptive practice that is not supported by science or clinical stand-

3

ards." §1(1)(f). Section 1's final subsection states that the CCPA's prohibition on deceptive trade practices "applies to … advertising for or providing or offering to provide or make available medication abortion reversal." §1(3).

Section 2 provides that it is a "deceptive trade practice" to "make[] or disseminate[]" any advertisement that "indicates that the person provides abortions or emergency contraceptives, or referrals for abortions or emergency contraceptives, when the person knows or reasonably should have known … that the person does not provide those specific services." §2(2).

Section 3 bans APR, making it "unprofessional conduct" for a licensee to "provide[], prescribe[], administer[], or attempt[] medication abortion reversal." §3(2). The ban can only be undone if the Medical, Nursing, and Pharmacy Boards, "in consultation with each other," by October 1, 2023, adopt "rules finding that it is a generally accepted standard of practice to engage in medication abortion reversal." §3(2).

***Legislative Record.*** SB 23-190's debate shows the law is specifically designed to target religious organizations that offer abortion alternatives, including APR. Compl. ¶¶151-53. The bill's sponsors stated that SB 23-190 will "crack down" on "anti-abortion centers," Compl.Ex.G at 5, 7, which were described as "ideologically-driven" and "fake clinics," Compl. ¶¶153-54, 156.

The bill's sponsors explained that SB 23-190 would "prohibit" APR advertising and "define it as a deceptive trade practice." Compl.Ex.H at 1 (Marchman); *see also*

Senate Judiciary Hearing, Mar. 15, 2023, at 5:56:15-5:56:24, https://ti-nyurl.com/5ub4xpzu (Winter) ("Nor can they tell their patients that information and assistance is available to reverse a medication without misleading them."). They also identified the terms "comprehensive" and "full range" of services (or similar terms) as deceptive advertising when used by a pro-life provider:

- "[A]nti-abortion center[s]" are "faith-based organizations that **pose as a comprehensive reproductive healthcare clinic**." Compl.Ex.H at 1 (Marchman).

- "[M]any anti-abortion centers are **purposefully misleading about offering** unbiased, medically-based … **comprehensive healthcare**. … [A]nti-abortion clinics should not act as though they offer a **full range of reproductive healthcare** when they are using deceptive untruthful practices to lure patients in." Compl.Ex.H at 4 (Winter).

- "**Comprehensive reproductive care includes** the following[:] access to contraception, emergency [c]ontraception … [and] **abortion or referral for abortion**[.]" Compl.Ex.K at 1 (McCormick); *see* Compl.Ex.J at 1 (McCormick) (similar).

***Procedural History.*** Hours after SB 23-190's signing, Plaintiffs sued and moved for emergency relief. Dkt.7. This Court entered a TRO that night. Dkt.8. After a hearing, the Court declined to enter a preliminary injunction given the State's assurances of non-enforcement pending the rulemaking process. Dkt.48.

## LEGAL STANDARD

When considering standing at the motion to dismiss stage, the Court "must accept as true all material allegations of the complaint," "must construe the complaint in favor of the complaining party," and "must construe the statements made in the affidavits in the light most favorable to the [plaintiff]." *S. Utah Wilderness All. v. Palma*,

707 F.3d 1143, 1152 (10th Cir. 2013).[1] "[T]o survive a 12(b)(6) motion to dismiss, a plaintiff must state a plausible claim for relief on the face of a well-pleaded complaint." *Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 67 F.4th 1093, 1108 (10th Cir. 2023).

## ARGUMENT

The motions to dismiss should be denied because Plaintiffs' well-pleaded complaint establishes a live controversy over SB 23-190's many constitutional infirmities. Plaintiffs begin with standing.[2]

Article III standing requires (1) an injury in fact, (2) causation, and (3) redressability. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014). In a First Amendment pre-enforcement challenge, a plaintiff shows an injury in fact when she alleges (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest" that is (2) "arguably proscribed" by the challenged statute and (3) there exists a "credible threat of enforcement." *Id.* at 159-62 (cleaned up).

## I.  Plaintiffs have standing to challenge Section 1 and have stated a plausible claim for relief.

Section 1 states that the "prohibition on deceptive trade practices [in the CCPA] applies to … advertising for … or offering to provide or make available medication abortion reversal." §1(3)(b). This provision plainly reads like the myriad substantive

---

[1]    The AG does not dispute any factual allegations in the verified complaint and so they are presumed true. *Cf.* AG.MTD.7n.2.

[2]    The AG's motion proceeds by statutory section, not by "each claim for relief." DDD.Civ.P.S.III.D(a). Plaintiffs follow the same structure for efficiency.

provisions that "create, eliminate or modify vested rights or liabilities." *People v. D.K.B.*, 843 P.2d 1326, 1331 (Colo. 1993). It evinces an "intention to bind … regulated parties," subjecting those who publicize APR to CCPA enforcement actions and liability. *Kennecott Utah Copper Corp. v. U.S. Dep't of Interior*, 88 F.3d 1191, 1222-23 (D.C. Cir. 1996). SB 23-190's sponsors so understood Section 1, stating that it would "prohibit advertising for [APR] and define it as a deceptive trade practice[.]" *Supra* pp.4-5. Section 1(3)(b) thus not only "arguably proscribe[s]" Bella's APR publications; it *actually* proscribes it. *See 303 Creative LLC v. Elenis*, 6 F.4th 1160, 1172-73 (10th Cir. 2021), *rev'd on other grounds*, 143 S.Ct.__ (2023). Bella therefore has standing and has stated a plausible claim for relief.

The AG's only argument is that because the legislature enacted this prohibition in a section labeled "legislative declaration," Plaintiffs face no credible threat of enforcement or have not stated a claim for relief. AG.MTD.3-4. But Colorado courts "have construed legislative declaration … statements" as imposing substantive requirements, and legislators are warned to "be very cautious about including statements that could be viewed as creating a substantive right or a promise that the state will do something." Colo. Off. of Legis. Legal Servs., *Colorado Legislative Drafting Manual* §2.7.3 (2023); *see also Kennecott*, 88 F.3d at 1222-23 ("preamble" to regulation may have "independent legal effect"). Just as the federal government may not negate the effects of a substantive law by labeling it mere interpretation, *see, e.g.*, *Mendoza v. Perez*, 754 F.3d 1002, 1021-23 (D.C. Cir. 2014), Colorado may not extricate itself

from clear and unambiguous substantive language by invoking the "legislative decla-ration" label.

The AG cites *Webster v. Reproductive Health Services*, where the Court noted that the preambular statement "[t]he life of each human begins at conception" carried no legal effect. 492 U.S. 490, 501, 506 (1989). But that statement "d[id] not by its terms" regulate anything and "impose[d] no substantive restrictions." *Id.* at 505-06. Section 1(3)(b)'s clear prohibition bears no resemblance to *Webster*'s factual finding. *Webster* thus provides no aid to the AG, let alone a reason to grant his motion to dismiss.

## II. Plaintiffs have standing to challenge Section 2 and have stated a plausible claim for relief.

### A. There is a credible threat that Section 2 will be enforced against Plaintiffs.

The AG argues that Bella lacks pre-enforcement standing because Section 2 "does not proscribe Plaintiffs' desired conduct" and there is no credible threat of enforce-ment. AG.MTD.6-8. He is wrong on both.

***Arguably proscribed.*** Section 2 "at least arguably proscribe[s]" Bella's speech about its services. *303 Creative*, 6 F.4th at 1172-73 (cleaned up). Bella's website de-scribes it as a "comprehensive, life-affirming OB-GYN practice" and as offering a "full continuum of care" and "comprehensive health care." *Supra* p.2. Bella uses the exact terms the bill's sponsors—the AG coyly describes them as "certain legislator[s]," AG.MTD.8—denounced as deceptive when used by pro-life providers. *Supra* pp.4-5;

8

Tr.101:21-22, Dkt.51 (Court noting "significant evidence" that "at least some members of the legislature" viewed statements like Bella's as "misleading").

The AG nonetheless insists that Section 2 "does not proscribe" Plaintiffs' speech because "in [Plaintiffs'] opinion, there is no question that they are complying with the CCPA." AG.MTD.6-7. That misstates the law and the facts. Legally, the question is what speech is "arguably proscribed" by Section 2. *Driehaus*, 573 U.S. at 162; *see also 303 Creative*, 6 F.4th at 1172 (conscience objections were "at least arguably proscribed" by Colorado Anti-Discrimination Law) (cleaned up).[3] Factually, Plaintiff Dede Chism testified that Bella describes itself as providing "comprehensive" health care because it "car[es] for … body, mind, and soul" and offers a "full scope of care for women's health." Tr.35:17-25. She further testified that she "fe[lt] very, very attacked" by the legislative debate over SB 23-190, like "they were singling us out" and the "words that they were coming after … they were coming after me." Tr.36:5-19. The AG offers no authority—because there is none—for the proposition that Plaintiffs' "opinion" somehow automatically thwarts public or private CCPA claims against them. AG.MTD.7.

---

[3]   The AG repeats this error in claiming there is no credible threat because Plaintiffs "do not allege they violate Section 2 or have any intention of doing so." AG.MTD.7; *see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) ("we do not require a plaintiff to expose himself to liability before bringing suit").

*Credible threat.* Bella has also shown a "credible threat" of enforcement. *Driehaus*, 573 U.S. at 167. This prong "is not supposed to be a difficult bar for plaintiffs to clear in the First Amendment pre-enforcement context." *Peck v. McCann*, 43 F.4th 1116, 1133 (10th Cir. 2022). The Tenth Circuit considers three factors: "(1) whether the plaintiff showed past enforcement against the same conduct; (2) whether authority to initiate charges was not limited to a prosecutor or an agency and instead, any person could file a complaint against the plaintiffs; and (3) whether the state disavowed future enforcement." *Id.* at 1132 (cleaned up).

There is no past enforcement of SB 23-190—because the law is brand new and was immediately enjoined. Nor is it surprising that the prior version of the CCPA was not wielded against similar conduct. As the AG tacitly admits, the purpose of Section 2 was to target pro-life providers by "clarif[ying]" what constitutes a deceptive practice for speakers who do not provide abortions. AG.MTD.6-7. And in any event, "[t]he fact that a prosecutor ha[s] never enforced the statute … is not dispositive." *Scott v. Hiller*, No.21-cv-2011, 2022 WL 4726038, at *6 (D. Colo. Oct. 3, 2022); *see Peck*, 43 F.4th at 1133 (collecting cases); *Vitagliano v. County of Westchester*, __F.4th__, 2023 WL 4095164, at *7 (2d Cir. 2023) (same).

The remaining two credible-threat factors weigh decisively in favor of Plaintiffs. First, CCPA enforcement is "not limited to a prosecutor or an agency." *Peck*, 43 F.4th

10

at 1132. Instead, "any person" who is an "actual or potential consumer" and is allegedly injured may sue, C.R.S. §6-1-113(1)(a), which "bolster[s]" the "credibility of th[e] threat," *Driehaus*, 573 U.S. at 164.

Second, the AG has repeatedly refused to "disavow[] future enforcement" of Section 2. *Peck*, 43 F.4th at 1132; *see* Tr.67:18-22 (Q: "And you have not disavowed enforcement of Section 2, have you?" A: "Uh, no, we enforce the law."). To be sure, he "disavow[s] enforcement" for one of Bella's statements—"comprehensive, life-affirming health care"—"standing alone." AG.MTD.8. But Bella also uses the terms "comprehensive," "full continuum of care," and "full-service" elsewhere on its website, *supra* p.2—and the AG has repeatedly refused to disavow enforcement for Bella's advertising *in toto, see, e.g.*, Tr.68:21-69:1 (Q: "And you can't tell me whether you think it's misleading or deceptive to say that you provide comprehensive ob-gyn services without providing abortion? You don't have an opinion?" A: "I can't say, like, hypothetically how I would address – how that would be enforced."). The AG's disavowal as to one statement "standing alone," AG.MTD.8, leaves Bella exposed to prosecution for all others—including the actual statements for which the AG refused to disavow enforcement.

Furthermore, "[s]tanding is determined as of the time the action is brought." *WildEarth Guardians v. Pub. Serv. of Colo.*, 690 F.3d 1174, 1182 (10th Cir. 2012). So the AG's real argument is that Plaintiffs' Section 2 claims are now moot based on his partial voluntary cessation. But the AG has not carried the "formidable burden of

showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). A disavowal that defeats justiciability is one that takes the "unequivocal position" that a law "cannot be constitutionally enforced" and Plaintiffs "would not be prosecuted under the statute now or in the future." *Mink v. Suthers*, 482 F.3d 1244, 1255-57 (10th Cir. 2007). The AG has provided nothing of the sort. If anything, his "staunch refusal to disavow prosecution" of Section 2—including as to Bella's actual speech in its actual context—weighs "heav[ily]" in favor of a credible-threat finding. *Peck*, 43 F.4th at 1133.

The AG urges the Court to ignore statements by SB 23-190's sponsors because "legislators do not make enforcement decisions." AG.MTD.8. But the AG routinely relies on testimony of bill sponsors in litigating the meaning of state statutes. *See, e.g.*, State's Br., *Colo. Prop. Tax Adm'r v. CO2 Comm., Inc.*, 527 P.3d 371 (Colo. 2023), 2022 WL 19520798, at *29; *State ex rel. Weiser v. Ctr. for Excellence in Higher Educ., Inc.*, 499 P.3d 1081, 1092 (Colo. Ct. App. 2021). Plaintiffs have every reason to expect the AG, private plaintiffs, and courts to do the same here.

Because Plaintiffs' speech is "arguably proscribed" and the threat of future enforcement is "far from imaginary or speculative," *Driehaus*, 573 U.S. at 162, 165 (cleaned up), Plaintiffs have standing to challenge Section 2.

**B. Plaintiffs have plausibly alleged that Section 2 violates the First Amendment.**

*Pleading.* The AG argues that Plaintiffs do not bring a First Amendment challenge to Section 2. AG.MTD.9-10. He is wrong. Notably, no other Defendant reads the complaint this way. *Cf.* McCann.MTD.1-4 (recognizing Section 2 challenge in "First Amendment context"); Kellner.MTD.1-4 (same).

Count III is a Free Speech Clause challenge to SB 23-190 *in toto*—including Section 2. It alleges that, by "targeting its speech restrictions at 'anti-abortion centers,'" "SB 23-190" is "content and viewpoint based." Compl. ¶¶212-13. It also alleges—separate from the paragraphs addressing APR, *id.* ¶¶215-16—that "Colorado has no compelling interest in targeting the speech of life-affirming OB-GYN medical providers," *id.* ¶214. Count III also incorporates all preceding allegations—including the operative provisions of Section 2, *id.* ¶146, and legislative history showing targeting of "anti-abortion centers," *id.* ¶¶151-53, 155-56, 159-61; *see* Fed.R.Civ.P.10(c). And Plaintiffs seek declaratory and injunctive relief from "SB 23-190"—not just the APR provisions—because it "discriminat[es] against Plaintiffs based on the content and viewpoint of their speech." Compl. ¶¶b, g. That certainly provides "fair notice of what the claim is and the grounds upon which it rests." *Ullery v. Bradley*, 949 F.3d 1282, 1288 (10th Cir. 2020).

*Merits.* Plaintiffs have plausibly alleged that Section 2 violates the Free Speech Clause because it discriminates based on content and viewpoint. The AG ignores content discrimination, addressing only viewpoint. AG.MTD.10-13. And his viewpoint arguments are baseless.

"Both content- and viewpoint-based speech restrictions are presumptively invalid." *Pahls v. Thomas*, 718 F.3d 1210, 1229 (10th Cir. 2013). A law is content based if it "on its face draws distinctions based on the message a speaker conveys" or if it "cannot be justified without reference to the content of the regulated speech, or [was] adopted by the government because of disagreement with the message the speech conveys." *Reed v. Town of Gilbert*, 576 U.S. 155, 163-64 (2015) (cleaned up). A law is viewpoint based if it "targets not subject matter, but particular views taken by speakers on a subject." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

The AG contends that Section 2 is constitutional because it regulates "[f]raudulent speech." AG.MTD.11. But even within a category of "proscribable speech," the First Amendment imposes "a 'content discrimination' limitation," barring regulation "based on hostility—or favoritism—towards the underlying message expressed." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 386-87 (1992). Section 2 is facially content based because it applies only to speech about certain topics—advertisements falsely indicating the speaker provides or refers "for abortions or emergency contraceptives." §2(2). The law does not cover advertisements falsely indicating the speaker provides

other treatments, pregnancy-related or otherwise. And "[t]he First Amendment does not permit [Colorado] to impose special prohibitions on those speakers who express views on disfavored subjects." *R.A.V.*, 505 U.S. at 391.

Even if Section 2 were facially content neutral, it is nonetheless content based because Colorado enacted it out of disagreement with the message of "anti-abortion centers," which do not provide or refer for abortion or emergency contraceptives. §1(1)(c)-(e). SB 23-190 claims "anti-abortion centers use deceptive advertising tactics," *id.*, and its sponsors decried them as "fake clinics," accusing them of "sham[ing]" women and spreading "disinformation," Compl. ¶¶152-54. Because Section 2 was enacted due to "disagreement with the message" of "anti-abortion centers," it is content based. *Reed*, 576 U.S. at 164.

Beyond content discrimination, Section 2 also discriminates among viewpoints, explicitly targeting "[a]nti-abortion centers" for their role in the "anti-choice movement." §1(1)(d). Section 2 applies only to speakers who do not provide abortion or emergency contraceptives; speakers who do are immune. Because Section 2 regulates "speech on only one side of the abortion debate," it is "a clear form of viewpoint discrimination." *McCullen v. Coakley*, 573 U.S. 464, 485 (2014).

The AG claims Section 2 is simply addressed to "specific wrongful acts"—akin to false representations about radon mitigation—that the legislature believes are "particularly prevalent or harmful." AG.MTD.12. According to the AG, abortion and emer-

gency contraceptives are "time-sensitive" medical treatments "such that truthful advertising is critical for patients." AG.MTD.13. But so are all other pregnancy-related services—including prenatal care and APR. *Cf.* §1(1)(b). Yet Section 2 has no application to speakers who offer abortion but falsely advertise prenatal ultrasounds or lie about APR. Moreover, representations about radon mitigation are pure commercial speech—whereas Bella's speech is targeted not because it is commercial but because it concerns a controversial social and political issue. The two are apples and oranges.

Because Section 2 is anything but neutral, Plaintiffs have stated a Free Speech Clause claim.

### C. Plaintiffs have plausibly alleged a void-for-vagueness claim.

A statute is unconstitutionally vague if it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "authorizes or even encourages arbitrary and discriminatory enforcement." *Jordan v. Pugh*, 425 F.3d 820, 824-25 (10th Cir. 2005). Courts consider, *inter alia*, "the enactment's purpose" and "the interpretations of individuals charged with enforcement." *Id.* at 825. In the First Amendment context, "[s]tricter standards of permissible statutory vagueness may be applied." *Hynes v. Mayor of Oradell*, 425 U.S. 610, 620 (1976).

Section 2 provides insufficient notice of what is prohibited. The AG says the term "indicates" has "a plain and ascertainable meaning," AG.MTD.13—but refuses to say what that meaning is. Moreover, statutory terms "cannot be construed in a vacuum" and "must be read in their context." *Home Depot USA v. Jackson*, 139 S.Ct. 1743,

1748 (2019). Section 2 offers no guidance for what "indicates" that an entity offers abortions or emergency contraceptives. Compl. ¶252. Indicates is a "classic term[] of degree" that "[i]n th[is] context … ha[s] no settled usage or tradition of interpretation in law." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1048-49 (1991). Ordinary people don't know whether advertising "comprehensive" or "full-service" OB-GYN care indicates offering abortion or emergency contraceptives. Compl. ¶254. Even the AG's designated witness could not answer that question. Tr.68:21-69:7.

Moreover, even if Section 2 did provide adequate notice, it still permits arbitrary and discriminatory enforcement. SB 23-190's "purpose"—which courts "often consider[]" in deciding vagueness questions, *Jordan*, 425 F.3d at 825—is to target "anti-abortion centers." §1(1)(c)-(e). And sponsors claimed that "comprehensive" or "full-service" OB-GYN care includes abortion and contraceptives. *Supra* pp.4-5. Yet the AG has refused to provide an interpretation of Section 2 on this issue. *See* Tr.68-69; *cf. Nat'l Fed. of the Blind of Ark., Inc. v. Pryor*, 258 F.3d 851, 857 (8th Cir. 2001) (statute not vague where, in response to alleged ambiguities, AG offered "reasonable interpretation," allaying concerns of arbitrary enforcement). Thus, the AG's claim that Section 2 is "clear," AG.MTD.15, ignores both Section 2's purpose and the AG's own failure to offer an interpretation of Section 2 or take a position on whether Bella's specific statements violate the law.

### III. The Attorney General is not immune under the Eleventh Amendment from Section 3 claims.

Tellingly, the AG does not contend that he has sufficiently disavowed Section 3 enforcement to defeat standing. Instead, he claims to be immune from Section 3 challenges under the Eleventh Amendment. That argument fails.

The *Ex Parte Young* exception to Eleventh Amendment immunity "permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007). The exception applies "so long as the defendant officer has 'some connection with the enforcement of the act.'" *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010).

"Some" connection does not mean a "special connection"; the plaintiff need point only to (1) "a particular duty to 'enforce' the statute in question" and (2) "a demonstrated willingness to exercise that duty." *Wagnon*, 476 F.3d at 828. Though "it is not necessary that the officer's enforcement duties be noted in the act" to meet the "particular duty" prong, *Finstuen v. Crutcher*, 496 F.3d 1139, 1151 (10th Cir. 2007), identification of a specific statutory duty clearly suffices, *Kitchen v. Herbert*, 755 F.3d 1193, 1202-03 (10th Cir. 2014). Past enforcement can show "demonstrated willingness." *Edmondson*, 594 F.3d at 760.

Both prongs are met here. As the AG concedes, AG.MTD.16, Colorado law provides that he "*shall* prosecute" charges referred to him by the Medical and Nursing Boards. C.R.S. §12-240-125(5)(b), (d); *id.* §12-255-119(3)(c)(V), (4)(d) (emphasis added). This

specific, mandatory duty more than satisfies the "particular duty" prong. *See Edmondson*, 594 F.3d at 758 (statutory duty to prepare draft contracts and "initiate or appear in any action in which the interests of the state or the people of the state are at issue" sufficient); *Kitchen*, 755 F.3d at 1202-03 (statutory authority to bring lawsuit and "exercise supervisory powers over the district and county attorneys" sufficient). Nor can the AG seriously contest "demonstrated willingness," since he has exercised these prosecutorial duties in the past. *See, e.g.*, *Colo. State Bd. of Med. Exam'rs v. Boyle*, 924 P.2d 1113, 1115 (Colo. App. 1996); *Weber v. Colo. State Bd. of Nursing*, 830 P.2d 1128 (Colo. App. 1992).

Instead, the AG contends his duties amount to mere "client-service[s]," citing *Edmundson*. AG.MTD.16. But *Edmondson* says nothing of the sort. There, plaintiffs challenged two provisions of Oklahoma law. Their first challenge identified a statutory duty to enforce and a history of past enforcement, so the court found standing. *Edmondson*, 594 F.3d at 760. But their second challenge "[did] not cite to any Oklahoma law authorizing the Attorney General to enforce that provision," so the court found standing lacking. *Id.* It was in this context that the court said—by way of a dictum parenthetical citation to an out-of-circuit case—that "a duty to prosecute all actions in which the state is interested" did not satisfy the test. *Id.* (quoting *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979)). Here, Plaintiffs *have* identified specific statutory duties demonstrating the AG "may or must take enforcement actions against [Plaintiffs] if they violate the terms of" the Medical and Nurse Practice Acts.

*Whole Woman's Health v. Jackson*, 142 S.Ct. 522, 535-36 (2021). The snippet from *Edmundson* is thus irrelevant.

The AG's only other argument is that if the Boards are ultimately prevented from enforcing the unconstitutional law, he won't be able to enforce it either. AG.MTD.16. But the AG cites no case indicating that immunity depends on whether other parties are also involved in unconstitutional enforcement. That's because it doesn't. *See Wagnon*, 476 F.3d at 828 (three defendants involved in enforcement all lacked immunity); *Kitchen*, 755 F.3d at 1202-03 (governor and AG lacked immunity).

## IV.  Plaintiffs have standing to sue the District Attorneys.

DAs Kellner and McCann separately move to dismiss, arguing that Plaintiffs lack standing to sue them because their accompanying declarations "disavow[] any intent to enforce" SB 23-190. Kellner.MTD.5; *see* McCann.MTD.5. Although these disavowals are more fulsome than the AG's, they, too, fall short.

As noted above, the credible-threat inquiry turns on three factors. *Supra* p.10. Here, there is no past enforcement of SB 23-190 because the law is brand new. But private parties may enforce the CCPA, and neither DA had disavowed enforcement "as of the time" this suit was filed. *WildEarth*, 690 F.3d at 1182. So the real question is not whether Plaintiffs had standing to sue the DAs in the first place—they did— but whether the DAs' affidavits succeed in mooting the claims against them. They do not.

Relying on her "primary responsibility" to enforce criminal law, McCann avers that she has "no intent" to enforce SB 23-190 because it would not "be an appropriate use of public resources." McCann.Decl.1-2. Kellner similarly points to his "primar[y] focus[]" on criminal prosecution and states that he "will not enforce [SB 23-190] against these Plaintiffs." Kellner.Decl.1-2.

These statements evince the DAs' "discretionary present intention not to prosecute." *United Food v. IBP, Inc.*, 857 F.2d 422, 429 (8th Cir. 1988). But nothing prevents them from changing their minds. To be sure, Kellner disavows enforcement pending resolution of this lawsuit. Kellner.Decl.2. But neither DA takes the position—much less the "unequivocal position"—that SB 23-190 "c[an]not be constitutionally applied" to Plaintiffs. *Mink*, 482 F.3d at 1256-57. And neither purports to bind himself and his successors. *See Miller v. Bonta*, __F.Supp.3d__, 2022 WL 17363887, at *4 (S.D. Cal. Dec. 1, 2022) (collecting cases).

It would be "a closer question" if the DAs committed not to enforce SB 23-190 and entered a consent judgment binding their offices not to prosecute Plaintiffs now or in the future. *Id.* at *5. But here, the DAs fail to carry their "formidable burden" to show mootness. *Already*, 568 U.S. at 91.

## CONCLUSION

The Court should deny the motions to dismiss.

Dated: July 11, 2023                Respectfully submitted,

/s/ Mark L. Rienzi
Mark L. Rienzi
Rebekah P. Ricketts*
Laura W. Slavis
Daniel M. Vitagliano**
The Becket Fund for Religious Liberty
    1919 Pennsylvania Ave, N.W.
Suite 400
Washington, D.C. 20006
(202) 955-0095
mrienzi@becketlaw.org

*Admitted only in Texas. Supervised by a member of the D.C. Bar.

**Admitted only in New York. Supervised by a member of the D.C. Bar.

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing response complies with the type-volume limitation set forth in Judge Domenico's Civil Practice Standard III.A.1, as modified by the Court's order dated July 5, 2023. Dkt.70.

/s/ Mark L. Rienzi
Mark L. Rienzi

**CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2023, I electronically filed the above response with the Clerk of Court via CM/ECF, which will provide electronic copies to counsel of record.

/s/ Mark L. Rienzi
Mark L. Rienzi