**DEPARTMENT OF REGULATORY AGENCIES**

**Colorado Medical Board**

**MEDICAL RULES AND REGULATIONS**

**3 CCR 713-1**

[Editor's Notes follow the text of the rules at the end of this CCR Document.]

_____

...

**1.15    RULES AND REGULATIONS REGARDING THE LICENSURE OF AND PRACTICE BY PHYSICIAN ASSISTANTS**

A.  <u>Basis</u>: The authority for promulgation of Rule 1.15 ("these Rules") by the Colorado Medical Board ("Board") is set forth in sections 24-4-103, 12-240-106(1)(a),12-240-107(6) and 12-240-113, C.R.S.

B.  <u>Purpose</u>: The purpose of these rules and regulations is to implement the requirements of sections 12-240-113 and 12-240-107(6), C.R.S., and provide clarification regarding the application of these Rules to various practice settings.

C.  EXTENT AND MANNER IN WHICH A PHYSICIAN ASSISTANT MAY PERFORM ACTS CONSTITUTING THE PRACTICE OF MEDICINE WITH A COLLABORATIVE AGREEMENT IN PLACE

   1.  The requirements for a Collaborative Agreement applies to all supervising physicians and physician assistants as of August 7, 2023.

   2.  Responsibilities of the Physician Assistant

       a.  Compliance with these Rules. A physician assistant is responsible for implementing and complying with statutory requirements and the provisions of these Rules.

       b.  License. A physician assistant shall ensure that his or her license to practice as a physician assistant is active and current prior to performing any acts requiring a license.

       c.  Collaborative Agreement. A physician assistant must keep on file their Collaborative Agreement at their primary location of practice and make it available to the Board upon request.

       d.  Identification As A Physician Assistant. While performing acts defined as the practice of medicine, a physician assistant shall clearly identify himself or herself both visually (e.g. by nameplate or embroidery on a lab coat) and verbally as a physician assistant.

       e.  Chart Note. A physician assistant shall make a chart note for every patient for whom the physician assistant performs any act defined as the practice of medicine in section 12-240-107(1), C.R.S. When a physician assistant consults with any physician about a patient, the physician assistant shall document in the chart note the names of any physician consulted and the date of the consultation.

    f.    Documentation. A physician assistant shall keep such documentation as necessary to assist a collaborating or other physician in performing an adequate performance assessment as set forth below in Section 7.1(C)(6) of these Rules.

    g.    Emergency DepartmentSettings

        (1)    Collaborative Agreements entered into by physician assistants in emergency departments in hospitals with Level I or II trauma center settings shall take the form of a supervisory agreement as identified in section 12-240-114.5(2)(b)(IV)(A), C.R.S.

        (2)    For Collaborative Agreements entered into by physician assistants in emergency departments in hospitals other than with Level I or II trauma center settings, a supervising physician or physician group may increase the number of hours for which the Collaborative Agreement is a supervisory agreement, pursuant to section 12-240-114.5(2)(b)(IV)(B), C.R.S.

3.    Requirements for Physicians and Physician Groups Entering into Collaborating Agreements

    a.    Physicians must be actively practicing medicine in Colorado by means of a regular and reliable physical presence in Colorado. For purposes of this Rule, to practice medicine based primarily on telecommunication devices or other telehealth technologies does not constitute "actively practicing medicine in Colorado."

    f.    Performance Evaluation

    A physician who has entered into a Collaborating Agreement with a physician assistant shall develop and carry out a periodic Performance Evaluation as required by these Rules and section 12-240-114.5(1)(c), C.R.S. The Performance Evaluation should include domains of competency relevant to the particular practice and utilize more than one modality of assessment to evaluate those domains of competency. The Performance Evaluation should take into account the education, training, experience, competency and knowledge of the individual physician assistant for whatever practice area in which the physician assistant is engaged.

        (2)    The statutory relationship between the physician and physician assistant is by its nature a team relationship. The purpose of the Performance Evaluation is to enhance the collaborative nature of the team relationship, promote public safety, clarify expectations, and facilitate the professional development of an individual physician assistant.

        (3)    The domains of competency may be dependent upon the type of practice the physician assistant is engaged in and may include but are not limited to:

            (a)    Medical knowledge;

  (b) Ability to perform an appropriate history and physical examination;

  (c) Ability to manage, integrate and understand objective data, such as laboratory studies, radiographic studies, and consultations;

  (d) Clinical judgment, decision-making and assessment of patients;

  (e) Accurate and appropriate patient management;

  (f) Communication skills (patient communication and communication with other care providers);

  (g) Documentation and record keeping;

  (h) Collaborative practice and professionalism;

  (i) Procedural and technical skills appropriate to the practice.

(4) The modalities of assessment to evaluate domains of competency may include but are not limited to:

  (a) Co-management of patients;

  (b) Direct observation;

  (c) Chart review with identification of charts reviewed;

  (d) Feedback from patients and other identified providers.

(5) Performance evaluations must occur with at least the minimum frequency required in section 12-240-114.5(2)(b)(I)(C), C.R.S.

(6) A physician or physician group must maintain accurate records and documentation of the Performance Evaluations, including the initial Performance Evaluation and periodic Performance Evaluations for each physician assistant with whom they have entered into a Collaborative Agreement.

(7) The Board may audit a physician's or physician group's performance assessment records. Upon request, the physician or physician group shall produce records of the performance assessments as required by the Board.

4.

6. Waiver of Provisions of these Rules

 a. Criteria for Obtaining Waivers.

  (1) Upon a showing of good cause, the Board may permit waivers of any provision of these Rules.

  (2) Factors to be considered in granting such waivers include, but are not limited to: whether the physician assistant is located in an underserved

       or rural area; the quality of protocols setting out the responsibilities of a physician assistant in the particular practice; any disciplinary history on the part of the the physician assistant or the physician entering into a Collaborating Agreement; and whether the physician assistant in question works less than a full schedule.

     (3) All such waivers shall be in the sole discretion of the Board. All waivers shall be strictly limited to the terms provided by the Board. No waivers shall be granted if in conflict with state law.

   b. Procedure for Obtaining Waivers.

     (1) Applicants for waivers must submit a written application on forms approved by the Board detailing the basis for the waiver request.

     (2) The written request should address the pertinent factors listed in Section 7.1(E)(1)(b) of these Rules and include a copy of any written protocols in place for the supervision of physician assistants.

     (3) Upon receipt of the waiver request and documentation, the matter will be considered at the next available Board meeting.

D. PRESCRIPTION AND DISPENSING OF DRUGS.

 1. Prescribing Provisions:

   a. A physician assistant may issue a prescription order for any drug or controlled substance provided that:

     (1) Each prescription and refill order is entered on the patient's chart.

     (2) For each written prescription issued by a physician assistant, the prescription shall contain, in legible form imprinted on the prescription, the physician assistant's name and the address of the health facility where the physician assistant is practicing.

       (a) If the health facility is a multi-specialty organization, the name and address of the specialty clinic within the health facility where the physician assistant is practicing must be imprinted on the prescription.

     (3) A physician assistant may not issue a prescription order for any controlled substance unless the physician assistant has received a registration from the United States Drug Enforcement Administration.

     (4) For the purpose of this Rule electronic prescriptions are considered written prescription orders.

     (5) The dispensing of prescription medication by a physician assistant is subject to section 12-280-120(6)(a), C.R.S.

 2. Obtaining Prescription Drugs or Devices to Prescribe, Dispense, Administer or Deliver

   a. No drug that a physician assistant is authorized to prescribe, dispense, administer or deliver shall be obtained by said physician assistant from a source

                              other than a collaborating physician, pharmacist or pharmaceutical representative.

               b.     No device that a physician assistant is authorized to prescribe, dispense, administer or deliver shall be obtained by said physician assistant from a source other than a collaborating physician, pharmacist or pharmaceutical representative.

E.     REPORTING REQUIREMENTS

     1.     Collaborative Agreements.

          a.     A Collaborative Agreement must be in writing and maintained at the main practice location for the physician assistant.

          b.     The Collaborative Agreement must include the requirements set forth in section 12-240-114.5(2)(a), C.R.S.

          c.     The form shall be signed by the physician and the physician assistant. .

d.     Collaborative Agreements for physician agreements with fewer than five thousand practice hours, or for physician assistants changing practice areas with fewer than three thousand hours in the new practice area shall be a supervisory agreement and include the additional requirements set forth in section 12-240-114.5(2)(b), C.R.S.

Effective 12/30/83; Revised 05/30/85; Revised 12/30/85; Revised 8/30/92; Revised 11/30/94; Revised 12/1/95; Revised 12/14/95; Revised 3/30/96; Revised 3/30/97; Revised 9/30/97; Revised 3/30/98; Revised 9/30/98; Revised 06/30/00; Revised 12/30/01; Revised 9/30/04; Revised 2/9/06, Effective 3/31/06; Emergency Rule Revised and Effective 7/01/10; Revised 08/19/10, Effective 10/15/10; Revised 11/15/12, Effective 01/14/2013; Revised 5/22/14, Effective 7/15/14; Revised 8/20/15, Effective 10/15/15; Emergency Rule Revised And Effective 8/18/16; Permanent Rule Revised 8/18/16; Effective 10/15/16; Permanent Rule Revised 2/15/18, Effective _____

…

**1.32**     **RULES AND REGULATIONS REGARDING GENERALLY ACCEPTED STANDARDS OF MEDICAL PRACTICE REGARDING PREGNANCY-RELATED SERVICES**

A.     <u>Basis:</u> The authority for promulgation of Rule 1.xx ("these Rules") by the Colorado Medical Board ("Board") is set forth in sections 24-4-103, 12-240-106(1)(a), and 12-30-120(2), C.R.S.

B.     <u>Purpose:</u> The purpose of these rules and regulations is to implement the requirements of section 12-30-120(2), C.R.S.

C.     Definitions

     1.     "Abortion" has the meaning set forth in section 25-6-402(1), C.R.S.

     2.     "Medication abortion" has the meaning set forth in section 12-30-120(1)(b), C.R.S.

     3.     "Medication abortion reversal" has the meaning set forth in section 12-30-120(1)(c), C.R.S.

D.     Standard of Care Considerations

1. Compliance with generally accepted standards of medical practice requires a licensee to exercise the same degree of knowledge, skill, and care as exercised by licensees in the same field of medicine at the time care is rendered. Substandard care cannot be excused on the grounds that other licensees also provided care which deviates from generally accepted medical standards. Ascertaining the objectively reasonable standard of care is more than just a factual finding of what all, most, or even a "respectable minority" of licensees do. Rather, licensees will be judged according to the tenets of the school of practice to which the licensee professes to follow.

2. The Board evaluates generally accepted standards of medical practice on a case-by-case basis. Each instance of medical care will involve its own unique set of facts that the Board must evaluate against the backdrop of evidence-based practice standards. For that reason, the Board does not regularly adopt rules establishing a single standard of care applicable to all situations.

3. In evaluating whether a licensee's provision of medication abortion reversal meets generally accepted standards of medical practice, the Board will evaluate the scope and nature of information exchanged between the licensee and patient prior to services being provided. The Board anticipates that a fully informed consent will include, at a minimum, information about the risks, benefits, likelihood of intended outcome of the proposed treatment, and likelihood of achieving the intended outcome without the proposed treatment in order for the patient to make an informed decision about whether to undertake the treatment. The Board anticipates that the licensee will document the substance of all informed consent discussions and will place a copy of all written informed consent disclosures within the patient's chart.

4. The Board will not treat medication abortion reversal as a *per se* act of unprofessional conduct. Rather, the Board will investigate all complaints related to medication abortion reversal in the same manner that it investigates other alleged deviations from generally accepted standards of medical practice under section 12-240-121(1)(j), C.R.S. Licensees are expected to practice evidence-based medicine, and any licensee who provides unscientific treatments that fall below the generally accepted standard of care may be subject to discipline.

Effective _____