# Exhibit Q:

# Medical Board Notice of Proposed Rulemaking

# Notice of Proposed Rulemaking

**Tracking number**

2023-00397

**Department**

700 - Department of Regulatory Agencies

**Agency**

713 - Division of Professions and Occupations - Colorado Medical Board

**CCR number**

3 CCR 713-1

**Rule title**

MEDICAL RULES AND REGULATIONS

## Rulemaking Hearing

| Date | Time |
| --- | --- |
| 08/17/2023 | 09:00 AM |

**Location**

Webinar Only: https://us06web.zoom.us/webinar/register/WN_Ciqwwl1FRjCGnO225yzvwA#/registration

**Subjects and issues involved**

The purpose of the Rulemaking Hearing is to allow stakeholders a final opportunity to testify before the Board decides whether to adopt the proposed changes to Rule 1.15 RULES AND REGULATIONS REGARDING THE LICENSURE OF AND PRACTICE BY PHYSICIAN ASSISTANTS to implement Colorado Senate Bill 23-083 (Concerning an Expansion of a Physician Assistant's Ability to Practice, and, in Connection Therewith, Changing the Relationship between a Physician Assistant and a Physician or Podiatrist from Supervision to Collaboration) and whether to adopt the proposed new Rule 1.32 RULES AND REGULATIONS REGARDING GENERALLY ACCEPTED STANDARDS OF MEDICAL PRACTICE REGARDING PREGNANCY-RELATED SERVICES to implement Colorado Senate Bill 23-190 (Concerning Policies to Make Punishable Deceptive Actions regarding Pregnancy-Related Services).

**Statutory authority**

Section 12-20-204, 12-240-106(1)(a), and 24-4-103, C.R.S.

## Contact information

| Name | Title |
| --- | --- |
| Maria Hernandez | Regulatory Coordinator |
| **Telephone** | **Email** |
| 303-894-7800 | dora_dpo_rulemaking@state.co.us |

**DEPARTMENT OF REGULATORY AGENCIES**

**Colorado Medical Board**

**MEDICAL RULES AND REGULATIONS**

**3 CCR 713-1**

*[Editor's Notes follow the text of the rules at the end of this CCR Document.]*

_____
...

**1.15    RULES AND REGULATIONS REGARDING THE LICENSURE OF AND PRACTICE BY PHYSICIAN ASSISTANTS**

A.   Basis: The authority for promulgation of Rule 1.15 ("these Rules") by the Colorado Medical Board ("Board") is set forth in sections 24-4-103, 12-240-106(1)(a),12-240-107(6) and 12-240-113, C.R.S.

B.   Purpose: The purpose of these rules and regulations is to implement the requirements of sections 12-240-113 and 12-240-107(6), C.R.S., and provide clarification regarding the application of these Rules to various practice settings.

C.   EXTENT AND MANNER IN WHICH A PHYSICIAN ASSISTANT MAY PERFORM ~~DELEGATED TASKS~~ACTS CONSTITUTING THE PRACTICE OF MEDICINE ~~UNDER PERSONAL AND RESPONSIBLE DIRECTION AND SUPERVISION~~WITH A COLLABORATIVE AGREEMENT IN PLACE

   1.   The requirements for a ~~Supervisory Plan or a Practice Agreement~~Collaborative Agreement applies to all supervising physicians and physician assistants as of ~~August 2, 2019~~August 7, 2023.

   2.   Responsibilities of the Physician Assistant

      a.   Compliance with these Rules. A physician assistant ~~and the physician assistant's supervising physician are~~is responsible for implementing and complying with statutory requirements and the provisions of these Rules.

      b.   License. A physician assistant shall ensure that his or her license to practice as a physician assistant is active and current prior to performing any acts requiring a license.

      c.   ~~Registration~~Collaborative Agreement. A physician assistant must keep on file their Collaborative Agreement at their primary location of practice and make it available to the Board upon request.~~shall ensure that a form in compliance with Section 7.3 of these Rules is on record with the Board.~~

      d.   Identification As A Physician Assistant. While performing acts defined as the practice of medicine, a physician assistant shall clearly identify himself or herself both visually (e.g. by nameplate or embroidery on a lab coat) and verbally as a physician assistant.

      e.   Chart Note. A physician assistant shall make a chart note for every patient for whom the physician assistant performs any act defined as the practice of

**2**

**3**

medicine in section 12-240-107(1), C.R.S. When a physician assistant consults with any physician about a patient, the physician assistant shall document in the chart note the name~~s~~ of ~~the~~ any physician consulted and the date of the consultation.

f. Documentation. A physician assistant shall keep such documentation as necessary to assist ~~the supervising~~a collaborating or other physician in performing an adequate performance assessment as set forth below in Section <mark>7.1(C)(6)</mark> of these Rules.

g. ~~Acute Care~~Emergency Department ~~Hospital~~ Setting~~s~~

   (1) Collaborative Agreements entered into by ~~p~~Physician assistants in emergency departments in hospitals with Level I or II trauma center settings shall take the form of a supervisory agreement as identified in ~~performing delegated medical functions in an acute care hospital setting must comply with the requirements of~~ section 12-240-~~107(6)(b)(II~~114.5(2)(b)(IV)(A)), C.R.S.

   ~~(2) For purposes of this section, "reviewing the medical records" means review and signature by the primary supervising physician or a secondary supervising physician.~~

   (2) For Collaborative Agreements entered into by physician assistants in emergency departments in hospitals other than with Level I or II trauma center settings, a supervising physician or physician group may increase the number of hours for which the Collaborative Agreement is a supervisory agreement, pursuant to section 12-240-114.5(2)(b)(IV)(B), C.R.S.

3. Requirements for ~~and Types of Supervising~~ Physicians and Physician Groups Entering into Collaborating Agreements~~and Their Scope and Authority to Delegate~~

   a. ~~Supervising~~ Physicians must be actively practicing medicine in Colorado by means of a regular and reliable physical presence in Colorado. For purposes of this Rule, to practice medicine based primarily on telecommunication devices or other telehealth technologies does not constitute "actively practicing medicine in Colorado."

   ~~b. A supervising physician must perform personal and responsible direction and supervision, which may not be rendered through intermediaries. Section 240-107(6)(b)(II), C.R.S., sets forth a statutory exception to this provision and specific requirements pertaining to delegated medical functions in some acute care hospitals.~~

   ~~c. Eight Physician Assistant Limit. Except as otherwise provided in Section 7.1(E) of these Rules, no physician shall be the primary supervising physician for more than eight specific, individual physician assistants. The names of such physician assistants shall appear on the form in compliance with Section 7.3 of these Rules. The primary supervising physician may supervise additional physician assistants other than those who appear on the form in compliance with Section 7.3 of these Rules. In other words, a primary supervising physician may also be a~~

**3**

~~secondary supervising physician, as set forth below, for additional physician assistants so long as such supervision is in compliance with these Rules.~~

d. ~~Primary Supervising Physician. Except as set forth in Section 7.1(B)(5) of these Rules, a physician licensed to practice medicine by the Board and actively practicing medicine in Colorado as defined in Section 7.1(B)(1) may delegate to a physician assistant licensed by the Board the authority to perform acts that constitute the practice of medicine only if a form in compliance with Section 7.3 of these Rules is on record with the Board. The physician(s) whose name appears on the form in compliance with Section 7.3 of these Rules shall be deemed the "primary supervising physician." The supervisory relationship shall be deemed to be effective for all time periods in which a form in compliance with Section 7.3 of these Rules is on file with the Board.~~

~~A physician assistant shall have at least one primary supervising physician for each employer. If the employer is a multi-specialty organization, e.g., a multi-specialty practice, hospital, hospital system or health maintenance organization, the physician assistant shall have a primary supervising physician, duly registered with the Board, per specialty practice area. When performing delegated tasks, the physician assistant's clinical practice should be consistent with and in the scope of the delegating physician's education, training, experience, and active practice.~~

e. ~~Secondary Supervising Physician. Other than the supervising physician whose name appears on the form in compliance with Section 7.3 of these Rules, a physician licensed to practice medicine by the Board and actively practicing medicine in Colorado as defined in Section 7.1(B)(1), may delegate to a physician assistant licensed by the Board the authority to perform acts which constitute the practice of medicine only as permitted by Section 7.1(D) of these Rules. Such physician shall be termed a "secondary supervising physician." Secondary physician supervisors do not need to be registered with the Board.~~

f. ~~Delegation of Medical Services. Delegated services must be consistent with the delegating physician's education, training, experience and active practice. Delegated services must be of the type that a reasonable and prudent physician would find within the scope of sound medical judgment to delegate. A physician may only delegate services that the physician is qualified and insured to perform and services that the physician has not been restricted from performing. Any services rendered by the physician assistant will be held to the same standard that is applied to the delegating physician.~~

4. ~~Responsibilities of and Supervision by the Primary Supervising Physician~~

a. ~~Compliance with these Rules. Both the supervising physician and the physician assistant are responsible for implementing and complying with the statutory requirements and the provisions of these Rules.~~

b. ~~Responsibility for Actions of a Physician Assistant. A primary supervising physician may supervise and delegate responsibilities to a physician assistant in a manner consistent with the requirements of these Rules. Except as provided in Sections 7.1(C)(2) and 7.1(D) of these Rules, the primary supervising physician may be responsible if a supervised physician assistant commits unprofessional conduct as defined in section 12-240-121(1)(j), C.R.S., or if such physician assistant otherwise violates these Rules. The Board may take into consideration mitigating circumstances in determining whether sanctions involving the primary supervising physician are necessary to protect the public on a case by case~~

**4**

~~basis. A primary supervising physician may be responsible if a supervised physician assistant commits negligence, except as exempted by section 12-240-114.5(5)(c), C.R.S.~~

~~c.~~ ~~The primary supervising physician shall not be responsible for the conduct of a physician assistant where that physician assistant was acting under the supervision of another primary supervising physician and there is a form in compliance with Section 7.3 of these Rules signed by that other primary supervising physician. The primary supervising physician shall also not be responsible for the conduct of a physician assistant where it is established by documentation or other reliable means that the physician assistant consulted with a secondary supervising physician and that the secondary supervising physician was clearly overseeing, or was otherwise responsible for the conduct of the physician assistant, for an episode of care.~~

~~d.~~ ~~License Status. Before authorizing a physician assistant to perform any medical service, the supervising physician should verify that the physician assistant has an active and current Colorado license issued by the Board.~~

~~e.~~ ~~Qualifications. Before authorizing a physician assistant to perform any medical service, the supervising physician is responsible for evaluating the physician assistant's education, training and experience to perform the service safely and competently.~~

f. Performance Evaluation

(1) A ~~primary supervising~~ physician who ~~supervises~~ has entered into a Collaborating Agreement with a physician assistant shall develop and carry out a periodic Performance Evaluation as required by these Rules and section 12-240-114.5(1)(~~a~~c), C.R.S. The Performance Evaluation should include domains of competency relevant to the particular practice and utilize more than one modality of assessment to evaluate those domains of competency. The Performance Evaluation should take into account the education, training, experience, competency and knowledge of the individual physician assistant for whatever ~~specialty~~ practice area in which the physician assistant is engaged.

(2) The statutory relationship between the physician and physician assistant is by its nature a team relationship. The purpose of the Performance Evaluation is to enhance the collaborative nature of the team relationship, promote public safety, clarify expectations, and facilitate the professional development of an individual physician assistant.

(3) The domains of competency may be dependent upon the type of practice the physician assistant is engaged in and may include but are not limited to:

(a) Medical knowledge;

(b) Ability to perform an appropriate history and physical examination;

(c) Ability to manage, integrate and understand objective data, such as laboratory studies, radiographic studies, and consultations;

**5**

    (d)  Clinical judgment, decision-making and assessment of patients;

    (e)  Accurate and appropriate patient management;

    (f)  Communication skills (patient communication and communication with other care providers);

    (g)  Documentation and record keeping;

    (h)  Collaborative practice and professionalism;

    (i)  Procedural and technical skills appropriate to the practice.

  (4)  The modalities of assessment to evaluate domains of competency may include but are not limited to:

    (a)  Co-management of patients;

    (b)  Direct observation;

    (c)  Chart review with identification of charts reviewed;

    (d)  Feedback from patients and other identified providers.

  (5)  Performance evaluations must occur with at least the minimum frequency required in section 12-240-114.5(2)(b)(I)(C), C.R.S.

  (6)  A ~~primary supervising~~ physician or physician group must maintain accurate records and documentation of the Performance Evaluations, including the initial Performance Evaluation and periodic Performance Evaluations for each physician assistant ~~supervised, and the Supervisory Plans.~~ with whom they have entered into a Collaborative Agreement.

  (6<u>7</u>)  The Board may audit a ~~supervising~~ physician's or physician group's performance assessment records. Upon request, the ~~supervising~~ physician or physician group shall produce records of the performance assessments as required by the Board.

~~g.  Supervisory Plan.~~

<u>4.</u>

  ~~The purpose of the initial Supervisory Plan is to lay the foundation for the ongoing growth and professional development of the physician assistant's clinical practice and abilities and to promote the collaborative relationship between the physician assistant and supervising physician. This initial Supervisory Plan should also be used to address any gaps and/or deficiencies identified in the physician assistant's clinical competencies during the initial performance period.~~

  ~~Elements that **should** be incorporated into the Supervisory Plan may include, but are not limited to:~~

  ~~(1)  Nature of the Clinical Practice (areas of specialty, practice sites, populations served, ambulatory and inpatient expectations, etc.);~~

**6**

~~(2) Specific expectations and duties of the physician assistant;~~

~~(3) Expectations around physician(s) support, supervision, consultation and back up;~~

~~(4) Methods and modes of communication, co-management and collaboration;~~

~~(5) Specific clinical instances in which the physician assistant should ask for physician back up;~~

~~(6) Plan for on-going professional education, skill acquisition, gap analysis and career development;~~

~~(7) List of secondary supervisors anticipated to participate in the PA's practice;~~

~~(8) Schedule of performance assessments and anticipated modalities by which the practice will be assessed and domains that will be assessed.~~

~~(9) Other pertinent elements of collaborative, team-based practice applicable to the specific practice or individual physician and physician assistant.~~

~~h. Availability of the Supervising Physician~~

~~(1) The supervising physician must provide adequate means for communication with the physician assistant.~~

~~(2) If not physically on site with the physician assistant, the primary or secondary supervising physician must be readily available by telephone, radio, pager, or other telecommunication device.~~

~~5. Responsibilities of the Secondary Supervising Physician~~

~~a. If a physician who is not the primary supervising physician consults with a physician assistant regarding a particular patient, the physician is a secondary supervising physician. The physician assistant must document the consultation date and name of all physicians consulted in the patient chart.~~

~~b. Responsibility for Actions of a Physician Assistant. Such supervising physician may be responsible for any action or omission involving the practice of medicine supervised by the secondary supervising physician involving the particular patient. The Board may take into consideration mitigating circumstances in determining whether sanctions involving the secondary supervising physician are necessary to protect the public on a case by case basis.~~

6. Waiver of Provisions of these Rules

    a. Criteria for Obtaining Waivers.

        (1) Upon a showing of good cause, the Board may permit waivers of any provision of these Rules~~, except waiver of the primary supervision of more than eight physician assistants~~.

**7**

    (2)  Factors to be considered in granting such waivers include, but are not limited to: whether the physician assistant is located in an underserved or rural area ~~distant from the supervising physician~~; the quality of protocols setting out the responsibilities of a physician assistant in the particular practice; any disciplinary history on the part of the ~~supervising physician or~~ the physician assistant <u>or the physician entering into a Collaborating Agreement</u>; and whether the physician assistant~~s~~ in question work~~s~~ less than a full schedule.

    (3)  All such waivers shall be in the sole discretion of the Board. All waivers shall be strictly limited to the terms provided by the Board. No waivers shall be granted if in conflict with state law.

  b.  Procedure for Obtaining Waivers.

    (1)  Applicants for waivers must submit a written application on forms approved by the Board detailing the basis for the waiver request.

    (2)  The written request should address the pertinent factors listed in Section 7.1(E)(1)(b) of these Rules and include a copy of any written protocols in place for the supervision of physician assistants.

    (3)  Upon receipt of the waiver request and documentation, the matter will be considered at the next available Board meeting.

D.  PRESCRIPTION AND DISPENSING OF DRUGS.

 1.  Prescribing Provisions:

  a.  A physician assistant may issue a prescription order for any drug or controlled substance provided that:

    (1)  Each prescription and refill order is entered on the patient's chart.

    ~~(2)  Each written prescription for a controlled substance shall contain, in legible form, the name of the physician assistant and the name, address and telephone number of the supervising physician.~~

    (~~3~~2)  For ~~all~~ <u>each</u>~~other~~ written prescription~~s~~ issued by a physician assistant, <u>the prescription shall contain, in legible form imprinted on the prescription,</u> the physician assistant's name and the address of the health facility where the physician assistant is practicing ~~must by imprinted on the prescription~~.

      (a)  If the health facility is a multi-specialty organization, the name and address of the specialty clinic within the health facility where the physician assistant is practicing must be imprinted on the prescription.

    ~~(4)  Nothing in this Section 7.2 of these Rules shall prohibit a supervising physician from restricting the ability of a supervised physician assistant to prescribe drugs or controlled substances.~~

<span style="color:red">8</span>

    (~~5~~3) A physician assistant may not issue a prescription order for any controlled substance unless the physician assistant has received a registration from the United States Drug Enforcement Administration.

    (~~6~~4) For the purpose of this Rule electronic prescriptions are considered written prescription orders.

    (5) The dispensing of prescription medication by a physician assistant is subject to section 12-280-120(6)(a), C.R.S.

  b. ~~Physician assistants shall not write or sign prescriptions or perform any services that the supervising physician for that particular patient is not qualified or authorized to prescribe or perform.~~

 2. Obtaining Prescription Drugs or Devices to Prescribe, Dispense, Administer or Deliver

  a. No drug that a physician assistant is authorized to prescribe, dispense, administer or deliver shall be obtained by said physician assistant from a source other than a ~~supervising~~ collaborating physician, pharmacist or pharmaceutical representative.

  b. No device that a physician assistant is authorized to prescribe, dispense, administer or deliver shall be obtained by said physician assistant from a source other than a ~~supervising~~ collaborating physician, pharmacist or pharmaceutical representative.

E. REPORTING REQUIREMENTS

 1. ~~Supervisory Form~~Collaborative Agreements.

  a. ~~Any person wishing to form a supervisory relationship in conformance with these Rules shall file with the Board a form as required by the Board.~~A Collaborative Agreement must be in writing and maintained at the main practice location for the physician assistant.

  b. The Collaborative Agreement must include the requirements set forth in section 12-240-114.5(2)(a), C.R.S.

  ~~b~~c. The form shall be signed by the ~~primary supervising~~ physician and the physician assistant. ~~or assistants for whom the physician intends to be the primary supervising physician~~.

~~c~~d. ~~No primary supervising physician shall be a primary supervising physician for more than eight specific, individual physician assistants~~Collaborative Agreements for physician agreements with fewer than five thousand practice hours, or for physician assistants changing practice areas with fewer than three thousand hours in the new practice area shall be a supervisory agreement and include the additional requirements set forth in section 12-240-114.5(2)(b), C.R.S.~~.~~

  ~~d. The names of no more than eight individual physician assistants shall appear on the form in compliance with this Section of these Rules.~~

**9**

> e. ~~The supervisory relationship acknowledged in the form shall be deemed to continue for purposes of these Rules until specifically rescinded by either the physician assistant or the primary supervising physician in writing.~~
>
> Effective 12/30/83; Revised 05/30/85; Revised 12/30/85; Revised 8/30/92; Revised 11/30/94; Revised 12/1/95; Revised 12/14/95; Revised 3/30/96; Revised 3/30/97; Revised 9/30/97; Revised 3/30/98; Revised 9/30/98; Revised 06/30/00; Revised 12/30/01; Revised 9/30/04; Revised 2/9/06, Effective 3/31/06; Emergency Rule Revised and Effective 7/01/10; Revised 08/19/10, Effective 10/15/10; Revised 11/15/12, Effective 01/14/2013; Revised 5/22/14, Effective 7/15/14; Revised 8/20/15, Effective 10/15/15; Emergency Rule Revised And Effective 8/18/16; Permanent Rule Revised 8/18/16; Effective 10/15/16; Permanent Rule Revised 2/15/18, Effective _____
>
> …

### 1.32 RULES AND REGULATIONS REGARDING GENERALLY ACCEPTED STANDARDS OF MEDICAL PRACTICE REGARDING PREGNANCY-RELATED SERVICES

A. Basis: The authority for promulgation of Rule 1.xx ("these Rules") by the Colorado Medical Board ("Board") is set forth in sections 24-4-103, 12-240-106(1)(a), and 12-30-120(2), C.R.S.

B. Purpose: The purpose of these rules and regulations is to implement the requirements of section 12-30-120(2), C.R.S.

C. Definitions

  1. "Abortion" has the meaning set forth in section 25-6-402(1), C.R.S.

  2. "Medication abortion" has the meaning set forth in section 12-30-120(1)(b), C.R.S.

  3. "Medication abortion reversal" has the meaning set forth in section 12-30-120(1)(c), C.R.S.

D. Standard of Care Considerations

  1. Compliance with generally accepted standards of medical practice requires a licensee to exercise the same degree of knowledge, skill, and care as exercised by licensees in the same field of medicine at the time care is rendered. Substandard care cannot be excused on the grounds that other licensees also provided care which deviates from generally accepted medical standards. Ascertaining the objectively reasonable standard of care is more than just a factual finding of what all, most, or even a "respectable minority" of licensees do. Rather, licensees will be judged according to the tenets of the school of practice to which the licensee professes to follow.

  2. The Board evaluates generally accepted standards of medical practice on a case-by-case basis. Each instance of medical care will involve its own unique set of facts that the Board must evaluate against the backdrop of evidence-based practice standards. For that reason, the Board does not regularly adopt rules establishing a single standard of care applicable to all situations.

  3. In evaluating whether a licensee's provision of medication abortion reversal meets generally accepted standards of medical practice, the Board will evaluate the scope and nature of information exchanged between the licensee and patient prior to services being provided. The Board anticipates that a fully informed consent will include, at a minimum,

information about the risks, benefits, likelihood of intended outcome of the proposed treatment, and likelihood of achieving the intended outcome without the proposed treatment in order for the patient to make an informed decision about whether to undertake the treatment.  The Board anticipates that the licensee will document the substance of all informed consent discussions and will place a copy of all written informed consent disclosures within the patient's chart.

4. The Board will not treat medication abortion reversal as a *per se* act of unprofessional conduct. Rather, the Board will investigate all complaints related to medication abortion reversal in the same manner that it investigates other alleged deviations from generally accepted standards of medical practice under section 12-240-121(1)(j), C.R.S. Licensees are expected to practice evidence-based medicine, and any licensee who provides unscientific treatments that fall below the generally accepted standard of care may be subject to discipline.

Effective _____

11