# Exhibit T:

# Plaintiffs' Second Comment on Joint Rulemaking



# SB 23-190 Rulemaking Comment of Denise "Dede" Chism, MSN, PNNP, Abby Sinnett, MS, WHNP, and Kathleen Sander, MD, OB-GYN, Submitted on July 28, 2023

To the Members of the Colorado Medical Board, State Board of Nursing, and State Board of Pharmacy:

We, Denise "Dede" Chism, Abby Sinnett, and Kathleen Sander, submit this comment on behalf of ourselves and Bella Health and Wellness, in response to the proposed rule implementing Senate Bill 23-190.

The statute makes it "unprofessional conduct" that is "subject to discipline" for a licensee to "provide[], prescribe[], administer[], or attempt[] medication abortion reversal in this state." Senate Bill 23-190 § 3(2)(a). There is only one way to displace that statutory default rule: the Medical, Nursing, and Pharmacy Boards, "in consultation with each other," must adopt "rules finding that it is a generally accepted standard of practice to engage in medication abortion reversal." *Id.*

The proposed rule fails to make the critical finding that abortion pill reversal is a generally accepted standard of practice. It thus leaves in place the statutory rule that abortion pill reversal *is* unprofessional conduct. As a result, we and all other providers of abortion pill reversal treatment remain exposed to Board and public complaints that we are breaking the law—at the risk of significant reputational harm to our practice—and to professional discipline, including the loss of our licenses. And patients, including the numerous abortion pill reversal patients currently under our care, remain at risk of losing lifesaving treatment to continue their pregnancies.

The proposed rule states instead that "[t]he Board will not treat medication abortion reversal as a *per se* act of unprofessional conduct." § 1.XX.D(4). But that flies in the face of the statutory language, and "[a]ny rule that is inconsistent with or contrary to a statute is void."[1]

Moreover, no abortion pill reversal is ever provided in a vacuum. The proposed rule itself acknowledges that obtaining informed consent requires a discussion of risks, benefits, and the "likelihood of intended outcome." § 1.XX.D(3). At Bella, we routinely advise patients that abortion pill reversal poses no material safety risk to a pregnant woman or her fetus. We also advise patients—consistent with the weight of credible medical evidence—that there is good reason to believe that abortion pill

---

[1] *Colo. Consumer Health Initiative v. Colo. Bd. of Health*, 240 P.3d 525, 528 (Colo. App. 2010).



reversal is effective (but not guaranteed) to counteract the effects of mifepristone and increase the likelihood of a continued pregnancy.[2]

Are these (or similar) statements grounds for professional discipline? The proposed rule does not say. It thus affords no protection—and no guidance—to any provider who discusses (as she must) the risks, benefits, and likelihood of intended outcome with an abortion pill reversal patient. The rule warns that "[l]icensees are expected to practice evidence-based medicine," and that those who provide "unscientific treatments" are subject to discipline, § 1.XX.D(4)—but it fails to answer the central question of whether the standard statements that accompany abortion pill reversal are "evidence-based" or "unscientific" in this context.

We of course understand that the Boards do not "regularly" adopt rules that "establish[] a single standard of care applicable to all situations." § 1.XX.D(2). But this is no "regular" circumstance. Here the Colorado legislature has enacted a statute that makes one particular medical treatment unprofessional conduct—unless and until the Boards displace that rule. Particularly in these unusual circumstances, Colorado providers—and Colorado patients—deserve the clarity of a direct answer.

Nor are the Boards required to adopt a rule that is "applicable to all situations." *Id*. The only situation at issue here is one in which a pregnant woman has taken mifepristone but not misoprostol, decides to continue her pregnancy, and seeks medical assistance to do so. In these narrow circumstances, abortion pill reversal is the generally accepted treatment—indeed, it is the only known treatment—to counter the effects of the mifepristone and help that woman continue her pregnancy.

We therefore urge the Boards to answer the question posed by Senate Bill 23-190 and adopt the rule that abortion pill reversal is a generally accepted standard of practice. That is the conclusion plainly supported by credible medical data. SB 23-190 Rulemaking Comment of Denise "Dede" Chism, MSN, PNNP, Abby Sinnett, MS, WHNP, and Kathleen Sander, MD, OB-GYN, at 781-88 (June 1, 2023), https://tinyurl.com/5n6hmrms. Indeed, since our initial comment was submitted two additional studies have been published that further strengthen the evidence that abortion pill reversal is safe and effective.[3]

---

[2] *See* Bella Health and Wellness, *Abortion Pill Reversal, FAQs*, https://perma.cc/Z373-26E6 ("If we are able to treat a patient within 72 hours of taking the first medication (mifepristone), we may be able to successfully reverse the course of the abortion.").

[3] *See* Paul L.C. DeBeasi, *Mifepristone Antagonization with Progesterone to Avert Medication Abortion: A Scoping Review*, The Linacre Quarterly (July 2023)



For all these reasons, we suggest amending section (D)(4) of the proposed rule as follows:

> A medical provider who obtains proper informed consent and uses a standardized regimen of high dose progesterone to mitigate the abortifacient effects of mifepristone is practicing within a generally accepted standard of practice. ~~The Board will not treat medication abortion reversal as a *per se* act of unprofessional conduct. Rather, t~~The Board will investigate all complaints related to medication abortion reversal in the same manner that it investigates other alleged deviations from generally accepted standards of medical practice under section 12-255-120(1), C.R.S. Licensees are expected to practice evidence-based medicine, and any licensee who provides unscientific treatments that fall below the generally accepted standard of care may be subject to discipline.

We further suggest amending section (D)(1) as follows:

> Compliance with generally accepted standards of medical practice requires a licensee to exercise the same degree of knowledge, skill, and care as exercised by licensees in the same field of medicine in the same or similar circumstances at the time care is rendered. Substandard care cannot be excused on the grounds that other licensees also provided care which deviates from generally accepted medical standards. Ascertaining the objectively reasonable standard of care is more than just a factual finding of what all, most, or even a "respectable minority" of licensees do. Rather, licensees will be judged according to the tenets of the school of practice to which the licensee professes to follow.

---

https://doi.org/10.1177/00243639231176592. (concluding that "[m]ifepristone antagonization with progesterone to avert medication abortion is a safe and effective treatment"); Christina Camilleri & Stephen Sammut, *Progesterone-Mediated Reversal of Mifepristone-Induced Pregnancy Termination in a Rat Model: an Exploratory Investigation*, 13 Scientific Reports 10942 (2023), https://perma.cc/4SAL-DDP3 ("[O]ur results indicate a clear progesterone-mediated reversal of an initiated mifepristone-induced termination in a rat model at first-trimester human equivalent"). Copies of both articles are submitted separately and incorporated by reference in our testimony.

p. 303-789-4968 | f. 303-789-6018 | www.bellanwc.org | 180 E. Hampden Ave. Suite 100, Englewood, CO 80113

**3**

# BELLA
## health + wellness
### WOMEN • MEN • CHILDREN

\* \* \*

Colorado's legislature has taken aim at a specific medical treatment that is often provided to Colorado women in need. That treatment is legal throughout the country and around the world. It is safe and well-supported by medical evidence, and it has helped many Colorado women—including dozens of our patients—save their babies.

We respectfully ask the Boards to answer the legislature's question directly and provide Colorado practitioners the clarity they need and deserve to continue providing abortion pill reversal treatment to the women who seek it.

Thank you for your time and consideration.

Sincerely,

_Denise "Dede" Chism_     7/28/2023
Denise "Dede" Chism     Date

_Abby Sinnett_     7-28-2023
Abby Sinnett     Date

_Kathleen Sander_     7/28/2023
Kathleen Sander     Date