# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| BELLA HEALTH AND WELLNESS et al., | Case No. 1:23-cv-939-DDD-SKC |
| *Plaintiffs*, | |
| v. | |
| PHIL WEISER, in his official capacity as Attorney General of Colorado, et al., | |
| *Defendants*. | |

## PLAINTIFFS' CONSOLIDATED SUR-REPLY TO DEFENDANTS' MOTIONS TO DISMISS

Mark L. Rienzi
Rebekah P. Ricketts*
Laura Wolk Slavis
Colten L. Stanberry
Kelly R. Oeltjenbruns
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave, N.W.
Suite 400
Washington, D.C. 20006
(202) 955-0095
mrienzi@becketlaw.org

*Admitted only in Texas. Supervised by a member of the D.C. Bar.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

I.   Plaintiffs have established a credible threat of enforcement. ................................. 1

II. The District Attorneys' arguments to the contrary are unpersuasive. ................... 5

CONCLUSION .................................................................................................................... 8

CERTIFICATE OF COMPLIANCE ............................................................................... 10

CERTIFICATE OF SERVICE ......................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*303 Creative LLC v. Elenis*,
  6 F.4th 1160 (10th Cir. 2021) .................................................................................. 2

*Baker v. USD 229 Blue Valley*,
  979 F.3d 866 (10th Cir. 2020) .................................................................................. 4

*Brown v. Buhman*,
  822 F.3d 1151 (10th Cir. 2016) ..................................................................... 4, 5, 6, 7

*Colorado Union of Taxpayers, Inc. v. Griswold*,
  No. 22-1122, 2023 WL 5426581 (10th Cir. Aug. 23, 2023) ...................................... 3

*D.L.S. v. Utah*,
  374 F.3d 971 (10th Cir. 2004) .................................................................................. 3

*Hill v. Williams*,
  No. 16-cv-2649, 2016 WL 8667798 (D. Colo. Nov. 4, 2016) .............................. 3-4, 7

*Italian Colors Rest. v. Becerra*,
  878 F.3d 1165 (9th Cir. 2018) .................................................................................. 1

*Mangual v. Rotger-Sabat*,
  317 F.3d 45 (1st Cir. 2003) ...................................................................................... 2

*Mink v. Suthers*,
  482 F.3d 1244 (10th Cir. 2007) ........................................................................ 3, 5, 6

*Peck v. McCann*,
  43 F.4th 1116 (10th Cir. 2022) ........................................................................ 2, 3, 4, 8

*Rio Grande Found. v. Oliver*,
  57 F.4th 1147 (10th Cir. 2023) ................................................................................. 1

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ..................................................................................... 1, 2, 3, 7

*Tingley v. Ferguson*,
  47 F.4th 1055 (9th Cir. 2022) ................................................................................... 2

*United Food v. IBP, Inc.*,
  857 F.2d 422 (8th Cir. 1988) .................................................................................... 5

*Vitagliano v. County of Westchester*,
  71 F.4th 130 (2d Cir. 2023) ................................................................................. 2

*Ward v. Utah*,
  321 F.3d 1263 (10th Cir. 2003) ............................................................................ 4

*Winsness v. Yocom*,
  433 F.3d 727 (10th Cir. 2006) ...................................................................... 3, 5, 6

**Statutes**

Colo. Rev. Stat. §6-1-105 ............................................................................................ 8

Colo. Rev. Stat. §6-1-113 ............................................................................................ 2

## INTRODUCTION

District Attorneys Kellner, McCann and Dougherty continue to claim that their disavowals deprive Bella of standing. But despite those protestations, the disavowals they offer simply do not suffice under Tenth Circuit precedent. This Court should deny the District Attorneys' motions to dismiss.

## ARGUMENT

### I. Plaintiffs have established a credible threat of enforcement.

"To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (cleaned up). In a First Amendment pre-enforcement challenge, a plaintiff shows an injury in fact when (1) the plaintiff "has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest" that is (2) "arguably proscribed by the statute" and (3) there exists a "credible threat of enforcement." *Id.* at 160, 162, 167 (cleaned up). "[W]hen the threatened enforcement effort implicates First Amendment rights, the [standing] inquiry tilts dramatically toward a finding of standing." *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1172 (9th Cir. 2018); *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1160 (10th Cir. 2023) (standing inquiry is "lessen[ed]" in "pre-enforcement challenges").

1

The District Attorneys do not—and cannot—contest that Plaintiffs' speech is "arguably affected with a constitutional interest," or that it is "arguably proscribed" by Section 2 of SB 23-190. Instead, they move to dismiss based solely on the claim that Plaintiffs face no "credible threat" of enforcement in light of the District Attorneys' respective disavowals. They are wrong.

To begin, showing a "credible threat" of enforcement, *Driehaus*, 573 U.S. at 167, is not "a difficult bar for plaintiffs to clear in the First Amendment pre-enforcement context." *Peck v. McCann*, 43 F.4th 1116, 1133 (10th Cir. 2022) (collecting cases); *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003) ("evidentiary bar that must be met [to show credible threat] is extremely low"). The Tenth Circuit considers: (1) past enforcement history; (2) whether enforcement authority is limited to the government or could instead be brought by "any person'" and (3) "whether the state disavowed future enforcement." *Peck*, 43 F.4th at 1132 (cleaned up).

Here, there is no enforcement history because the law is brand new—and was immediately placed on ice based on Defendants' representations that they would not enforce it pending the conclusion of the rulemaking process. Dkt.48 at 5-6. In any event, a "history of enforcement[] carries little weight when the challenged law is relatively new and the record contains little information as to enforcement." *Tingley v. Ferguson*, 47 F.4th 1055, 1069 (9th Cir. 2022) (cleaned up); *Vitagliano v. County of Westchester*, 71 F.4th 130, 138 (2d Cir. 2023) (per curiam) (similar).

2

The remaining two factors weigh decisively in Plaintiffs' favor. In addition to the government, *Peck*, 43 F.4th at 1132, "any person" may bring a CCPA action, Colo. Rev. Stat. §6-1-113(1)(a), which "bolster[s]" the "credibility of th[e] threat," *Driehaus*, 573 U.S. at 164; *see also 303 Creative LLC v. Elenis*, 6 F.4th 1160, 1174 (10th Cir. 2021). That is particularly so here, where Plaintiffs' stance on polarizing issues is well-known to the public, making them "easy targets" for complaints filed by "opponents." *Driehaus*, 573 U.S. at 164; *see also Colorado Union of Taxpayers, Inc. v. Griswold*, No. 22-1122, 2023 WL 5426581, at *4 (10th Cir. Aug. 23, 2023) (similar).

Second—and most relevant here—the District Attorneys have repeatedly refused to issue adequate disavowals of future enforcement, which carries "heavy weight" in the analysis. *Peck*, 43 F.4th at 1133. In the Tenth Circuit, disavowals sufficient to deprive Plaintiffs of Article III standing require a permanent disavowal akin to an express finding that the law is constitutionally deficient. *Mink v. Suthers*, 482 F.3d 1244, 1254-55 (10th Cir. 2007) ("[B]ased on his review of controlling Supreme Court precedents, the district attorney disclaimed an intent to prosecute immediately after the lawsuit was filed."); *Winsness v. Yocom*, 433 F.3d 727, 733, 735 (10th Cir. 2006) (plaintiff's rights were "protected by a recent Supreme Court decision holding unconstitutional a similar [flag-burning] statute from another state"); *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004) ("Any lingering threat of prosecution that might have survived the prosecutors' affidavits has now been snuffed out by the Supreme Court's recent decision invalidating Texas' [similar] statute."); *see Hill v. Williams*, No. 16-

3

cv-2649, 2016 WL 8667798, *5 (D. Colo. Nov. 4, 2016) (similar).[1] Such a permanent disavowal can also be found where a prosecutor has a written "formal office policy" of nonenforcement that "is consistent with, not a departure from, what was apparently a longstanding de facto policy of non-prosecution" and that would protect not only plaintiffs, but "others similarly situated." *Brown v. Buhman*, 822 F.3d 1151, 1159, 1171, 1176 (10th Cir. 2016).

Consistent with this logic, the Tenth Circuit has repeatedly rejected arguments that a plaintiff lacked standing where a government disavowal failed to disclaim permanent future enforcement of the plaintiff's conduct. *See Peck*, 43 F.4th at 1133 ("There is nothing, not even their word, to prevent Ms. McCann or another prosecutor from bringing charges against Ms. Peck for similar statements in the future."); *Ward v. Utah*, 321 F.3d 1263, 1268 (10th Cir. 2003) ("Utah has not indicated either that the underlying primary offense statutes do not apply to Ward's protesting activities or that the felony enhancement under the hate-crimes statute does not apply to Ward's activities.").

The District Attorneys' disavowals lack these hallmarks of permanency. None of them has disclaimed enforcement on constitutional grounds. Nor do any of the District Attorneys claim to have a formal policy that provides criteria on how future CCPA prosecutions will be handled. Simply put, they do not provide the "analysis"

---

[1] Defendants' other cases are not to the contrary. For example, in *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 873-74 (10th Cir. 2020), the Tenth Circuit found that "the pre-enforcement cases do not apply because [the plaintiff] has not alleged a pre-enforcement claim."

4

necessary to "demonstrate the[] legal reasons for not enforcing the statute in this case," such that Plaintiffs can know with confidence that reasoning "would carry over to further statements of the type" they "made or intend[] to make." *Mink*, 482 F.3d at 1257; *see Brown*, 822 F.3d at 1159 (detailing reasoning for non-enforcement under formal office policy). Thus, they are deficient.

## II. The District Attorneys' arguments to the contrary are unpersuasive.

The District Attorneys claim that it is irrelevant that they or future office holders can change course as they wish. *See* Dougherty.MTD.5; McCann.Supp.MTD.3; Kellner.Supp.MTD.2. That is a red herring. To be sufficient, the disavowal must provide "their legal reasons for not enforcing the statute in this case [that] would carry over to [future similar conduct]." *Mink*, 482 F.3d at 1257; *see Winsness*, 433 F.3d at 732 (similar). In other words, adequate disavowals must provide "analysis" and "legal reasons" that the prosecutors (and their successors) would presumably follow, so Plaintiffs have protection from future enforcement as they continue to engage in future conduct.

By contrast, the disavowals here show only a "discretionary present intention not to prosecute" backed up by no formal safeguards. *United Food v. IBP, Inc.*, 857 F.2d 422, 429 (8th Cir. 1988). The basis of DA McCann's disavowal is her "focus[]" on "criminal actions" and her "belie[f]" about the "appropriate use of public resources." Dkt.58-1 at 2. DA Kellner similarly points to his "primar[y] focus[]" on criminal prosecution, and states that he "will not enforce [SB 23-190] against these Plaintiffs" if—

5

and only if—"this Court determines the statute does not violate their First Amendment rights." Dkt.67-1 at 1-3. This type of contingent disavowal, which would leave Plaintiffs open to another lawsuit depending on the outcome of litigation against the AG and Boards, clearly does not suffice. DA Dougherty fares no better. He states that he agreed not to enforce SB 23-190 against Plaintiffs "unless and until the relevant medical boards conclude their rulemaking on this treatment," and that he now cannot prosecute "[b]ecause the Colorado Medical Board did not complete its rulemaking before Bella Health's Lafayette location closed." Dkt.95-1 at 2. Not only does this fail to protect Plaintiffs with anything remotely resembling a permanent policy, it is factually inaccurate. DA Dougherty agreed not to enforce SB 23-190 "until" completion of the rulemaking; that condition precedent is now removed, and nothing prevents him from enforcing SB 23-190 against Plaintiffs tomorrow for their conduct prior to the clinic's closure.[2]

Statements about "focus," "belief," and contingent assertions amount to nothing more than an individualized, present statement about prosecutorial discretion. But if that were enough to defeat pre-enforcement standing, then such standing would

---

[2] In the District Attorneys' response to Plaintiffs' motion for a preliminary injunction, DA Dougherty states he "has determined and confirmed that Bella Health did not violate the CCPA prior to the facility's closure." DAs.PI.Opp.3. This statement, however, was not in the form of either a formal opinion "explain[ing]" why SB 23-190 "could not be constitutionally applied to" Plaintiffs' conduct, *Mink*, 482 F.3d at 1256-57, or a sworn statement, *Winsness*, 433 F.3d at 735; *Brown*, 822 F.3d at 1171-72, and therefore is insufficient.

6

never exist. *See Hill*, 2016 WL 8667798, at *5 (affidavit that "the exercise of prosecutorial discretion and judgment" would shield plaintiffs from prosecution insufficient to defeat credible threat).

District Attorney Kellner retorts that his disavowal is not "a specific exercise of prosecutorial discretion," but rather "the general policy of his office." Kellner.Supp.MTD.2 (citing *Brown*, 822 F.3d at 1171). But his disavowal does not rise to the level of that in *Brown*. There, the "formal office policy" adopted identified specific instances when the district attorney "will prosecute" the underlying statute, and conveyed a reasoned determination for why the plaintiff did not fall within those bounds. *Brown*, 822 F.3d at 1159. And this written, formalized commitment came after a "longstanding de facto policy" of nonenforcement, which was also echoed by the State's policy of nonenforcement. *Id.* at 1176. Kellner's declaration, on the other hand, specified that his decision not to prosecute was conditioned on this Court's resolution of the case and stated the "focus"—rather than the "formal policy"—of his office. Dkt.67-1 at 2. Nor can this politically charged law, as confirmed by the proceedings surrounding SB 23-190's enactment, be compared to the disavowal of a long-dormant policy. Kellner's disavowal thus bears no resemblance to the one in *Brown*, which was addressed to a moribund polygamy statute. And in any event, *Brown* did not involve a statute capable of being enforced by private parties, which independently "bolster[s]" Plaintiffs' credible threat. *Driehaus*, 573 U.S. at 164

7

The District Attorneys' motions to dismiss suffer from a second, fatal flaw: they all fail to address Section 1 entirely. And Section 1 explicitly "applies" two CCPA provisions to "advertising for … or offering to provide or make available medication abortion reversal." §1(3)(b). The District Attorneys claim that Plaintiffs' First Amended Complaint "changed" "[n]othing," McCann.Supp.MTD.2; Kellner.Supp.MTD.3 (similar)—but that is not so. The amended complaint clarifies that Plaintiffs are challenging Section "both on its own and through the CCPA." Am.Compl. ¶¶154, 230, 266-67, 269, 270, 271, 276, 281, 293, Prayer a, c, d, f. Thus, Plaintiffs not only challenge Section 1 of its own force, but also as a prohibition that is implemented through CCPA sections 6-1-103 and 6-1-107. Because of Section 1, those CCPA provisions now categorically prohibit "advertising" and "providing" abortion pill reversal. Colo. Rev. Stat. §6-1-105(1)(e), (1)(rrr). And the District Attorneys have no ability to ignore the CCPA itself. This is a substantive change to which the District Attorneys have failed to acknowledge, much less address in a current and adequate disavowal of any kind.

## CONCLUSION

This Court should deny the District Attorneys' motions to dismiss.

8

Dated: October 9, 2023                    Respectfully submitted,

/s/ Mark L. Rienzi
Mark L. Rienzi
Rebekah P. Ricketts*
Laura W. Slavis
Colten L. Stanberry
Kelly R. Oeltjenbruns
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave, N.W.
Suite 400
Washington, D.C. 20006
(202) 955-0095
mrienzi@becketlaw.org

*Admitted only in Texas. Supervised by a member of the D.C. Bar.

9

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing reply complies with the type-volume limitation set forth in Judge Domenico's Civil Practice Standard III.A.1, as modified by the Court's order dated September 26, 2023. Dkt.93.

/s/ Mark L. Rienzi
Mark L. Rienzi

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2023, I electronically filed the above response with the Clerk of Court via CM/ECF, which will provide electronic copies to counsel of record.

/s/ Mark L. Rienzi
Mark L. Rienzi