IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-939-DDD-SKC

BELLA HEALTH AND WELLNESS, et al.,
    Plaintiffs,
v.

PHIL WEISER, in his official capacity as Attorney General of Colorado, et al.,
    Defendants.

## NURSING BOARD'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

The members of the Colorado Board of Nursing, each in their official capacities,[1] (collectively, "Nursing Board" or "Board") move to dismiss the claims against them under Fed. R. Civ. P. 12(b)(6).

Certificate of Conferral: The undersigned conferred with Plaintiffs' counsel regarding this motion. Plaintiffs oppose the relief requested. Defendant Board does not believe the identified complaint defects are curable by amendment.

### INTRODUCTION

On April 14, 2023, the Governor of Colorado signed into law SB 23-190 ("SB 23-190" or "the Act"). *See* (Doc. 90-10). The Act contains three sections:

- Section 1 is a legislative declaration;

---

[1] The members of the Colorado Board of Nursing, defendants in their official capacities are Bernard Joseph Franta, Lori Rae Hamilton, Karrie Tomlin, Lenny Rothermund, Mackenzie Armani, Phyllis Graham-Dickerson, Brandy Valdez Murphy, Diane Reinhard, Nichele Bratton, Aecian Pendleton, Haley Hitchcock.

- Section 2 amends the Colorado Consumer Protection Act ("CCPA") to make clear that falsely advertising abortion and emergency contraception services is a deceptive trade practice; and
- Section 3 directs the state's medical, nursing, and pharmacy boards to promulgate rules concerning whether medication abortion reversal is a generally accepted standard of practice.

Hours later, Plaintiffs Bella Health and Wellness and three of its providers ("Bella Health") sued the Medical Board, the Nursing Board, the Colorado Attorney General, and three District Attorneys.

Subsequently, Colorado's medical, nursing, and pharmacy boards engaged in the rulemaking required by Section 3 of the Act.[2] As relevant here, the Nursing Board enacted Board of Nursing Rule 1.35. (Doc. 90-26).[3]

Plaintiffs next filed an eight-count amended complaint. The complaint does not specify which claims are brought against which defendants. But any claims brought against the Nursing Board should be dismissed for the following reasons:

- Claims arising under Section 1 fail to state a claim for relief because a legislative declaration does not create substantive law.

---

[2] The state Board of Pharmacy is not a named defendant.
[3] The emergency and permanent rules are identical.

- To the extent any claims under Section 2 are brought against the Nursing Board, Plaintiffs lack standing to assert the claims because the Board has no authority to enforce the CCPA.
- Plaintiffs do not have standing to bring a claim under Section 3 because they fail to establish both a sufficient likelihood of harm and redressability.

## LEGAL STANDARD

A motion to dismiss on the grounds that the plaintiff lacks standing is a challenge to the Court's subject matter jurisdiction. *Irvine v. I.C. Sys., Inc.*, 198 F. Supp. 3d 1232, 1235 (D. Colo. 2016). A plaintiff "bears the burden of establishing" standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

The instant motion also challenges whether Bella Health has stated a claim for relief against the Nursing Board. To survive a motion under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a plausible claim for relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

## ARGUMENT

**I.   To the extent the complaint brings claims against the Nursing Board under Section 1, Bella Health lacks standing or, alternatively, fails to state a claim for which relief can be granted.**

Section 1 is a legislative declaration. It "finds and declares" that the CCPA's "prohibition on deceptive trade practices applies to" advertising or providing "medication abortion reversal." (Doc. 90-10 at 4). But such legislative declarations

3

are not substantive law. They are at most used to construe ambiguous statutes. Colo. Rev. Stat. § 2-4-203(1)(g); *see* Antonin Scalia & Brian Garner, *Reading Law* 217 (Thompson/West 2012) (legislative preamble is "an aside" and "*not* part of the congressionally legislated . . . set of rights and duties."). Bella Health therefore faces no credible threat of enforcement as to Section 1 and lacks standing to challenge it.[4]

Alternatively, Bella Health has not stated a claim against the Board for which relief can be granted as to Section 1. As an executive agency, the Board possesses only the explicit powers granted by the General Assembly in the agency's authorizing statutes. Colo. Rev. Stat. § 24-3.7-101. As Plaintiffs admit in the Amended Complaint, (Doc. 94, at 11-12 ¶ 37), the Nursing Board has enforcement authority only for the Nurse Practice Act. Colo. Rev. Stat. § 12-255-107(1)(c).[5] To the extent that Counts I (Doc. 94, at 56 ¶¶ 228, 230), IV (Doc. 94, at 62 ¶¶ 266-67, at 62-63 269-71, at 63 276), (Doc. 94, at 11-12 ¶¶ 37), V (Doc. 94, at 64-65 ¶ 281), VI (Doc. 94, at 66 ¶ 293), and any claims arising under Section 1 allege injury caused by the Board, those Counts against the Board should be dismissed.

**II.    To the extent the complaint brings claims against the Nursing Board under Section 2, Bella Health lacks standing or, alternatively, fails to state a claim against the Board, because the Board cannot enforce the CCPA.**

---

[4] Defendant Attorney General Weiser has made this same point in his Motion to Dismiss. (Doc. 68 at 3-4).

[5] Defendant Attorney General Weiser has also made this same point in his Motion to Dismiss. (Doc. 68 at 3-4).

4

As stated above, the Board is an executive agency that has no authority to enforce any statute other than the Nurse Practice Act. *See* Colo. Rev. Stat. §§ 24-3.7-101; 12-255-107(1)(c); *Jordan v. Maxim Healthcare Servs, Inc.*, 950 F.3d 724, 739 (10th Cir. 2020). Section 2 of SB 23-190 amends the CCPA, but does not amend the Nurse Practice Act. Because the Board's authority does not extend beyond the Nurse Practice Act, Plaintiffs do not face a credible threat of enforcement from the Board with respect to Section 2, and they accordingly lack standing.

To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc*, 136 S. Ct. at 1547.  The plaintiff bears the burden of proof on each element. *Id.*

The Board cannot enforce the CCPA. Counts IV and VIII should therefore be dismissed against the Board, as they allege that Plaintiffs face a threat of injury from CCPA enforcement. *See Spokeo, Inc*, 136 S. Ct. at 1547. For example, Count VIII alleges that Section 2 is unconstitutionally vague. (Doc 94, at 68 ¶ 311). But even if that is true, it has no relevance to the Board. Section 2 of SB 23-190 does not affect any conduct that the Board has enforcement authority over

Similarly, Count IV makes allegations related only to Section 2 of the Act's amendment of the CCPA – specifically, that it violates Plaintiffs' right to free speech and unconstitutionally codifies viewpoint discrimination. (Doc. 94, at 62-63 ¶¶ 266-271). Again, even were the Court to agree with this allegation, the Board's

enforcement authority is limited to the Nurse Practice Act. None of SB 23-190's provisions alter the Nurse Practice Act or amend the CCPA to provide the Board with any enforcement authority under such Act. Further, Rule 1.35, which now addresses the Board's evaluation of any disciplinary cases involving medication abortion reversal, is the product of the administrative rulemaking process, a process that Plaintiffs do not challenge in Count IV.

Plaintiffs do not face a credible threat of enforcement of Section 2 by the Board. Thus, Counts IV and VIII should be dismissed as to the Board defendants.

### III. With respect to the complaint's claims against the Board under Section 3, Bella Health lacks standing because it fails to establish both a sufficient likelihood of harm and redressability.

As discussed, a plaintiff must establish standing by proving she has suffered an "injury in fact" that is both fairly traceable to the challenged conduct and likely to be redressed by a favorable judicial decision. *See Spokeo*, 578 U.S. at 338. The requested declaratory and injunctive relief must be "likely, as opposed to merely speculative" remedies for Plaintiffs alleged harm. *See Lujan*, 504 U.S. at 561 (internal quotation marks omitted). The plaintiff bears the burden of proof on each element. *Spokeo*, 136 S. Ct. at 1547. Here, Plaintiffs fail to meet their burden with respect to both concrete injury and redressability.

To clarify at the outset, the conduct defined as medication abortion reversal in SB 23-190 applies to a limited number of Nursing Board licensees only. Section 3 prevents "administering ... a drug *with the intent to* interfere with ... a medication

6

abortion." Colo. Rev. Stat. § 12-30-120(2)(a) (emphasis added). The only Nursing Board licensees who can prescribe or provide a medication for a specific medical purpose are advanced practice nurses who hold prescriptive authority ("APN/RXN"). (Doc. 99-2, at 5-8, ¶¶ 9-12). In contrast, *all* other Nursing Board licensees are required to comply with the prescriptive plan of care issued by other providers – and could themselves face discipline for deviating from it. Because the Nursing Board evaluates licensee conduct within the licensee's particular scope of practice, the Board can only "enforce" conduct involving medication abortion reversal as defined by SB 23-190 against APN/RXNs.

> A. **Bella Health fails to establish a sufficient likelihood of harm under Section 3 because, determining whether conduct is proscribed by the Nurse Practice Act and whether the conduct should result in discipline are distinct and fact-intensive determinations.**

To establish injury in fact, a plaintiff must show "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

A plaintiff who fears injury from the *future* enforcement of a law may seek pre-enforcement review, as Plaintiffs do here. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014) ("*SBA List*"). Pre-enforcement challenges are limited, however, to those cases where enforcement is "certainly impending, or there is a substantial risk that the harm will occur." *Id.* at 158 (internal quotation marks omitted); *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 873 (10th Cir. 2020). Absent

a credible threat of harm, even an unconstitutional statute "does not entitle anyone to sue, even if they allege an inhibiting effect on constitutionally protected conduct prohibited by the statute.'" *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007) (quoting *Winsness v. Yocom*, 433 F.3d 727, 731 (10th Cir. 2006)).

In a pre-enforcement challenge, a plaintiff "must typically demonstrate (1) an intention to engage in conduct arguably affected with a constitutional interest but proscribed by the challenged statute, and (2) that there exists a credible threat of prosecution thereunder." *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 545 (10th Cir. 2016) (internal quotation marks omitted).

Here, Plaintiffs assert an intention to prescribe progesterone to patients who ingest mifepristone and then decide they want to try to maintain the pregnancy. Plaintiffs further assert that SB 23-190 amounts to a per se ban of their intended conduct. However, this assertion misconstrues Rule 1.35 and the Board's handling of disciplinary cases. In the absence of the alleged per se ban on their conduct, Plaintiffs fail to demonstrate a credible threat of prosecution – that the Board will impose discipline due to SB 23-190.

The Nursing Board's handling of disciplinary cases and discretion whether to impose a sanction upon finding conduct subject to discipline under the Nurse Practice Act remains unchanged as a result of SB 23-190.  The Board investigates licensee conduct consistent with the procedures in the Nurse Practice Act and Colorado's Administrative Procedure Act. Colo. Rev. Stat. §§ 12-255-107(1)(h); 12-

255-119; 12-20-401, *et seq*. The Board evaluates a complaint, the licensee's response, and any other information about licensee's conduct collected during the Board's investigation. §§ 12-20-403(1); 12-255-119(3)(a)(I)(A), (II) & (III), C.R.S. When the Board finds a licensee engaged in conduct that violates the Nurse Practice Act, the Board *may* impose discipline. § 12-20-404(1), C.R.S. But the Board may also decide that the conduct violates the Nurse Practice Act, yet "does not warrant formal action," in which case the Board can dismiss the case and may issue a confidential letter of concern. § 12-20-404(5). Put another way, even when the Board finds that conduct subjects a licensee to discipline, the Board does not always *impose* discipline . *See, e.g.*, (Doc. 32-2, ¶ 10); (Doc. 50 at 55-58) (declaration and testimony from the Board's witness explaining that the Board does not always impose discipline when it finds licensee conduct violated the Nurse Practice Act). None of this changes or is impacted by SB 23-190.

With respect to discipline of licensees, the Board's authority to impose discipline arises only pursuant to the Nurse Practice Act. Accordingly, there are two ways in which the Nursing Board can "enforce" Section 3 of SB 23-190 under the Nurse Practices Act: (1) section 12-255-120(1)(f), which subjects a licensee to – but does not require – imposition of discipline upon proof a licensee has "practiced nursing ... in a manner that fails to meet generally accepted standards"; and (2) section 12-255-120(1)(e), which subjects a licensee to – but does not require –

9

imposition of discipline upon proof a licensee has "violated ... an applicable provision of article 20 or 30 ... of this title 12."[6]

In passing Rule 1.35, the Board made clear that it will not enforce SB 23-190 as a per se ban *requiring* the imposition of disciplinary sanctions with regard to medication abortion reversal. The Board instead announced that it will evaluate medication abortion reversal procedures that *may* result in discipline following the enactment of SB 23-190 essentially as it would have beforehand – on a case-by-case basis. Rule 1.35 states

> The Board will not treat medication abortion reversal provision, prescription, administration, or attempt at any of the preceding conduct with respect to medication abortion reversal as a per se act subjecting a licensee to discipline pursuant to Title 12, C.R.S. Rather, the Board will investigate all complaints related to medication abortion reversal in the same manner that it investigates other alleged deviations from generally accepted standards of nursing practice under section 12-255-120(1).

Rule 1.35 (Doc. 90-26 at 3). In light of Rule 1.35, Section 3 is hardly a per se ban on Plaintiffs' intended conduct – at least with respect to Nursing Board licensees.

In light of Rule 1.35 and sections 12-255-107(1)(h), and 12-20-404(5), C.R.S. of the Nurse Practice and Administrative Procedures Acts, whether Plaintiffs' future conduct will result in the imposition of discipline on their licenses is a

---

[6] Section 3 created Colo. Rev. Stat. section 12-30-120 stating, as relevant here, that a licensee "engages in unprofessional conduct or is subject to discipline" if the licensee "provides, prescribes, administers, or attempts medication abortion reversal in this state." The Board of Nursing does not discipline licensees for "unprofessional conduct." *See* section 12-255-120(1). In contrast, the Medical Board does discipline licensees for "unprofessional conduct." *See* section 12-240-121.

question the Board will determine based on a multitude of facts in each such case. Plaintiffs therefore cannot meet their burden of establishing a credible threat of prosecution based on speculation about hypothetical future fact patterns that the Board will evaluate on a case-by-case basis, and which would have been evaluated in the same manner before SB 23-190.

The number of factors the Board will have to take into account in determining whether conduct violates the Nurse Practice Act and whether to impose discipline is substantial. For example, the Board first must determine whether there is sufficient evidence for it to conclude the patient care at issue fits the context of medication abortion reversal instead of a multitude of other contexts where an individual may seek pregnancy-related care. Specifically, for the conduct to be proscribed, the Board must find that the evidence establishes the licensee was: "administering, dispensing, distributing, or delivering a drug with the intent to interfere with, reverse, or halt a medication abortion." Next, even if the Board concludes that the facts establish conduct meeting the definition of SB 23-190, whether the Board finds that the conduct "warrants formal action" in the form of a disciplinary sanction, is a separate question for the Board to answer. *See* Colo. Rev. Stat. §§ 12-20-404(1), (5). In the absence of any evidence indicating that the Board will conclude Plaintiffs' proposed conduct is proscribed conduct in every case – something Rule 1.35 declares the Board will not do – and that the Board will choose

11

to impose a disciplinary sanction, Plaintiffs have failed to establish a sufficient likelihood of harm under SB 23-190.

If the General Assembly meant to create a per se ban, it could have chosen to amend the Nurse Practice Act accordingly. Instead, the legislature enacted a provision of general applicability in SB 23-190 that the Board will evaluate consistent with the specific provisions of the Nurse Practice Act and Rule 1.35. Nurse licensees will only be subject to discipline by the Board under the Nurse Practice Act after receipt of a complaint, an opportunity to respond, and an analysis of whether the licensees particular conduct meets the definitions set forth in the Act. Even if the Board finds a licensee's conduct may be subject to discipline based on the language of SB 23-190, the Board still has discretion under the Nursing Practice Act not to impose any discipline.

### B. The requested orders will not redress the harm claimed by Plaintiffs.

1. Declaratory Relief

In light of Rule 1.35, Plaintiffs have also failed to demonstrate that the requested declaratory order (Doc. 94 at 70-72, ¶¶b, c)[7] would redress their alleged

---

[7] b. Declare that SB 23-190 and its implementing regulations are unconstitutional both on their face and as applied to Plaintiffs and their current and prospective patients;

c. Declare that:
1. Section 3 of SB 23-190 and its implementing regulations, and Section 1 of SB 23-190 (on its own and through the CCPA), violate the Free Exercise Claus of the First

12

injury, as Plaintiffs would still be subject to discipline by the Board in conjunction with medication abortion reversal in the same way they were before – if the facts of a particular case indicate a violation of generally applicable standards of care and the Board chooses to impose such discipline. *See, e.g., Lujan,* at 562 (plaintiffs failed to establish standing where the harm at issue could not be redressed by a court order issued to the parties to the case). For example, any time the Board reviews a medication abortion reversal case it may consider whether the conduct posed a risk to patient safety, whether the conduct met the generally accepted standard for the practice of nursing, *and* whether the conduct meets SB 23-190s definition of proscribed conduct. *See, e.g.,* Colo. Rev. Stat. §§ 12-255-120(1)(c) (creates a risk of patient harm); 12-255-120(1)(e) ("violated or has aided or knowingly permitted any person to violate any provision of this part 1 or an applicable provision of article 20 or 30 of this title 12"); 12-255-120(1)(f) (failure to meet the standards for the nursing

---

Amendment to the United States Constitution because they are not generally applicable;
2. SB 23-190 and its implementing regulations violate the Free Exercise Clause of the First Amendment to the United States Constitution because they are not neutral;
> …
> 5. SB 23-190 and its implementing regulations violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution by deny Plaintiffs' their right to medical treatment and their right not to undergo an abortion against their will;
> 6. SB 23-190 and its implementing regulations violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by discriminating against women who have changed their minds about going through with an abortion;
> …

practice); *see also,* Colo. Rev. Stat. § 12-30-120(2)(a) (codification of SB 23-190). The Board could find the conduct subject to discipline pursuant to all, some, or none of those grounds for discipline. Further, the Board could impose discipline pursuant to all, some, or none of those grounds for discipline. *See* 12-255-107(1)(c); *Heckler v. Chaney*, 105 S. Ct. 1649, 1657 (1985); *see also, State Bd. of Med. Examiners v. McCroskey,* 940 P.2d 1044, 1049 (Colo. 1996) (upholding board decision taken within its expertise, supported by the record, and having a reasonable basis in law).

Any order issued in this case would be limited to the context of this case, i.e., consideration of SB 23-190, and would not be able to extend to other actions the Board might take based on other grounds for discipline in the Nurse Practice Act. Eliminating only the Board's ability to consider SB 23-190 pursuant to the "catch-all" provision (Colo. Rev. Stat. § 12-255-120(1)(e)) does not touch the Board's discretion to consider whether a licensee's participation in medication abortion reversal otherwise subjects them to discipline under the Nurse Practice Act. Even if the Court issued the requested declaratory orders in this case, Plaintiffs would remain subject to discipline for medication abortion reversal, to the same extent they were prior to the enactment of SB 23-190.

      2. <u>Injunctive relief</u>

Plaintiffs' requested injunctive relief would convey only a similarly speculative benefit. (Doc 94 at 70-72, ¶¶ a, d).[8] If the Court were to enjoin the Board from applying the statute and Rule 1.35 that were enacted pursuant to Section 3 of SB 23-190, when reviewing medication abortion reversal complaints, the Board would continue to follow its standard practice of applying a case-by-case analysis to determine whether the licensee's conduct is subject to discipline under *any* of the grounds for discipline in the Nurse Practice Act and if so, whether discipline is warranted. *See* Colo. Rev. State. § 12-255-120(1). The requested declaratory order would thus convey no actual benefit to Plaintiffs.

In *Opala v. Watt*, the Tenth Circuit dismissed a case for lack of standing where the plaintiff sought to overturn a rule in hope of being returned to his former position of advantage; a court's order, however, could not provide that outcome. 454 F.3d 1154, 1158-9 (10th Cir. 2006). The Plaintiff in *Opala* was a judge on the state supreme court, seeking appointment as chief justice. Under the original rules Plaintiff stood to gain priority over some of the other associate justices who might seek appointment within the next few years. However, a rule revision reduced Plaintiff's potential priority. Plaintiff was not guaranteed the outcome he sought

---

[8] d. Issue a preliminary injunction and permanent injunction prohibiting Defendants, their agents and employees, and all those acting in concert with them, from taking any enforcement action under Section 3 of SB 23-190 and its implementing regulations and/or Section 1 of SB 23-190 (either on its own and through the CCPA), against Plaintiffs and all those acting in concert with them based on their provision of abortion pill reversal.

15

under either set of rules. Similarly, here, Plaintiffs ask that the Board be enjoined from enforcing the statute and rule related to Section 3, implying such an order will free Plaintiffs from Board discipline for medication abortion reversal. However, the regulatory landscape administered by the Board for licensees is, in fact, the same with or without Rule 1.35. A court order cannot free Plaintiffs from all regulation of their conduct related to medication abortion reversal.

For the foregoing reasons, Plaintiffs have failed to establish both a sufficient likelihood of harm and redressability.

## CONCLUSION

For these reasons, the claims against the Nursing Board should be dismissed.

Dated: October 11, 2023

PHILIP J. WEISER
Attorney General

/s/ *Elizabeth V. Kenny*

*Elizabeth V. Kenny*, Assistant Attorney General
Counsel to Nursing Board
1300 Broadway, Denver, CO 80203
Telephone: (720) 508-6383
Email: Elizabeth.kenny@coag.gov

16

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2023, I served a true and complete copy of the foregoing **NURSING BOARD'S MOTION TO DISMISS** upon all parties herein by e-filing with the CM/ECF system maintained by the court and/or email.

*s/ Amanda Diaz*
Amanda Diaz