# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| BELLA HEALTH AND WELLNESS, DENISE "DEDE" CHISM, ABBY SINNETT, and KATHLEEN SANDER, on behalf of themselves and their patients,<br><br>*Plaintiffs*,<br><br>v.<br><br>PHIL WEISER, in his official capacity as Attorney General of Colorado; ROLAND FLORES, AMANDA MIXON, JENNIFER BLAIR, BECKETT CZARNECKI, ROBERT M. MAULITZ, SAUGHAR SAMALI, ALAN E. SHACKELFORD, KIELY M. SCHULTZ, AMY E. COLEN, ANITA KUMAR, DONALD LEFKOWITS, MAIDUL MEHMUD, KIAN MODANLOU, SCOTT C. STRAUSS, CHRISTOPHER A. BATES, JULIE ANN HARPER, and HIEN H. LY, in their official capacity as members of the Colorado Medical Board; BERNARD JOSEPH FRANTA, LORI RAE HAMILTON, KARRIE TOMLIN, LENNY ROTHERMUND, HAYLEY HITCHCOCK, ALISSA M. SHELTON, PHYLLIS GRAHAM-DICKERSON, BRANDY VALDEZ MURPHY, DIANE REINHARD, NICHELE BRATTON, and AECIAN PENDLETON, in their official capacity as members of the Colorado State Board of Nursing,<br><br>*Defendants*. | Case No. 1:23-939-DDD-SBP<br><br>**UNOPPOSED MOTION TO INTERVENE AS PLAINTIFF AND MEMORANDUM IN SUPPORT** |

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................ ii

Introduction ............................................................................................................................ 1

Statement of Facts ................................................................................................................. 1

I.  Abortion pill reversal is safe and effective. .......................................................... 1

II. Mrs. Mynyk provides essential healthcare services to Colorado women. ........ 2

III. Colorado bans abortion pill reversal. ................................................................... 3

IV. Bella Health files suit against the law. ................................................................ 4

V.  The Nursing Board notifies Mrs. Mynyk of a complaint. ................................... 5

Argument ................................................................................................................................ 5

I.  The Board of Nursing's recent investigation of Mrs. Mynyk's religiously based provision of APR helps her meet all the requirements for intervention as of right. .......................................................................................... 5

    A.  Mrs. Mynyk's motion is timely given the Nursing Board's recent investigation. ........................................................................................... 6

    B.  Mrs. Mynyk has a substantial interest in protecting her constitutional rights. ............................................................................... 6

    C.  Mrs. Mynyk's interest will be impaired if Bella Health does not prevail in this case. .................................................................................. 9

    D.  Bella Health does not adequately represent Mrs. Mynyk's interests. .. 10

II. Mrs. Mynyk's right to protect her religiously motivated provision of APR from Defendants' enforcement of the APR and Advertising Bans has common questions of law and fact with this case and meets permissive intervention requirements. ................................................................................... 11

    A.  Mrs. Mynyk shares religious beliefs and several legal claims with Bella Health. ........................................................................................... 12

    B.  Mrs. Mynyk's intervention will not unduly delay or prejudice either Bella Health or the State. ...................................................................... 12

    C.  No other factors counsel against permissive intervention. ................... 13

Conclusion .............................................................................................................................. 13

Certificate of Compliance ..................................................................................................... 15

Certificate of Service ............................................................................................................. 16

## TABLE OF AUTHORITIES

**Cases**

*Barnes v. Security Life of Denver Insurance Company*,
    945 F.3d 1112 (10th Cir. 2019) ....................................................................... 6, 10

*Bella Health & Wellness v. Weiser*,
    669 F. Supp. 3d 1125 (D. Colo. 2023) ..................................................................... 4

*Bella Health & Wellness v. Weiser*,
    No. 1:23-cv-00939, 2023 WL 6996860 (D. Colo. Oct. 21, 2023) ................. 5, 8, 9, 11

*Bottoms v. Dresser Industry Inc.*,
    797 F.2d 869 (10th Cir. 1986) ......................................................................... 10, 11

*Center for Biological Diversity v. Jewell*,
    No. 16-cv-01932-MSK-STV, 2017 WL 4334069 (D. Colo. Mar. 24, 2017) ............ 12

*Center for Biological Diversity v. United States Bureau of Land Management*,
    No. 19-cv-02869, 2020 WL 5806384 (D. Colo. Apr. 20, 2020) ................................ 9

*City of Herriman v. Bell*,
    590 F.3d 1176 (10th Cir. 2010) ............................................................................. 12

*Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Department of the Interior*,
    100 F.3d 837 (10th Cir. 1996) ................................................................................. 6

*Fourhorn v. City & County of Denver*,
    No. 08-cv-01693MS, 2009 WL 1148042 (D. Colo. Apr. 27, 2009) ........................ 12

*Judicial Watch, Inc. v. Griswold*,
    No. 20-cv-02992, 2021 WL 4272719 (D. Colo. Sept. 20, 2021) ............................... 7

*Kane County, Utah v. United States*,
    928 F.3d 877 (10th Cir. 2019) ................................................................................. 7

*Kane County, Utah v. United States*,
    No. 22-4087, 2024 WL 903025 (10th Cir. Mar. 4, 2024) ....................................... 10

*Love v. Pullman Co.*,
    No. C-899, 1973 WL 314 (D. Colo. Oct. 11, 1973) ................................................ 12

*Lower Arkansas Valley Water Conservancy District v. United States*,
    252 F.R.D. 687 (D. Colo. 2008) ............................................................................. 12

*Masterpiece Cakeshop, Inc. v. Elenis*,
    No. 18-cv-02074, 2019 WL 9514601 (D. Colo. Feb. 28, 2019) .............................. 13

*Rocky Mountain Gun Owners v. Polis*,
   No. 23-cv-01077, 2023 WL 5017253 (D. Colo. Aug. 7, 2023) .................................... 8

*Romero v. Board of County Commissioners*,
   313 F.R.D. 133 (D.N.M. 2016) ............................................................................... 13

*SKIBO, Inc. v. Shelter Mutual Insurance Company*,
   No. 19-cv-3526, 2021 WL 2290706 (D. Colo. June 4, 2021) .................................... 6

*Tri-State Generation & Transmission Association, Inc. v. New Mexico Public Regulation Commission*,
   787 F.3d 1068 (10th Cir. 2015) ............................................................................. 11

*Ward v. Utah*,
   321 F.3d 1263 (10th Cir. 2003) ............................................................................... 7

*Western Energy Alliance v. Zinke*,
   877 F.3d 1157 (10th Cir. 2017) ......................................................................... 6, 7

*WildEarth Guardians v. United States Forest Service*,
   573 F.3d 992 (10th Cir. 2009) ................................................................................. 9

**Statutes**

42 U.S.C. § 1983 .................................................................................................................. 7

Colo. Rev. Stat. § 12-255-120 ........................................................................................ 4, 5

Colo. Rev. Stat. § 12-30-120 ..................................................................................... 3, 4, 5

Colo. Rev. Stat. § 6-1-105 .................................................................................................. 3

**Regulations**

3 Colo. Code Regs. § 716-1:1.35 ....................................................................................... 4

## INTRODUCTION

Chelsea Mynyk, M.S.N., C.N.M., moves to intervene as a Plaintiff in this lawsuit. She is a licensed advanced practice nurse and certified nurse midwife who provides reproductive health care services to women in Castle Rock, Colorado. Last month, she received a letter from the Colorado State Board of Nursing notifying her that she is being investigated for a possible violation of the Nurses Practice Act because of a complaint about her provision of abortion pill reversal.

Like the Plaintiffs, Mrs. Mynyk believes that she is religiously compelled to provide abortion pill reversal. Mrs. Mynyk's motion to intervene is timely, she has an interest in protecting her First and Fourteenth Amendment rights which this action may impair, and the existing parties do not adequately represent her interests, so she has a right to intervene under Rule 24(a). Or this Court should permit Mrs. Mynyk to intervene under Rule 24(b) because her claims share common questions of law and fact with this case. Plaintiffs do not oppose this motion. Defendants also do not oppose this motion but may oppose a request to expand the scope of the preliminary injunction.

## STATEMENT OF FACTS

### I. Abortion pill reversal is safe and effective.

"Medication abortion," which is approved by the FDA up to 70 days after a pregnant woman's last menstrual period (LMP), typically involves the prescription of two abortion-inducing drugs: mifepristone and misoprostol. Ex. 1, Proposed Compl. ¶ 78.

Some women change their minds about terminating their pregnancies after taking mifepristone. *Id.* ¶ 87. If she has not yet taken misoprostol, evidence suggests that her unborn child may be saved by progesterone therapy within 72 hours after taking mifepristone—this process is known as abortion pill reversal

1

(APR). *Id.* ¶¶ 89–90, 95, 166. The scientific literature shows that APR is safe and effective. *Id.* ¶¶ 92–101. APR also has a history of success in practice. *Id.* ¶ 111.

## II. Mrs. Mynyk provides essential healthcare services to Colorado women.

Mrs. Mynyk is licensed as an advanced practice nurse under Colo. Rev. Stat. section 12-255-111 and a certified nurse midwife under Colo. Rev. Stat. section 12-255-111.5. *Id.* ¶ 30. She also has prescriptive authority under Colo. Rev. Stat. section 12-255-112. *Id.* ¶ 32. She has worked as a pediatric nurse and a mother and baby nurse for twenty years and delivered over one hundred babies. *Id.* ¶ 33. Now she provides reproductive healthcare services to Colorado women through Castle Rock Women's Health, L.L.C. ("Castle Rock"). *Id.* ¶ 39.

As a practicing Christian, Mrs. Mynyk believes that all human life is sacred from conception to natural death. *Id.* ¶ 44. She opposes induced abortion as the intentional killing of human life. *Id.* Mrs. Mynyk founded Castle Rock to promote the value of life at every stage, to speak God's truth and love to women, and to support and encourage women through their journeys. *Id.* ¶ 46. Castle Rock's key verse is Psalm 139:14: "I will praise Thee for I am fearfully and wonderfully made." *Id.* ¶ 45. Mrs. Mynyk chose this verse because she believes that God made each person unique, beautiful, and wonderful. *Id.*

Mrs. Mynyk provides all medical services within her scope of practice and her religious beliefs. *Id.* ¶ 43. She offers women of all ages and backgrounds life-affirming, evidence-based care at no charge or very low cost. *Id.* ¶¶ 40, 54, 116. Her services include OBGYN care up to 20 weeks gestation and APR. *Id.* ¶¶ 41, 47–49. She is now providing APR treatment to two patients. *Id.* ¶ 18. Both patients gave their consent after Mrs. Mynyk informed them of the risks, benefits, and the likelihood of saving the baby with and without APR treatment. *Id.* ¶¶ 48–49. Castle

Rock advertised APR on its website, but Mrs. Mynyk removed that information because Colorado passed S.B. 23-190. *Id.* ¶ 117. She has not ceased providing APR because she is religiously compelled to do so and because ceasing APR treatment may harm her patients and their babies. *Id.* ¶¶ 6, 193–98.

### III.  Colorado bans abortion pill reversal.

In 2023, Colorado enacted Senate Bill No. 23-190, which concerns "policies to make punishable deceptive actions regarding pregnancy-related services." ECF No. 94-8, S.B. 23-190. The General Assembly found that "medication abortion reversal" is "a dangerous and deceptive practice that is not supported by science or clinical standards" and that medical professionals cannot "tell their patients that it may be possible to reverse a medication abortion" "without misleading them." *Id.* § 1(1)(f)–(g). Two specific provisions of S.B. 23-190 are relevant here.

Section 1 of S.B. 23-190 declares that two subsections of Colorado's Consumer Protection Act (CCPA)—which prohibit deceptive trade practices—"appl[y] to disseminating or causing to be disseminated . . . advertising for or providing or offering to provide or make available medication abortion reversal." *Id.* § 1(3)(b) ("Advertising Prohibition"); *see also* Colo. Rev. Stat. § 6-1-105(1)(e), (rrr).

Section 3 of S.B. 23-190 makes it "unprofessional conduct" for a licensee to "provide[], prescribe[], administer[], or attempt[] medication abortion reversal in this state, unless the Colorado medical board . . . , the state board of pharmacy . . . , and the state board of nursing . . . , in consultation with each other, each have in effect rules finding that it is a generally accepted standard of practice to engage in medication abortion reversal." Colo. Rev. Stat. § 12-30-120(2)(a) ("APR Ban"). It defines "medication abortion" as "an abortion conducted solely through the use of one or more prescription drugs," and "medication abortion reversal" as

3

"administering, dispensing, distributing, or delivering a drug with the intent to interfere with, reverse, or halt a medication abortion." *Id.* § 12-30-120(1)(b)–(c).

The Colorado Board of Nursing adopted an administrative rule providing that "[t]he Board will not treat medication abortion reversal provision, prescription, administration, or attempt at any of the preceding conduct with respect to medication abortion reversal as a *per se* act subjecting a licensee to discipline." 3 Colo. Code Regs. § 716-1:1.35(D)(4). Instead, it "will investigate all complaints related to medication abortion reversal in the same manner that it investigates other alleged deviations from generally accepted standards of nursing practice under [the Nurses Practice Act]." *Id.*; *see also* Colo. Rev. Stat. § 12-255-120(1). The Board said it "will evaluate the scope and nature of information exchanged between the licensee and patient." 3 Colo. Code Regs. § 716-1:1.35(D)(3). And noted "fully informed consent will include, at a minimum, information about the risks, benefits, likelihood of intended outcome of the proposed treatment, and likelihood of achieving the intended outcome without the proposed treatment." *Id.*

## IV. Bella Health files suit against the law.

Plaintiffs Bella Health and Wellness, Denise "Dede" Chism, Abby Sinnett, and Kathleen Sander ("Bella Health") filed suit against Colorado Attorney General Phil Weiser, along with the members of the Colorado Medical Board and the Colorado State Board of Nursing ("the State") challenging S.B. 23-190. ECF No. 1, Compl. One day later, this Court entered a temporary restraining order enjoining the State from enforcing S.B. 23-190 against Bella Health. *Bella Health & Wellness v. Weiser* (*Bella Health I*), 669 F. Supp. 3d 1125, 1130 (D. Colo. 2023). Six months later, after Bella Health amended, this Court issued a preliminary injunction. It prevented the State from enforcing S.B. 23-190 against Bella Health "and all those acting in concert with them based on their provision of abortion pill reversal

4

treatment." *Bella Health & Wellness v. Weiser* (*Bella Health II*), No. 1:23-cv-00939, 2023 WL 6996860, at *21 (D. Colo. Oct. 21, 2023).

This Court held that Bella Health had standing to challenge the Advertising Prohibition due in part to their advertisements for APR. *Id.* at *11. It also held that Bella Health faced a credible threat of enforcement from the State because it "did not find medication abortion reversal to be a 'generally accepted standard of practice.'" *Id.* at *12. Finally, this Court held that Bella Health had shown a likelihood of success on the merits of its free exercise claim because S.B. 23-190 is not "neutral and generally applicable." *Id.* at *15.

## V.  The Nursing Board notifies Mrs. Mynyk of a complaint.

The Board sent a letter notifying Mrs. Mynyk that it was investigating a complaint about a possible violation of the Nurses Practice Act. Proposed Compl. ¶¶ 50–51. That complaint alleged that Mrs. Mynyk had provided a patient with "abortion reversal medication." *Id.* ¶ 51. The Nursing Practice Act provides that a licensee's violation of certain Colorado laws, like the APR Ban, is "grounds for discipline." Colo. Rev. Stat. §§ 12-30-120(2)(a), 12-255-120),), 12-255-120(1)(e).(1)(e). Because the APR Ban and pending investigation by the Board infringe on Mrs. Mynyk's First and Fourteenth Amendment rights, she now seeks to intervene in this case.

## ARGUMENT

## I.  The Board of Nursing's recent investigation of Mrs. Mynyk's religiously based provision of APR helps her meet all the requirements for intervention as of right.

"[A] nonparty seeking to intervene as of right must establish (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties." *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d

5

1112, 1121 (10th Cir. 2019). The Tenth Circuit follows "a somewhat liberal line in allowing intervention." *Id.* In "deciding whether intervention is proper," a court's "central concern" should be "the practical effect of the litigation on the applicant for intervention." *Id.* Because Mrs. Mynyk has met these requirements, she has a right to intervene in this case.

### A. Mrs. Mynyk's motion is timely given the Nursing Board's recent investigation.

A court must "determine timeliness in light of all the circumstances." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017) (cleaned up). "But three non-exhaustive factors are particularly important: (1) the length of time since the movants knew of their interests in the case; (2) prejudice to the existing parties; and (3) prejudice to the movants." *Id.* (cleaned up). Prejudice is "the dispositive factor in the timeliness analysis." *SKIBO, Inc. v. Shelter Mut. Ins. Co.*, No. 19-cv-3526, 2021 WL 2290706, at *3 (D. Colo. June 4, 2021).

Mrs. Mynyk meets all three factors. First, she moved to intervene only five weeks after receiving the Board's letter notifying her of the investigation of her APR services. Second, the deadline for discovery is not until August 14, 2024. ECF No. 125, Minute Entry. So Bella Health and the State have five months in which to request discovery from Mrs. Mynyk. Third, because Mrs. Mynyk does not intend to request that this Court "reset or extend[]" "any deadlines" in this case, "the only party possibly prejudiced by any delay" is Mrs. Mynyk herself. *SKIBO*, 2021 WL 2290706, at *3. Mrs. Mynyk's motion is timely given the circumstances.

### B. Mrs. Mynyk has a substantial interest in protecting her constitutional rights.

A proposed intervenor's interest in an action justifies intervention if it is "direct, substantial, and legally protectable." *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of the Interior*, 100 F.3d 837, 840 (10th Cir. 1996). "A

6

protectable interest is one that would be impeded by the disposition of the action." *W. Energy All.*, 877 F.3d at 1165 (cleaned up). The legally protected interest bar is "not high." *Jud. Watch, Inc. v. Griswold*, No. 20-cv-02992, 2021 WL 4272719, at *2 (D. Colo. Sept. 20, 2021). And a proposed intervenor need not meet the requirements for Article III standing unless "the intervenor wishes to pursue relief not requested by an existing party." *Kane Cnty., Utah v. United States* (*Kane Cnty. I*), 928 F.3d 877, 886 (10th Cir. 2019) (cleaned up). Mrs. Mynyk meets both the low threshold for showing an interest justifying intervention and the requirements for Article III standing.

She intervenes to protect her constitutional rights under the First and Fourteenth Amendments. That interest is direct because she is being investigated for a possible violation of the APR Ban. Proposed Compl. ¶ 21. It is substantial because the APR Ban burdens her sincere religious beliefs, and the Advertising Prohibition burdens her right to free speech. *Id.* ¶¶ 208, 256. And, most importantly, Mrs. Mynyk's constitutional rights are legally protectable under federal law. *See* 42 U.S.C. § 1983. She meets the low substantial interest bar for intervention as of right.

Mrs. Mynyk also has Article III standing to seek injunctive relief against the State. "Article III standing requires a litigant to show: (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury can likely be redressed by a favorable decision." *Kane Cnty. I*, 928 F.3d at 888. In the First Amendment context, "two types of injuries may confer Article III standing to seek prospective relief." *Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003). "The first type of injury requires only that a plaintiff intends to engage in conduct that would . . . arguably violate the law" and that such conduct would "give

7

rise to a credible fear of an enforcement action." *Bella Health II*, 2023 WL 6996860, at *7 (cleaned up).

Mrs. Mynyk intends to continue providing APR to her patients, and the letter from the Nursing Board notifying her that she is being investigated for that conduct constitutes a credible threat of enforcement. *See Rocky Mountain Gun Owners v. Polis*, No. 23-cv-01077, 2023 WL 5017253, at *7 (D. Colo. Aug. 7, 2023) ("The most credible threats of prosecution exist in pre-enforcement claims brought after the entity responsible for enforcing the challenged statute actually threatens a particular plaintiff with arrest or even prosecution." (cleaned up)). That injury is traceable to and redressable by an injunction against the APR Ban because "the Nursing Board's discretion under th[e Nurse Practice] Act does not negate Plaintiffs' credible fear of being punished for administering abortion pill reversal treatment." *Bella Health II*, 2023 WL 6996860, at *13.

"The second type of [First Amendment] injury occurs where a plaintiff is 'chilled' from doing constitutionally protected conduct, typically speech." *Id.* at *7. A plaintiff may show a chilling effect by providing evidence (1) "that in the past they engaged in the type of speech or conduct affected by the challenged government action"; (2) "that the plaintiff has a present desire, though no specific plans, to engage in such speech or conduct"; and (3) "that the plaintiff has no intention to engage in such speech or conduct because of a credible threat that the law will be enforced." *Id.*

Mrs. Mynyk advertised APR on her website and would like to keep doing so. Proposed Compl. ¶¶ 117, 203. But she removed that information from her website due to fear of discipline under the Advertising Prohibition. *Id.* ¶ 200. Those facts establish a chilling effect on Mrs. Mynyk's free speech about APR. *See Bella Health II*, 2023 WL 6996860, at *12 (holding that Bella Health "credibly fear[s]

8

enforcement" of the Advertising Prohibition "by the attorney general"). And that injury is traceable to and redressable by an injunction against, the Advertising Prohibition because Mrs. Mynyk's "advertisements for medication abortion reversal" arguably "violate the CCPA in view of Section One's legislative declaration." *Id.* at \*11. Because Mrs. Mynyk has both an interest in this lawsuit and Article III standing to seek injunctive relief, she has met the second element of the intervention test.

### C. Mrs. Mynyk's interest will be impaired if Bella Health does not prevail in this case.

A proposed intervenor must "show only that impairment of its substantial legal interest is possible if intervention is denied." *WildEarth Guardians v. United States Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009). "This burden is minimal." *Id.* If the proposed intervenor "would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Id.* A proposed intervenor's interest "may be impaired when the resolution of the legal questions in the case might effectively foreclose the rights of the intervenor in later proceedings, whether through *res judicata*, collateral estoppel, or *stare decisis*." *Ctr. for Biological Diversity v. United States Bureau of Land Mgmt.*, No. 19-cv-02869, 2020 WL 5806384, at \*3 (D. Colo. Apr. 20, 2020) (emphasis in original).

Mrs. Mynyk's interest in protecting her constitutional rights would be impaired by a decision holding that the APR Ban and Advertising Prohibition are valid under the First and Fourteenth Amendments. Such a decision would set binding precedent foreclosing Mrs. Mynyk from asserting her constitutional rights in later proceedings due to stare decisis. *Id.*

### D. Bella Health does not adequately represent Mrs. Mynyk's interests.

A proposed intervenor "must show that the representation by the existing parties may be inadequate; but this burden is 'minimal.'" *Kane Cnty., Utah v. United States* (*Kane Cnty. II*), No. 22-4087, 2024 WL 903025, at *8 (10th Cir. Mar. 4, 2024). A court "presume[s] adequate representation" when a proposed intervenor's interests are "identical" to a named party. *Id.* But "this presumption applies only when interests overlap fully." *Id.* Merely "harmonious" is not enough. *Id.* at *11. When the proposed intervenor's "interest is similar to, but not identical with, that of one of the parties, that normally is not enough to trigger a presumption of adequate representation." *Id.* at *8. "The possibility of divergence need not be great in order to satisfy th[is] burden." *Barnes*, 945 F.3d at 1124. On the contrary, "[a]n intervenor need only show the *possibility* of inadequate representation." *Id.*

Bella Health does not request relief that would help Mrs. Mynyk so their interests diverge. *See* ECF No. 94, Am. Compl. 70 (asking this Court to "[i]ssue a preliminary injunction and permanent injunction prohibiting" the State from enforcing S.B. 23-190 "and its implementing regulations against *Plaintiffs and all those acting in concert with them*" (emphasis added)). Indeed, the Tenth Circuit has held that a proposed intervenor's interest may not be adequately represented even when they request the same relief as an existing party. *See Kane Cnty. II*, 2024 WL 903025, at *10.

But even if Mrs. Mynyk's interests were identical to Bella Health's, she may overcome the presumption of adequate representation by "mak[ing] a concrete showing of circumstances that make [Bella Health's] representation inadequate." *Bottoms v. Dresser Indus., Inc.*, 797 F.2d 869, 872 (10th Cir. 1986) (cleaned up). One way to make this showing is by establishing that "the representative failed to

10

represent the applicant's interest." *Id.* at 873. Bella Health failed to represent Mrs. Mynyk's interests at the pleading and preliminary injunction stages because it did not request relief that would apply to her. So this Court's preliminary injunction and any permanent injunction that it may grant does not and will not protect Mrs. Mynyk from being investigated for possible violations of S.B. 23-190 or from enforcement under S.B. 23-190. *See Bella Health II*, 2023 WL 6996860, at *21 (enjoining the State from "[t]aking any enforcement action under SB 23-190, its implementing regulations, or the Colorado Consumer Protection Act *against Plaintiffs and all those acting in concert with them* based on their provision of abortion pill reversal treatment" (emphasis added)). Mrs. Mynyk meets the minimal burden of showing that her interests are not adequately represented by the Bella Health plaintiffs.

Because Mrs. Mynyk has shown that (1) her motion to intervene is timely, (2) she has a direct, substantial, and legally protectable interest in this case, (3) her interest will be impaired by an adverse decision, and (4) Bella Health does not adequately represent her interests, she has a right to intervene in this case.

**II.  Mrs. Mynyk's right to protect her religiously motivated provision of APR from Defendants' enforcement of the APR and Advertising Bans has common questions of law and fact with this case and meets permissive intervention requirements.**

Mrs. Mynyk also meets the requirements for permissive intervention under Rule 24(b). She filed a "timely motion," *supra* Part I.A, "has a claim or defense that shares with the main action a common question of law or fact," and "the intervention will [not] unduly delay or prejudice the adjudication of the original parties' rights." *Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regul. Comm'n*, 787 F.3d 1068, 1074 (10th Cir. 2015). Because Mrs. Mynyk shares several legal claims with Bella Health and because her intervention will not

11

prejudice either Bella Health or the State, this Court should permit Mrs. Mynyk to intervene in this case.

### A. Mrs. Mynyk shares religious beliefs and several legal claims with Bella Health.

Under Rule 24(b)(1)(B), a "proposed intervenor must have a claim or defense that shares at least some aspect with a claim or defense presented in the main action." *City of Herriman v. Bell*, 590 F.3d 1176, 1184 (10th Cir. 2010). Here, each of Mrs. Mynyk's legal claims are much like those brought by Bella Health. *Compare* Am. Compl. ¶¶ 223–87, 307–19 *with* Proposed Compl. ¶¶ 204–80. Thus, Mrs. Mynyk shares common questions of law with the main action. And her religious beliefs requiring her to provide APR are also like Bella Health's. *Compare* Am. Compl. ¶¶ 52–59 *with* Proposed Compl. ¶¶ 43–46, 53, 55–56.

### B. Mrs. Mynyk's intervention will not unduly delay or prejudice either Bella Health or the State.

Under Rule 24(b)(3), "delay in and of itself does not mean that intervention should be denied." *Lower Ark. Valley Water Conservancy Dist. v. United States*, 252 F.R.D. 687, 691 (D. Colo. 2008). "The question of whether such delay is undue or unwarranted, however, requires a close scrutiny of the compensating advantages, if any." *Love v. Pullman Co.*, No. C-899, 1973 WL 314, at *1 (D. Colo. Oct. 11, 1973). "[C]ourts should allow intervention where no one would be hurt and greater justice could be attained." *Ctr. for Biological Diversity v. Jewell*, No. 16-cv-01932-MSK-STV, 2017 WL 4334069, at *2 (D. Colo. Mar. 24, 2017) (cleaned up). When the request to intervene is timely and "discovery is ongoing, no prejudice or significant case disruption can be reasonably identified." *Fourhorn v. City & Cnty. of Denver*, No. 08-cv-01693MS, 2009 WL 1148042, at *1 (D. Colo. Apr. 27, 2009).

Mrs. Mynyk does not plan to ask this court to postpone any deadlines, and five months remain in which the State and Bella Health may seek discovery from

12

her. *See supra* Part I.A. Dispositive motions are not due for another month after discovery. ECF No. 125, Minute Entry. So Mrs. Mynyk's intervention will neither unduly delay nor prejudice the named parties. *See Romero v. Bd. of Cnty. Comm'rs*, 313 F.R.D. 133, 147 (D.N.M. 2016) (permitting intervention where "[d]iscovery has just begun, and the parties have filed no major motions").

### C. No other factors counsel against permissive intervention.

In deciding whether to grant permissive intervention, "courts may also consider: (1) whether the would-be intervenor's input adds value to the existing litigation; (2) whether the applicant's interests are adequately represented by the existing parties; and (3) the availability of an adequate remedy in another action." *Masterpiece Cakeshop, Inc. v. Elenis*, No. 18-cv-02074, 2019 WL 9514601, at *4 (D. Colo. Feb. 28, 2019). As explained above, Bella Health does not adequately represent Mrs. Mynyk's interests *See supra* Part I.D. And no adequate remedy is available in another action because of this case's potential to set binding precedent. *See supra* Part I.C. Mrs. Mynyk adds value to this action because the letter she received from the Nursing Board shows a credible threat of enforcement against anyone who prescribes progesterone for the purpose of APR. *See supra* Part I.B.

Thus, this Court should permit Mrs. Mynyk to intervene because her claims share common questions of law and fact with the main action, her intervention would not prejudice the named parties, and no other factor counsels against permissive intervention.

### CONCLUSION

For these reasons, Mrs. Mynyk respectfully requests that this Court grant her motion to intervene.

Respectfully submitted this 20th day of March, 2024.

| | |
|---|---|
| | *s/ Kevin H. Theriot* |
| Gabriella McIntyre | Kevin H. Theriot |
| Alliance Defending Freedom | Julia C. Payne |
| 444180 Riverside Pkwy | Alliance Defending Freedom |
| Lansdowne, VA 20176 | 15100 N. 90th Street |
| (571) 707-4655 | Scottsdale, AZ 85260 |
| gmcintyre@adflegal.org | (480) 444-0020 |
| | ktheriot@adflegal.org |
| | jpayne@adflegal.org |

*Attorneys for Proposed Plaintiff Chelsea Mynyk*

## CERTIFICATE OF COMPLIANCE

This motion and memorandum in support complies with the type-volume limitation of DDD Civ. P.S. III(A)(1) because this brief contains 3,996 words, excluding the parts of the brief exempted by DDD Civ. P.S. III(A)(3), as determined by the word counting feature of Microsoft Office 365.

                                              *s/Kevin H. Theriot*
                                              Kevin H. Theriot

                                              *Attorney for Proposed Plaintiff Chelsea Mynyk*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 20, 2024, I electronically filed the foregoing paper with the Clerk of Court using the ECF system which will send notification of such filing to all counsel of record.

*s/ Kevin H. Theriot*
Kevin H. Theriot

*Attorney for Proposed Plaintiff Chelsea Mynyk*