# Exhibit 28

EXHIBIT

124



HOUSE BILL 22-1279

BY REPRESENTATIVE(S) Froelich and Esgar, Amabile, Bacon, Benavidez, Bernett, Bird, Boesenecker, Caraveo, Cutter, Daugherty, Duran, Exum, Garnett, Gonzales-Gutierrez, Gray, Herod, Hooton, Jodeh, Kennedy, Kipp, Lindsay, Lontine, McCluskie, McCormick, McLachlan, Michaelson Jenet, Mullica, Ortiz, Ricks, Roberts, Sirota, Snyder, Sullivan, Tipper, Titone, Valdez A., Weissman, Woodrow, Young, Valdez D.; also SENATOR(S) Gonzales, Bridges, Buckner, Coleman, Danielson, Fenberg, Fields, Ginal, Hansen, Hinrichsen, Jaquez Lewis, Kolker, Lee, Pettersen, Rodriguez, Story, Winter, Zenzinger, Donovan, Moreno.

CONCERNING THE CODIFICATION OF A PERSON'S FUNDAMENTAL RIGHT TO MAKE REPRODUCTIVE HEALTH-CARE DECISIONS FREE FROM GOVERNMENT INTERFERENCE.

*Be it enacted by the General Assembly of the State of Colorado:*

**SECTION 1. Legislative declaration.** (1)  The general assembly finds that:

(a)  Access to abortion and reproductive health care is currently under attack across the nation. Impending federal court cases, including *Dobbs v. Jackson Women's Health Organization*, United States Supreme

_____
*Capital letters or bold & italic numbers indicate new material added to existing law; dashes through words or numbers indicate deletions from existing law and such material is not part of the act.*

Court Docket No. 19-1392, jeopardize access to legal abortion care for tens of millions of people, particularly those living in most Southern and Midwestern states.

(b)  There are social, moral, and economic benefits when people are able to decide whether and when to have children. Access to family planning allows all Coloradans to pursue personal, educational, financial, and familial goals and helps decrease the health and socioeconomic disparities disproportionately faced by people of color and people with low incomes.

(c)  Access to reproductive health care is a matter of statewide concern affecting the health and safety of Coloradans, including those who live outside the Denver metropolitan area and the Front Range, especially those residing in rural areas;

(d)  Rural populations face limited access to primary care, including abortion care and other family planning services, and often navigate increased travel times when seeking health care. There are fewer health-care providers in rural areas, and providers with rural mailing addresses are significantly less likely to provide abortion care.

(e)  Colorado has a strong history of supporting and protecting access to reproductive health care, including for communities of color. Colorado was the first state to decriminalize abortion care in an overwhelmingly bipartisan effort in 1967, well before the Supreme Court affirmed the right to abortion care nationwide in *Roe v. Wade*. Colorado is a national model for access to family planning services, including long-acting reversible contraceptives.

(f)  Despite repeated rejections of attacks on abortion care by the people of Colorado, there have been over 40 legislative attempts to criminalize or outlaw abortion since 2010. Colorado voters have demonstrated that they trust individuals to make their own ethical decisions about abortion care based on what is best for their health and their families.

(g)  When individuals decide to have an abortion or use contraception, it is critical that they get care on a timeline that works for their health, with the support of providers whom they trust. Politically motivated, medically inappropriate restrictions on health care have no place

PAGE 2-HOUSE BILL 22-1279

in our statutes or our medical offices.

(2) Therefore, in order to modernize Colorado's statutes, the general assembly affirms the fundamental right of individual Coloradans to make their own reproductive health-care decisions.

**SECTION 2.** In Colorado Revised Statutes, **add** part 4 to article 6 of title 25 as follows:

PART 4
REPRODUCTIVE HEALTH EQUITY ACT

**25-6-401.  Short title.** THE SHORT TITLE OF THIS PART 4 IS THE "REPRODUCTIVE HEALTH EQUITY ACT".

**25-6-402.  Definitions.** AS USED IN THIS PART 4, UNLESS THE CONTEXT OTHERWISE REQUIRES:

(1)  "ABORTION" MEANS ANY MEDICAL PROCEDURE, INSTRUMENT, AGENT, OR DRUG USED TO TERMINATE THE PREGNANCY OF AN INDIVIDUAL KNOWN OR REASONABLY BELIEVED TO BE PREGNANT WITH AN INTENTION OTHER THAN TO INCREASE THE PROBABILITY OF A LIVE BIRTH.

(2)  "PREGNANCY" MEANS THE HUMAN REPRODUCTIVE PROCESS, BEGINNING WITH THE IMPLANTATION OF AN EMBRYO.

(3)  "PUBLIC ENTITY" HAS THE SAME MEANING AS SET FORTH IN SECTION 24-10-103 (5) AND INCLUDES PRIVATE CONTRACT PRISONS, AS DEFINED IN SECTION 17-1-102.

(4)  "REPRODUCTIVE HEALTH CARE" MEANS HEALTH CARE AND OTHER MEDICAL SERVICES RELATED TO THE REPRODUCTIVE PROCESSES, FUNCTIONS, AND SYSTEMS AT ALL STAGES OF LIFE. IT INCLUDES, BUT IS NOT LIMITED TO, FAMILY PLANNING AND CONTRACEPTIVE CARE; ABORTION CARE; PRENATAL, POSTNATAL, AND DELIVERY CARE; FERTILITY CARE; STERILIZATION SERVICES; AND TREATMENTS FOR SEXUALLY TRANSMITTED INFECTIONS AND REPRODUCTIVE CANCERS.

**25-6-403.  Fundamental reproductive health-care rights.** (1) EVERY INDIVIDUAL HAS A FUNDAMENTAL RIGHT TO MAKE DECISIONS ABOUT THE INDIVIDUAL'S REPRODUCTIVE HEALTH CARE, INCLUDING THE

PAGE 3-HOUSE BILL 22-1279

FUNDAMENTAL RIGHT TO USE OR REFUSE CONTRACEPTION.

(2) A PREGNANT INDIVIDUAL HAS A FUNDAMENTAL RIGHT TO CONTINUE A PREGNANCY AND GIVE BIRTH OR TO HAVE AN ABORTION AND TO MAKE DECISIONS ABOUT HOW TO EXERCISE THAT RIGHT.

(3) A FERTILIZED EGG, EMBRYO, OR FETUS DOES NOT HAVE INDEPENDENT OR DERIVATIVE RIGHTS UNDER THE LAWS OF THIS STATE.

**25-6-404. Public entity - prohibited actions.** (1) A PUBLIC ENTITY SHALL NOT:

(a) DENY, RESTRICT, INTERFERE WITH, OR DISCRIMINATE AGAINST AN INDIVIDUAL'S FUNDAMENTAL RIGHT TO USE OR REFUSE CONTRACEPTION OR TO CONTINUE A PREGNANCY AND GIVE BIRTH OR TO HAVE AN ABORTION IN THE REGULATION OR PROVISION OF BENEFITS, FACILITIES, SERVICES, OR INFORMATION; OR

(b) DEPRIVE, THROUGH PROSECUTION, PUNISHMENT, OR OTHER MEANS, AN INDIVIDUAL OF THE INDIVIDUAL'S RIGHT TO ACT OR REFRAIN FROM ACTING DURING THE INDIVIDUAL'S OWN PREGNANCY BASED ON THE POTENTIAL, ACTUAL, OR PERCEIVED IMPACT ON THE PREGNANCY, THE PREGNANCY'S OUTCOMES, OR ON THE PREGNANT INDIVIDUAL'S HEALTH.

**25-6-405. Application.** (1) THIS PART 4 APPLIES TO ALL STATE AND LOCAL LAWS, ORDINANCES, POLICIES, PROCEDURES, REGULATORY GUIDELINES AND RULES, PRACTICES, EXECUTIVE ORDERS, AND GOVERNMENTAL ACTIONS AND THEIR IMPLEMENTATION, WHETHER STATUTORY OR OTHERWISE. THE RIGHTS PROTECTED UNDER THIS PART 4 ARE A MATTER OF STATEWIDE CONCERN.

(2) NOTHING IN THIS PART 4 MAY BE CONSTRUED TO AUTHORIZE A PUBLIC ENTITY TO BURDEN AN INDIVIDUAL'S FUNDAMENTAL RIGHTS RELATING TO REPRODUCTIVE HEALTH CARE.

**25-6-406. Severability.** IF ANY PROVISION OF THIS PART 4 OR THE APPLICATION THEREOF TO ANY PERSON OR CIRCUMSTANCE IS HELD INVALID, THAT INVALIDITY DOES NOT AFFECT OTHER PROVISIONS OR APPLICATIONS OF THIS PART 4 THAT CAN BE GIVEN EFFECT WITHOUT THE INVALID PROVISION OR APPLICATION, AND TO THIS END THE PROVISIONS OF THIS PART 4 ARE

PAGE 4-HOUSE BILL 22-1279

DECLARED TO BE SEVERABLE.

**SECTION 3. Safety clause.** The general assembly hereby finds, determines, and declares that this act is necessary for the immediate preservation of the public peace, health, or safety.


Alec Garnett
SPEAKER OF THE HOUSE
OF REPRESENTATIVES

Steve Fenberg
PRESIDENT OF
THE SENATE


Robin Jones
CHIEF CLERK OF THE HOUSE
OF REPRESENTATIVES

Cindi L. Markwell
SECRETARY OF
THE SENATE


APPROVED ___April 4, 2022 at 1:17 pm___
(Date and Time)


Jared S. Polis
GOVERNOR OF THE STATE OF COLORADO


PAGE 5-HOUSE BILL 22-1279