# Exhibit 31

**DR. ALAN SHACKELFORD - October 16, 2024**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| BELLA HEALTH AND WELLNESS, et al., | |
| Plaintiffs, | Case No: 1:23-CV-00939-DDD-SKC |
| CHELSEA M. MYNYK, | |
| Plaintiff-Intervenor, | |
| v. | |
| PHIL WEISER, in his official capacity as Attorney general of Colorado, et al., | COURT USE ONLY |
| Defendants. | |

VIDEOTAPED DEPOSITION OF DR. ALAN SHACKELFORD

PURSUANT TO NOTICE, the above-entitled deposition was taken on behalf of the Plaintiffs at Wells Fargo Center, 1700 Lincoln Street, Denver, Colorado 80203 on Wednesday, October 16, 2024, at 8:56 a.m., before Wendy McCaffrey, Registered Professional Reporter and Notary Public.

CALDERWOOD-MACKELPRANG, INC.
(303) 477-3500

DR. ALAN SHACKELFORD - October 16, 2024

### Page 2

```
 1  APPEARANCES:
    For the Plaintiff Bella Health and Wellness:
 2        MARK L. RIENZI, ESQ. (Via Zoom)
          COLTEN STANBERRY, ESQ.
 3        MIKE O'BRIEN, ESQ.
          KELLY J. OELTJENBRUNS, ESQ. (Via Zoom)
 4        The Becket Fund for Religious Liberty
          1919 Pennsylvania Avenue NW
 5        Suite 400
          Washington, D.C., 20006
 6        (202) 955-0095
          mrienzi@becketlaw.org
 7
    For the Plaintiff-Intervenor, Chelsea M. Mynyk:
 8        KEVIN H. THERIOT, ESQ. (Via Zoom)
          Alliance Defending Freedom
 9        15100 North 90th Street
          Scottsdale, Arizona 85260
10        (480) 451-5571
          ktheriot@adflegal.com
11
    For the Defendants:
12        BRIAN URANKER, ESQ.
          BRADY JEROME GRASSMEYER, ESQ.
13        JENNIFER H. HUNT, ESQ.
          ELIZABETH V. KENNY, ESQ.
14        ALISON MCMAHON, ESQ.
          ZACH FITZGERALD, ESQ. (Via Zoom)
15        Colorado Attorney General's Office
          1300 Broadway, 8th Floor
16        Denver, Colorado 80203
          (720) 508-6000
17        brian.urankar@coag.gov
18  Also Present:
          Amanda Diaz, Paralegal (Via Zoom)
19        Chelsea Mynyk (Via Zoom)
20
21
22
23
24
25
```

### Page 3

```
 1              EXAMINATION INDEX
 2  Examination by Mr. Stanberry              5, 83
 3  Examination by Ms. Hunt                      82
 4              EXHIBIT INDEX
    FOR IDENTIFICATION                      REFERENCE
 5
    Exhibit 98    CV, Dr. Alan Shackelford, from    22
 6              Amarimed website
 7  Exhibit 99    TEDx Talk Video                   76
 8  Exhibit 100   "Green Rush" Video                81
 9  Exhibit 101   "Weed" Video                      81
10  (Indexed and bound separately in cumulative exhibit
    notebook.)
11
```

### Page 4

```
 1              P R O C E E D I N G S
 2          WHEREUPON, the following proceedings were
 3  taken pursuant to the Federal Rules of Civil
 4  Procedure.
 5              *    *    *    *    *
 6          THE VIDEOGRAPHER:  Good morning.  We are on
 7  the record.  The time now is 8:56 a.m.  Today is
 8  October 16, 2024.  We are located at 1700 Lincoln
 9  Street, Denver, Colorado.  We're here for the
10  videotaped deposition of Dr. Alan Shackelford in the
11  matter of Bella Health and Wellness, et al., v. Phil
12  Weiser, et al., filed in the United States District
13  Court for the District of Colorado, Case Number
14  1:23-CV-939.
15          The videographer is Walt Mathern.  The court
16  reporter is Wendy McCaffrey.  Will counsel please
17  identify themselves, beginning with the noticing
18  attorney.
19          MR. STANBERRY:  This is Colten Stanberry,
20  here on behalf of Plaintiffs, Bella Health, Didi
21  Chisholm, Abby Sinnet, and Kathleen Sander.
22          MR. O'BRIEN:  Michael O'Brien, also on behalf
23  of Plaintiffs.
24          MS. HUNT:  Jennifer Hunt with the Colorado
25  Attorney General's Office on behalf of the Colorado
```

### Page 5

```
 1  Medical Board.
 2          MR. URANKAR:  Brian Urankar for the Medical
 3  Board.
 4          MS. KENNY:  Liz Kenny for the Colorado
 5  Nursing Board.
 6          MR. GRASSMEYER:  Brady Grassmeyer on behalf
 7  of Phil Weiser, Attorney General.
 8          MS. HUNT:  And we are joined by -- I'm
 9  sorry -- a fellow in our office, Alison McMahon.
10          THE VIDEOGRAPHER:  And folks on Zoom, please
11  identify yourselves.
12          MS. OELTJENBRUNS:  Yeah.  This is Kelly
13  Oeltjenbruns on behalf of the Plaintiffs.
14          MR. THERIOT:  And this is Kevin Theriot on
15  behalf of the Intervenor-Plaintiff, Chelsea Mynyk.
16              DR. ALAN SHACKELFORD,
17  having been first duly sworn, testified as follows:
18              EXAMINATION
19  BY MR. STANBERRY:
20      Q.  Dr. Shackelford, have you ever been deposed
21  before?
22      A.  Yes.
23      Q.  How many times?
24      A.  I don't know an exact number.
25      Q.  Okay.
```

Page 34

1  Q. Who does the medical board regulate?
2  A. **Physicians, physician assistants, and**
3  **anesthesiologist assistants.**
4  Q. Does the medical board -- if a complaint was
5  filed against a physician concerning how that physician
6  described a treatment, would the medical board consider
7  that complaint?
8       MS. HUNT: Object to form.
9       THE DEPONENT: If a complaint were filed with
10 the medical board, it would be assessed. What would
11 happen thereafter, I -- it's an individual case-by-case
12 sort of assessment and action, if any.
13 Q. (BY MR. STANBERRY) What are your
14 responsibilities as a member of the medical board?
15 A. **I review materials provided to members of my**
16 **panel, A, in monthly meetings of the panel, evaluate**
17 **the complaint and the response and present and discuss**
18 **those -- the complaint and -- and the response and how**
19 **to address the complaint and -- and the response of the**
20 **practitioner.**
21     **We also have quarterly full board meetings,**
22 **and we deal with whatever is on the agenda, as a full**
23 **board, a member of the full Board of Medicine.**
24 Q. You mentioned the panel you sit on. Is the
25 board divided into panels?

Page 35

1  A. Yes.
2  Q. Which panel do you sit on?
3  A. Panel A.
4  Q. How many panels are there?
5  A. **There are three panels, or three divisions:**
6  **Panel -- Inquiry Panel A, Inquiry Panel B, and the**
7  **Licensing Panel or Licensing Board.**
8  Q. Does the Licensing Panel evaluate licensing
9  applications?
10 A. Yes, to my knowledge.
11 Q. Do the inquiry panels evaluate licensing
12 applications?
13 A. No.
14 Q. Have you been on an inquiry panel your entire
15 tenure?
16 A. Yes.
17 Q. And are you now the chair of the inquiry
18 panel?
19 A. I'm the chair of Inquiry Panel A.
20 Q. Does the full board review actions taken by
21 the inquiry panels?
22 A. Not to my knowledge, no.
23 Q. Do you know if they could?
24 A. I don't know.
25 Q. How does the agenda of an inquiry panel

Page 36

1  meeting differ from the agenda of a full board meeting?
2       MS. HUNT: Object to form.
3       THE DEPONENT: Inquiry panels deal with
4  specific complaints, specific concerns of
5  practitioners. The full board, in my experience thus
6  far, does not deal with complaints from medical
7  consumers or the public, does not evaluate prescribe --
8  or practitioners' responses.
9       The full board deals with more administrative
10 matters than the inquiry panels or the licensing panel.
11 Q. (BY MR. STANBERRY) Could you provide
12 examples of some of those administrative matters?
13 A. **One that comes to mind is a -- evaluation of**
14 **an applicant to do the Physician Health Program. And**
15 **that was -- the full board decided to stay with the**
16 **current Colorado Physician Health Program provider, as**
17 **opposed to going to a different one.**
18 Q. What is the Physician Health Program?
19 A. **It's a group of psychologists, psychiatrists,**
20 **other practitioners, MD, DO, or physician's assistant,**
21 **who evaluate a practitioner's fitness or psychological,**
22 **psychiatric, or physical ability to practice medicine**
23 **safely.**
24 Q. Do you have any idea -- well, strike that.
25 Who sets the agenda for the board meetings?

Page 37

1  A. **There's a staff within DORA, within the**
2  **Department of Regulatory Agencies.**
3  Q. Do you have any say over the agenda?
4  A. No.
5  Q. Does the board ever engage in rulemaking?
6  A. Yes.
7  Q. Would it be fair to say that -- would it be
8  fair to say that most of your time as an inquiry panel
9  member is spent evaluating complaints and engaging in
10 the discipline process that flows therefrom?
11 A. Yes.
12 Q. How does that process start?
13 A. Can you be more specific? Do you mean in a
14 **meeting, or do you mean from the complaint showing up**
15 **somewhere?**
16 Q. To the best of your knowledge, how does
17 the -- what is the very first step in the process?
18 A. **Someone, patient or anybody, files a**
19 **complaint about something that has troubled them in**
20 **some interaction. There can also be a sort of an**
21 **administrative complaint, if you will.**
22     **A discipline in a different state would be**
23 **reported to the Colorado Medical Board. A settlement**
24 **of a -- of a claim, an insurance settlement would be**
25 **reported. Those are not individual complaints; they**

Page 46

1 going to assert privilege on how he handles individual
2 cases.
3         MR. STANBERRY:  I'm not going to ask about
4 any individual case.  I'm only going to ask about his
5 processes in approaching cases.
6         MS. HUNT:  Okay.
7         THE DEPONENT:  I will take the expert's
8 report into account.
9    Q.   (BY MR. STANBERRY)  But it doesn't control
10 your decision?
11        MS. HUNT:  Object to form.
12        THE DEPONENT:  No.  It doesn't control a
13 decision.
14   Q.   (BY MR. STANBERRY)  Does the board discuss
15 all matters included on the agenda in the meeting?
16        MS. HUNT:  Object to form.
17        THE DEPONENT:  In most cases, yes.  I can't
18 think of a time it didn't.
19   Q.   (BY MR. STANBERRY)  When the board's
20 assessing whether -- is "respondent" -- strike that.
21 Is "respondent" the right word for the -- not the
22 complainant but the other side, the practitioners who
23 the complaint is filed against -- is "respondent" the
24 correct term?
25   **A.   Yes.**

Page 47

1    Q.   When assessing whether a respondent operated
2 outside of the standard of care, does the board only
3 consider the facts alleged in the complaint?
4         MS. HUNT:  Object to form.
5         THE DEPONENT:  I'm -- I'm not really sure
6 what you're asking.
7    Q.   (BY MR. STANBERRY)  Yeah.  When you're
8 reviewing the case file, if you saw that a practitioner
9 went outside -- or if you thought a practitioner might
10 have gone outside of the standard of care, but it's not
11 the subject matter of the complaint, could you still
12 raise it with the other inquiry panel members?
13   **A.   Yes.**
14   Q.   Is that common?
15        MS. HUNT:  Object to form.
16        THE DEPONENT:  I can't tell you how
17 frequently it happens.  It has happened.
18   Q.   (BY MR. STANBERRY)  Okay.  Is it always clear
19 that a practitioner has gone outside the standard of
20 care?
21        MS. HUNT:  Object to form.
22        THE DEPONENT:  I'm not -- I mean, I -- can --
23 please, would you clarify that?  It's not . . .
24   Q.   (BY MR. STANBERRY)  In some cases, is it
25 easier to tell that a practitioner has gone outside of

Page 48

1 the standard of care than other cases?
2    **A.   Yes.  It is easier at times.**
3    Q.   And so the inquiry panel evaluates the cases
4 based on all of the facts present; is that correct?
5    **A.   The cases are evaluated based on the**
6 **materials provided.**
7    Q.   Okay.  And based on the facts presented in
8 those materials; is that correct?
9    **A.   That's correct.**
10   Q.   And you mentioned earlier, levels of action
11 that the inquiry panel can take.
12   **A.   Yes.**
13   Q.   Are those based on the facts provided in the
14 materials?
15        MS. HUNT:  Object to form.
16        THE DEPONENT:  Please clarify what you --
17 what you're asking.
18   Q.   (BY MR. STANBERRY)  Uh-huh.  Uh-huh.  The
19 inquiry panel can -- can choose from among several
20 levels of action, correct?
21   **A.   Yes.**
22   Q.   And does it make that choice on a
23 case-by-case basis?
24   **A.   Yes.**
25   Q.   Okay.  And that is based off of the facts in

Page 49

1 the materials before the inquiry panel; is that
2 correct?
3         MS. HUNT:  Object to form.
4         THE DEPONENT:  Yes.  But if we need more
5 information, we request it.  We try to get it.
6    Q.   (BY MR. STANBERRY)  And in those instances,
7 and I apologize if I'm missing terms, that goes to the
8 Office of Inquiries?
9    **A.   Investigations.**
10   Q.   Investigations.  And then is later put back
11 on the agenda; is that right?
12   **A.   Ultimately.**
13   Q.   Yeah.
14   **A.   Yes.**
15   Q.   Which levels of action are public?
16   **A.   I believe letters of admonition, and those**
17 **others more -- more consequential actions are public.**
18   Q.   Does Inquiry Panel B ever disagree with an
19 action taken by Inquiry Panel A?
20        MS. HUNT:  Object to form.
21   Q.   (BY MR. STANBERRY)  In your experience.
22   **A.   I don't know.**
23   Q.   Okay.  To your knowledge, can the board refer
24 matters to the attorney general's office?
25        MS. HUNT:  Object to form.