# Exhibit 38

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-00939-DDD-SKC

BELLA HEALTH AND WELLNESS, on behalf of itself and its patients, et al,

    Plaintiffs,

v.

PHIL WEISER, in his official capacity as Attorney General of Colorado, et al.,

    Defendants.

## BOARD DEFENDANTS' RESPONSE TO PLAINTIFFS' SIXTH SET OF DISCOVERY REQUESTS

The members of the Colorado Medical Board and the Colorado Board of Nursing (Board Defendants), by and through their counsel, submit the following Response to Plaintiffs' Sixth Set of Discovery Requests to Defendants.

### General Objections

1. Board Defendants object to any discovery request to the extent it seeks information or material protected by the attorney-client privilege and/or work product doctrine. Board Defendants intend to assert all applicable privileges and exemptions from discovery and otherwise fully protect privileged or exempt information or documents. Any disclosure of privileged or exempt information is inadvertent, involuntary, unintentional and is not intended to be a waiver of any privileges or exemptions.

2. Board Defendants object to the discovery requests to the extent that Plaintiffs seek information concerning third-parties not involved in this litigation that is confidential pursuant to *Martinelli v. District Court*, 199 Colo. 163, 612 P.2d 1083 (Colo. 1980), and *In re District Court*, 256 P.3d 687 (Colo. 2011), Colo. Rev. Stat. § 24-30-201, *et seq.*, and Colo.

1

Rev. Stat. § 24-72-204, *et seq.* Furthermore, some of these requests call for confidential information protected from redisclosure under 42 C.F.R. Part 2.

   3. Board Defendants object to the discovery requests to the extent they seek to impose requirements that are greater than or different from those imposed by the Federal Rules of Civil Procedure, and/or to the extent the requests seek materials or information not relevant to the claims or defenses raised and/or not proportionate to the needs of the case.

   4. Board Defendants responses to the discovery requests are made without in any way waiving, and expressly reserve, (a) the right to object on the grounds of competency, relevancy, materiality, privilege, or admissibility as evidence for any purpose in any subsequent proceeding in this or any other actions; and (b) the right to object on any grounds to other discovery requests involving or relating to the subject matter of the Interrogatories or the Requests for Production or for Admissions.

   5. Board Defendants reserve the right to revise, amend, correct, supplement, or clarify any responses or objections to Plaintiffs' requests; to recall any inadvertent responses or documents to which privilege is attached or an objection has been lodged; and to introduce at the time of hearing, trial, settlement, or other form of alternate dispute resolution any additional information or documents of which Board Defendants become aware as a result of continuing investigation or discovery. Board Defendants have not completed their discovery in this action pursuant to the Rules of Civil Procedure and have not completed preparation for trial.  Any objections or responses given to any discovery request are based on information currently known to Board Defendants and

may be amended or supplemented upon receipt or discovery of additional or different information.

6. Some of the documents produced by Board Defendants in response to Plaintiff's second discovery requests contain information that is confidential pursuant to *Martinelli v. District Court*, 199 Colo. 163, 612 P.2d 1083 (Colo. 1980), and *In re District Court*, 256 P.3d 687 (Colo. 2011), Colo. Rev. Stat. § 24-30-201, *et seq.*, Colo. Rev. Stat. § 24-72-204, *et seq*, and 42 C.F.R. Part 2, and thus is subject to the protective order in this case. Additionally, documents produced by Board Defendants contain protected patient health information provided to the Boards as HIPAA-exempt agencies; incidental disclosures of the Boards' deliberative process in individual cases; and the identity of licensees subject to confidential Board investigations. Some of the confidential records provided by Board Defendants are exceptionally sensitive because they relate to cases that are currently under investigation, are in active litigation, or resulted in a dismissal of the Board matter with no public record of the Board's investigation. Board Defendants will identify for Plaintiffs exceptionally sensitive documents and may request additional protections for the exceptionally sensitive information. <u>As agreed by the parties in the Stipulated Protective Order, all confidential information contained in these documents "shall be used solely by the receiving party for the purpose of litigating in the above-captioned litigation, shall be and remain confidential, and shall not be used for any purpose other than litigating in the above-captioned litigation." Doc. 132 pg. 2.</u>

7. Each and every response to any of Plaintiffs' discovery requests includes these general objections and denials. Additional specific objections made in response to a particular request are not intended to limit the general objections.

3

# DOCUMENT REQUESTS

19. All documents and communications to or from the Colorado Medical Board or any of its members or staff, including any individuals employed by the Department of Regulatory Agencies who assist the Colorado Medical Board, or the State Board of Nursing or any of its members or staff, including any individuals employed by the Department of Regulatory Agencies who assist the State Board of Nursing, since January 1, 2019, concerning medication abortion or medication abortion reversal.

**OBJECTIONS: In addition to the general objections asserted above, Board Defendants object to this request as it is overbroad, unduly burdensome, and disproportionate to the needs of this case.**

**RESPONSE: Subject to the specific and general objections, the Boards will produce non-privileged responsive documents by December 20, 2024.**

20. All documents and communications between the Attorney General's office and any other state or federal government entity or employee, since January 1, 2019, concerning medication abortion or medication abortion reversal, including without limitation any documents and communications concerning lawsuits or enforcement actions involving medication abortion reversal or involving the October 23, 2023 Open Letter from Attorneys General Regarding CPC Misinformation and Harm (https://perma.cc/CN6Y-X7WB).

**OBJECTIONS: In addition to the general objections asserted above, Board Defendants specifically object to this request to the extent it seeks attorney-client privileged communications between the Boards and their counsel related to this case.**

**RESPONSE: Subject to the specific and general objections above, Board Defendants do not possess materials responsive to this request.**

4

# INTERROGATORIES

8. Identify all filters, topics, or categories used by the Attorney General to prioritize, evaluate, or otherwise review complaints for potential investigation and enforcement under the Colorado Consumer Protection Act.

**ANSWER: The Board Defendants do not investigate Consumer Protection Act complaints or otherwise enforce the Colorado Consumer Protection Act.**

9. Identify all instances in which the Attorney General, the Colorado Medical Board, or the State Board of Nursing have designated a medical treatment as per se failing to meet "generally accepted standards of practice," "generally accepted standards of medical practice," "generally accepted standards of nursing practice," "generally accepted standards of care," or "standard(s) of care" by statute, regulation, policy, or other rule.

**ANSWER: The Medical Board has designated the following medical treatments as failing to meet generally accepted standards of practice:**

- **Administering, dispensing, or prescribing any habit-forming drug or any controlled substance as defined in section 18-18-102 (5) other than in the course of legitimate professional practice, § 12-240-121(1)(c), C.R.S.;**

- **Dispensing, injecting, or prescribing an anabolic steroid, as defined in section 18-18-102 (3), for the purpose of the hormonal manipulation that is intended to increase muscle mass, strength, or weight without a medical necessity to do so or for the intended purpose of improving performance in any form of exercise, sport, or game, § 12-240-121(1)(o), C.R.S.;**

- **Dispensing or injecting an anabolic steroid, as defined in section 18-18-102 (3), unless the anabolic steroid is dispensed from a pharmacy prescription drug outlet pursuant to a prescription order or is dispensed by any practitioner in the course of the practitioner's professional practice, § 12-240-121(1)(p), C.R.S.;**

- **Prescribing, distributing, or giving to a family member or to oneself**

5

except on an emergency basis any controlled substance as defined in section 18-18-204 or as contained in schedule II of 21 U.S.C. sec. 812, as amended, § 12-240-121(1)(q), C.R.S.;

- Prescription of stimulant drugs for the purposes of diet control for weight loss, increasing work capacity to combat the normal fatigue associated with any endeavor, or to chemically induce euphoria is not within generally accepted standards of medical practice, 3 CCR 713-1, Rule 1.27;

- Prescription of more than a 30-day supply of continuous benzodiazepine to a patient who has not previously been prescribed benzodiazepines in the last 12 months unless the patient at issue is being treated for epilepsy, a seizure/seizure disorder, spasticity, alcohol withdrawal, or specific neurological conditions, or except if a licensee would abruptly alter a patient's access to benzodiazepines in response to this rule, 3 CCR 713-1, Rule 1.28;

The Nursing Board has designated the following medical treatments as failing to meet generally accepted standards of practice:

- Administering, dispensing, or prescribing any habit-forming drug or any controlled substance, as defined in section 18-18-102(5), other than in the course of legitimate professional practice, which includes the recommendation, administration, or dispensation of medical marijuana, § 12-255-120(1)(s), C.R.S.;

- Dispensing, injecting, or prescribing an anabolic steroid, as defined in section 18-18-102(3), for the purpose of the hormonal manipulation that is intended to increase muscle mass, strength, or weight without a medical necessity to do so or for the intended purpose of improving performance in any

6

form of exercise, sport, or game, § 12-255-120(1)(q), C.R.S.;

- Dispensing or injecting an anabolic steroid, as defined in section 18-18-102 (3), unless the anabolic steroid is dispensed from a pharmacy prescription drug outlet pursuant to a prescription order or is dispensed by any practitioner in the course of the practitioner's professional practice, § 12-255-120(1)(r), C.R.S.;

- Prescribing, distributing, or giving to himself or herself or a family member any controlled substance as defined in part 2 of article 18 of title 18 or as contained in schedule II of 21 U.S.C. sec. 812, except for medical marijuana lawfully recommended and obtained pursuant to the laws of the state of Colorado, § 12-255-120(1)(p), C.R.S.;

- Has administered, dispensed, or prescribed any habit-forming drug or any controlled substance, as defined in section 18-18-102(5), other than in the course of legitimate professional practice, which includes the recommendation, administration, or dispensation of medical marijuana, § 12-255-120(1)(s), C.R.S.;

- Prescription of more than a 30-day supply of continuous benzodiazepines to a patient who has not previously been prescribed benzodiazepines in the last 12 months unless the patient at issue is being treated for epilepsy, a seizure/seizure disorder, spasticity, alcohol withdrawal, or specific neurological conditions, or except if a licensee would abruptly alter a patient's access to benzodiazepines in response to this rule, 3 CCR 716-1, Rule 1.26.

10. Identify all material facts Defendants will rely on to support their Affirmative Defenses, including any facts showing that SB 23-190, Medical Board Rule 1.32, and Nursing Board Rule 1.35 are "supported by compelling governmental interests, goals, and objectives." Dkts. 112 at 45, 118 at 45, 122 at 45.

**OBJECTIONS: The Boards object to this interrogatory to the extent it calls**

7

for information protected by the attorney-client privilege or the work-product doctrine. The Boards further object to the extent that Interrogatory No. 10 would require them to review and summarize discovery already provided and equally accessible to Plaintiffs in this case.

ANSWER: The legislative declaration creating the Medical Board states that the purpose of the Medical Practice Act is to protect the public "against unauthorized, unqualified, and improper practice of the healing arts in this state." § 12-240-102, C.R.S. Similarly, the legislative declaration creating the Nursing Board states that the purpose of the Nurse and Nurse Aide Practice Act is to protect the public "against unauthorized, unqualified, and improper application of services by individuals in the practice of nursing and the practice as a certified midwife...[and] by nurse aides in a medical facility." § 12-255-102, C.R.S. Thus, the Boards are statutorily tasked with establishing generally accepted standards of medical and nursing practices in Colorado for their licensees for the purpose of protecting the health and welfare of the people of Colorado. Compliance with generally accepted standards of practice requires licensees to exercise the same degree of knowledge, skill, and care as exercised by other medical professionals in the same field during the time period in question. *See State Bd. of Medical Examiners v. McCroskey*, 880 P.2d 1188, 1194 (Colo. 1994). The Boards determined, based on the legislative and rulemaking records, that the rules they enacted were necessary to comply with their obligations to determine and safeguard generally accepted standards of practice.

8

**The Boards will rely on the testimony and evidence presented in legislative record for SB 23-190 and the rulemaking proceedings for Medical Board 1.32 and Nursing Board Rule 1.35 to support the factual and legal basis for the rules, which demonstrated that the rules supported compelling government interests, goals, and objectives of protecting the public against unauthorized, unqualified, and improper practice of the healing arts and nursing. These facts are found in the following records:**

| |
|---|
| SB 23-190 (CMB 000001-00005) |
| March 9, 2023, Senate Floor Debate Hearing Recording (CMB 000006) |
| March 15, 2023, Senate Judiciary Committee Hearing Recording (CMB 000007) |
| March 21, 2023, Senate Second Reading Recording (CMB 000008) |
| March 22, 2023, Senate Third Reading Recording (CMB 000009) |
| March 28, 2023, House Judiciary Committee Hearing Recording (CMB 000010) |
| March 30, 2023, House Judiciary Committee Hearing Recording (CMB 000011) |
| April 1, 2023, House Third Reading Recording (CMB 000012) |
| Rulemaking Record (CMB000013-001369) |
| Minutes of April 19, 2023 Board of Nursing Meeting (CMB 001370-1372) |
| Minutes of September 20, 2023, Board of Nursing Meeting (CMB 001373-001375) |
| Minutes of April 17, 2023, Medical Board Meeting (CMB 001376-001377) |
| Minutes of May 18, 2023, Medical Board Meeting (CMB 001378-001381) |
| Minutes of August 17, 2023, Medical Board Meeting (CMB 001382-001385) |
| Minutes of September 6, 2023, Medical Board Meeting (CMB 001386-001387) |
| Minutes of September 21, 2023, Board of Pharmacy Meeting (CMB 001388-001400) |
| June 5, 2023, Joint Stakeholder Meeting Recordings (CMB 001401) |
| August 4, 2023, Joint Stakeholder Meeting Recordings (CMB 001402) |
| Board of Nursing Rule 1.35 (CMB 001403-001406) |
| Medical Board Rule 1.32 (CMB 001407-001412) |
| State Board of Pharmacy Rule 33.00.00 (CMB 001413-001415) |
| Declaration of Samuel Delp (CMB 001416-001425) |
| Declaration of Patricia Cullen (CMB 001426-001547) |
| Declaration of Dr. Rebecca Cohen (CMB 001548-001841) |
| September 20, 2023, Board of Nursing Meeting Video, Part 1 (CMB 001842) |

| |
|---|
| September 20, 2023, Board of Nursing Meeting Video, Part 2 (CMB 001843) |
| August 17, 2023, Medical Board Meeting Video, Part 1 (CMB 001844) |
| August 17, 2023, Medical Board Meeting Video, Part 2 (CMB 001845) |
| September 21, 2023, Board of Pharmacy Meeting Video (CMB 001846) |
| December 1, 2023 memo to OLLS (DORA 0004-00011) |
| The publicly available discipline related to the cases identified on the Boards' responsive case outcomes chart, which is available at: https://apps2.colorado.gov/dora/licensing/lookup/licenselookup.aspx |
| Text of bill SB 23-190, including all seven versions of SB 23-190 and amendments to the bill publicly available at: https://leg.colorado.gov/bills/sb23-19 |

**Finally, the Boards will rely on the testimony and evidence presented by its retained and non-retained experts, Dr. Rebecca Cohen, Dr. Patricia Cullen, and Samuel Delp, previously disclosed in their reports and depositions.**

11. Identify any and all statements in Defendants' briefing that do not represent the respective positions of each of the Attorney General, the Colorado Medical Board, and the State Board of Nursing, including without limitation the statement that "[t]here is no scientifically valid method of 'reversing' a medication abortion." Dkt. 99 at 4; *cf.* Rough Deposition Tr. of Nathan Blake at 68:15.

**OBJECTION: The Boards object to this interrogatory as vague because it does not specifically identify what is meant by the terms "positions" and "briefing."**

**ANSWER: Subject to general and specific objections stated above, the Boards are unaware of any statements in Defendants' briefs submitted in this case that do not represent the Boards' legal and factual positions asserted in this case.**

10

## REQUESTS FOR ADMISSION

14. Admit that Defendants have never taken disciplinary action against a Colorado Medical Board or State Board of Nursing licensee based on a recommendation of induced vomiting after the ingestion of mifepristone.

**OBJECTIONS: Board Defendants object to this request for admission as overbroad, unduly burdensome, and disproportionate to the needs of this case. There is no time limitation for this request. The offices of each Board Defendant have document retention policies that do not permit retention of documents that would allow them to admit or deny this request. Board Defendants do not have a manner by which they can verify whether or not they have "never" taken a disciplinary action against a licensee based on a recommendation of induced vomiting after the ingestion of mifepristone. Moreover, because Plaintiffs have not previously sought discovery related to this issue, Board Defendants have not conducted searches for related records and requiring them to do so now unduly burdensome and disproportionate to the needs of this case.**

**ANSWER: Subject to the specific and general objections asserted above, Board Defendants are unable to either admit or deny this request for admission despite having made a reasonable inquiry into the subject matter of the request.**

15. Admit that Medical Board Rule 1.32 and Nursing Board Rule 1.35 are based in part on Defendants' assessment of the impact of progesterone on pregnancy outcomes for women who have ingested mifepristone.

**ANSWER: Subject to the general objections asserted above, the Boards admit that Medical Board Rule 1.32 and Nursing Board Rule 1.35 are based on the totality of the materials presented for board review, including a variety of viewpoints on the impact progesterone may have on pregnancy outcomes for**

11

women who have ingested mifepristone as reflected in the rule making record, including the impact of progesterone on pregnancy outcomes for women who have ingested mifepristone.

16. Admit that there is no prohibition in the state of Colorado against the use of progesterone as "gender affirming care."

**OBJECTIONS:** Board Defendants object to use of the term "gender affirming care" as vague because Plaintiffs do not define it, and the term may have different meanings in different contexts. The Boards also object to the term "prohibition" as it is vague.

**ANSWER:** Subject to the specific and general objections asserted above, the Boards admit that there is no rule or statute in the state of Colorado barring the use of progesterone as "gender affirming care" as long as each use of progesterone for that purpose is determined to meet the standard of care based on the Boards' case-by-case review.

17. Admit that there is no prohibition in the state of Colorado against the use of progesterone to prevent preterm birth.

**OBJECTIONS:** Board Defendants object to the term "prohibition" as it is vague.

**ANSWER:** Subject to the specific and general objections asserted above, the Boards admit that there is no rule or statute in the state of Colorado barring the use of progesterone to prevent preterm birth as long as each use of progesterone for that purpose is determined to meet the standard of care based on the Boards' case-by-case review.

18. Admit that there is no prohibition in the state of Colorado against the use of progesterone to treat threatened miscarriage.

**OBJECTIONS: Board Defendants object to the use of the term "threatened miscarriage" as vague because Plaintiffs do not define it, and the term carries different meanings in different contexts. The Boards also object to the term "prohibition" as it is vague.**

**ANSWER: Subject to the specific and general objections asserted above, the Boards admit that there is no rule or statute in the state of Colorado barring the use of progesterone to attempt to prevent a miscarriage as long as each use of progesterone for that purpose is determined to meet the standard of care based on the Boards' case-by-case review.**

19. Admit that there is no prohibition in the state of Colorado against the use of progesterone to treat premenstrual syndrome.

    **OBJECTIONS: The Boards object to the term "prohibition" as it is vague.**

    **ANSWER: Subject to the specific and general objections asserted above, the Boards admit that there is no rule or statute in the state of Colorado barring the use of progesterone to treat premenstrual syndrome as long as each use of progesterone for that purpose is determined to meet the standard of care based on the Boards' case-by-case review.**

20. Admit that there is no prohibition in the state of Colorado against the use of progesterone for luteal phase support, including during in vitro fertilization or frozen embryo transfer.

    **OBJECTIONS: The Boards object to the term "prohibition" as it is vague.**

    **ANSWER: Subject to the specific and general objections asserted above, the Boards admit that there is no rule or statute in the state of Colorado barring the use of progesterone for luteal phase support, including during in vitro**

13

**fertilization or frozen embryo transfer, as long as each use of progesterone for that purpose is determined to meet the standard of care based on the Boards' case-by-case review.**

21. Admit that there is no prohibition in the state of Colorado against the use of progesterone for luteal phase defect.

    **OBJECTIONS: The Boards object to the term "prohibition" as it is vague.**

    **ANSWER: Subject to the specific and general objections asserted above, the Boards admit that there is no general rule or statute in the state of Colorado barring the use of progesterone for luteal phase defect as long as each use of progesterone for that purpose is determined to meet the standard of care based on the Boards' case-by-case review.**

22. Admit that there is no prohibition in the state of Colorado against the use of progesterone for hormone therapy after menopause.

    **OBJECTIONS: The Boards object to the term "prohibition" as it is vague.**

    **ANSWER: Subject to the specific and general objections asserted above, the Boards admit that there is no rule or statute in the state of Colorado barring the use of progesterone for hormone therapy after menopause as long as each use of progesterone for that purpose is determined to meet the standard of care based on the Boards' case-by-case review.**

23. Admit that SB 23-190 interferes with a patient's ability to receive information about medication abortion reversal.

    **ANSWER: Denied. SB 23-190 speaks for itself, and with respect to the Boards, the law concerns only the administration, dispensing, distributing, or delivering a drug with the intent to interfere with, reverse, or halt a medication abortion.**

24. Admit that in the state of Colorado pregnant women have a "fundamental right continue a pregnancy." Colo. Rev. Stat. § 25-6-403(2).

**ANSWER: The Boards admit that Colo. Rev. Stat. § 25-6-403(2) states that "[a] pregnant individual has a fundamental right to continue a pregnancy and give birth or to have an abortion and to make decisions about how to exercise that right" but denies the implication that the statute grants individuals the right to require medical professionals to provide treatment that does not conform to the applicable standard of care.**

25. Admit that in the state of Colorado pregnant women have a "fundamental right" to "make decisions about how to exercise" their fundamental right to continue a pregnancy. Colo. Rev. Stat. § 25-6-403(2).

**ANSWER: The Boards admit that Colo. Rev. Stat. § 25-6-403(2) states that "[a] pregnant individual has a fundamental right to continue a pregnancy and give birth or to have an abortion and to make decisions about how to exercise that right" but denies the implication that the statute grants individuals the right to require medical professionals to provide treatment that does not conform to the applicable standard of care.**

Respectfully submitted this December 13, 2024

| AS TO INTERROGATORY RESPONSES: | AS TO OBJECTIONS, RFP RESPONSES AND RFA RESPONSE: |
|---|---|
| | PHILIP J. WEISER |
| */s/ Samuel Delp* | Attorney General |
| Samuel Delp, Director of the Division of Professions and Occupations | |
| | */s/ Elizabeth V. Kenny* |
| | ELIZABETH KENNY* |

15

    Senior Assistant Attorney General
    ZACH FITZGERALD*
    Assistant Attorney General
    Colorado Attorney General's Office
    Ralph L. Carr Colorado Judicial Center
    1300 Broadway
    Denver, CO 80203
    Telephone: (303) 508-6383
    E-Mail: elizabeth.kenny@coag.gov
    Zach.fitzgerald@coag.gov
    *Attorneys for Defendants, The Colorado Nursing Board Members*
    *Counsel of Record

    */s/ Brian Urankar*
    BRIAN URANKAR*
    Senior Assistant Attorney General
    JENNIFER H. HUNT*
    Senior Assistant Attorney General
    Ralph L. Carr Colorado Judicial Center
    1300 Broadway, 8th Floor
    Denver, Colorado 80203
    Telephone: (303) 508-6407
    E-Mail:  brian.urankar@coag.gov
    Jennifer.Hunt@coag.gov
    Attorneys for Defendant, The Colorado Medical Board
    *Counsel of Record

# CERTIFICATE OF SERVICE

      I hereby certify that on December 13, 2024, I served a true and complete copy of the foregoing **BOARD DEFENDANTS' RESPONSES TO PLAINTIFFS' SIXTH SET OF DISCOVERY REQUESTS TO DEFENDANTS** upon all parties of record via email.

Lauren Marie Dickey
Brady Jerome Grassmeyer
Beth Orem
Lauren.Dickey@coag.gov
brady.grassmeyer@coag.gov
beth.orem@coag.gov
*Attorneys for Defendant Phil Weiser*

Colten L. Stanberry
Rebekah Perry Ricketts
Mark Leonard Rienzi
Laura Wolk Slavis
Amy Ren
Amanda Salz
Michael O'Brien
cstanberry@becketlaw.org
rricketts@becketlaw.org
mrienzi@becketlaw.org
lwolk@becketlaw.org
aren@becketlaw.org
mobrien@becketlaw.org
asalz@becketlaw.org
*Attorneys for Plaintiffs*

Gabriella M. McIntyre
Julia C. Payne
Kevin H. Theriot
gmcintyre@adflegal.org
jpayne@adflegal.org
ktheriot@adflegal.org
*Attorneys for Plaintiff Intervenor Chelsea Mynyk*

                                                  /s/ *Amanda Diaz*