## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

BELLA HEALTH AND WELLNESS,
DENISE "DEDE" CHISM, ABBY
SINNETT, and KATHLEEN SANDER,
on behalf of themselves and their
patients,

         *Plaintiffs*,

CHELSEA M. MYNYK,

         *Plaintiff-Intervenor*,

v.

PHIL WEISER, in his official capacity
as Attorney General of Colorado;
BERNARD JOSEPH FRANTA, LORI
RAE HAMILTON, KARRIE TOMLIN,
LENNY ROTHERMUND, HAYLEY
HITCHCOCK, ALISSA M. SHELTON,
PHYLLIS GRAHAM-DICKERSON,
BRANDY VALDEZ MURPHY, DIANE
REINHARD, NICHELE BRATTON,
and AECIAN PENDLETON, in their
official capacity as members of the
Colorado State Board of Nursing,

         *Defendants*.

**Case No. 1:23-cv-939-DDD-SBP**

**PLAINTIFF-INTERVENOR'S
RESPONSE IN OPPOSITION TO
THE DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT (ECF
177 AND 178 FILED 1/31/2025)**

# TABLE OF CONTENTS

Table Of Authorities ...................................................................................................ii

Introduction .............................................................................................................. 1

Response To Statement Of Undisputed Material Facts ............................................. 2

Argument .................................................................................................................. 3

I.       The State is not entitled to summary judgment on Mrs. Mynyk's
         free exercise claim because the AG is not immune, and the APR
         ban is not neutral or generally applicable. ........................................................ 4

         A.       Sovereign immunity does not apply to Mrs. Mynyk's Section 3 claim
                  against the Attorney General because he enforces that
                  law.......................................................................................................... 4

         B.       Section 3 is not neutral or generally applicable because it
                  targets religious health professionals, allows individualized
                  exemptions, and regulates progesterone only for APR. ........................... 6

         C.       Section 3 fails strict scrutiny. ............................................................... 8

II.      The State is not entitled to summary judgment on Mrs. Mynyk's
         free speech claim because it is justiciable and the APR Ban is
         content- and viewpoint-based. .......................................................................... 10

III.     The State is not entitled to summary judgment on Mrs. Mynyk's vagueness
         claims............................................................................................................... 15

Conclusion............................................................................................................... 18

Certificate Of Service............................................................................................... 19

Certificate Of Word Count....................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Ashaheed v. Currington,*
 7 F.4th 1236 (10th Cir. 2021) ........................................................ 6

*Axson-Flynn v. Johnson,*
 356 F.3d 1277 (10th Cir. 2004) ...................................................... 7

*Bella Health & Wellness v. Weiser,*
 699 F. Supp. 3d 1189 (D. Colo. 2023) ........................................... 5

*Brown v. Herbert,*
 850 F. Supp. 2d 1240 (D. Utah 2012) ..................................... 12, 17

*California v. Texas,*
 593 U.S. 659 (2021) ...................................................................... 11

*Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York,*
 447 U.S. 557 (1980) ................................................................ 14, 15

*Chamber of Commerce v. Edmonson,*
 594 F.3d 742 (10th Cir. 2010) ........................................................ 5

*Chiles v. Salazar,*
 116 F.4th 1178 (10th Cir. 2024) ................................................ 6, 10

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
 508 U.S. 520 (1993) ........................................................................ 6

*Clapper v. Amnesty International USA,*
 568 U.S. 398 (2013) ...................................................................... 12

*ConocoPhillips Co. v. Henry,*
 520 F. Supp. 2d 1282 (N.D. Okla. 2007).................................... 17

*Cruz v. Abbott,*
 849 F.3d 594 (5th Cir. 2017)......................................................... 17

*Does 1-11 v. Board of Regents of University of Colorado,*
 100 F.4th 1251 (10th Cir. 2024) ..................................................... 8

*Doyle v. Hogan,*
 1 F.4th 249, 256 (4th Cir. 2021) ..................................................... 5

*Fellowship of Christian Athletes v. San Jose Unified School District Board of Education,*
 82 F.4th 664 (9th Cir. 2023) ....................................................... 7, 8

*Fowler v. Stitt,*
 104 F.4th 770 (10th Cir. 2024) ....................................................... 4

*Fulton v. City of Philadelphia,*
  593 U.S. 522 (2021) ......................................................................... 6, 7, 8

*Goldfarb v. Virginia State Bar,*
  421 U.S. 773 (1975) ................................................................................. 10

*Hendrickson v. American Federation of State County & Municipal Employees
  Council 18,*
  992 F.3d 950 (10th Cir. 2021) ................................................................... 5

*Kansas Judicial Review v. Stout,*
  519 F.3d 1107 (10th Cir. 2008) ................................................. 13, 14, 17

*Kennedy v. Bremerton School District,*
  597 U.S. 507 (2022) ................................................................................... 9

*Laird v. Tatum,*
  408 U.S. 1 (1972) ...................................................................................... 11

*Masterpiece Cakeshop v. Colorado Civil Rights Commission,*
  584 U.S. 617 (2018) ................................................................................... 7

*Matal v. Tam,*
  582 U.S. 218 (2017) ................................................................................. 15

*McGraw v. Barnhart,*
  450 F.3d 493 (10th Cir. 2006) ................................................................. 16

*Murthy v. Missouri,*
  603 U.S. 43 (2024) ................................................................................... 16

*National Federation of the Blind of Arkansas, Inc. v. Pryor,*
  258 F.3d 851 (8th Cir. 2001) ................................................................... 18

*National Institute of Family & Life Advocates v. Becerra,*
  585 U.S. 755 (2018) ....................................................................... 9, 14, 15

*Ohralik v. Ohio State Bar Ass'n,*
  436 U.S. 447 (1978) ................................................................................. 10

*Peck v. McCann,*
  43 F.4th 1116 (10th Cir. 2022) ............................................................... 11

*Ramsey Winch, Inc. v. Henry,*
  555 F.3d 1199 (10th Cir. 2009) ............................................................... 17

*Reed v. Town of Gilbert,*
  576 U.S. 155 (2015) ................................................................................. 15

*Rio Grande Foundation v. Oliver,*
  57 F.4th 1147 (10th Cir. 2023) ............................................................... 11

iii

*Rural Water Sewer & Solid Waste Management, District No. 1, Logan County, Oklahoma v. City of Guthrie,*
   654 F.3d 1058 (10th Cir. 2011) ............................................................. 17

*United States v. Alvarez,*
   567 U.S. 709 (2012) ............................................................................. 15

*Virginia v. American Booksellers Ass'n, Inc.,*
   484 U.S. 383 (1988) ............................................................................. 12

*Vogt v. McIntosh County, Oklahoma, Board of County Commissioners,*
   98 F.4th 1013 (10th Cir. 2024) .............................................................. 3

*Walkingstick Dixon v. Oklahoma ex rel. Regional University System of Oklahoma Board of Regents,*
   125 F.4th 1321 (10th Cir. 2025) ............................................................ 3

*Webster v. Reproductive Health Services,*
   492 U.S. 490 (1989) ....................................................................... 10, 11

*Whole Woman's Health v. Jackson,*
   595 U.S. 30 (2021) ................................................................................ 5

*Winsness v. Yocom,*
   433 F.3d 727 (10th Cir. 2006) ............................................................. 12

*Wyoming Gun Owners v. Gray,*
   83 F.4th 1224 (10th Cir. 2023) ............................................................ 12

**Statutes**

Colo. Rev. Stat. § 12-255-119 ...................................................................... 5

Colo. Rev. Stat. § 12-30-120 ........................................................................ 4

Colo. Rev. Stat. § 6-1-103 ........................................................................... 10

Colo. Rev. Stat. § 6-1-105 ........................................................................... 11

Colo. Rev. Stat. § 6-1-107 ........................................................................... 11

Colo. Rev. Stat. § 6-1-734 ..................................................................... 16, 18

**Regulations**

3 Colo. Code Regs. § 716-1:1.35 ............................................................... 7, 8

## INTRODUCTION

Many women regret their abortions and need abortion pill reversal (APR). APR is a safe and effective treatment that uses the natural pregnancy hormone progesterone to counter the effects of the abortion drug mifepristone. If timely administered after taking mifepristone, APR can save the life of an unborn child. Yet Colorado's SB 23-190 ("APR Ban") deprives women of the choice to use this lifesaving treatment. This violates Mrs. Mynyk's freedom to prescribe a protocol that has the potential to save lives per her religious beliefs and to advertise that protocol to women.

The Attorney General largely ignores the merits of Mrs. Mynyk's claims, instead arguing that they are barred by sovereign immunity and justiciability issues. But this Court already rejected those arguments in its preliminary injunction order. ECF No. 113, MTD and MPI Order 21–24, 28–30. The Boards argue that the law is neutral and generally applicable. But Mrs. Mynyk and Bella Health introduced evidence that Colorado's law specifically targets religious APR providers and fails strict scrutiny. And by prohibiting advertising about APR, Colorado censors the content and viewpoint of Mrs. Mynyk's non-commercial speech. Finally, neither the Boards nor the Attorney General address Mrs. Mynyk's argument that the law's impermissibly vague prohibition on advertising prohibits her from advertising obstetric care up to 20 weeks. For these reasons, this Court should deny both the Attorney General's and the Boards' motions for summary judgment and instead grant Mrs. Mynyk's and Bella Health's motions for summary judgment.

1

**RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS**

Mrs. Mynyk joins and incorporates Bella Health's responses to Defendants' statements of facts, including exhibits cited and all admissions and denials. In addition, Mrs. Mynyk makes the following responses to the statements of undisputed fact in Defendants' Briefs that uniquely apply to her:

**Attorney General's Brief**

Mrs. Mynyk does not dispute the assertions in ¶¶ 3, 21-29, 36.

Mrs. Mynyk disputes ¶ 31 –

**Boards' Brief**

Mrs. Mynyk does not dispute the assertions in ¶¶ 9-11, 88-95, 99.

Mrs. Mynyk disputes the following:[1]

¶ 96 – Mrs. Mynyk relies on multiple studies to support her contention APR works, not just the two studies discussed in the portion of her deposition cited by the Boards. *See, e.g.*, ECF No. 140, Pl.-Intervenor's Verified Compl. ¶¶ 87–101; ECF No. 182-6, Wubbenhorst Report ¶¶ 35–46.

¶ 97 –

---

[1] It is unclear what deposition testimony the Boards are referring to because they cite page numbers of the deposition rather than of the exhibit and the exhibit is missing relevant pages.

2

¶ 98 – Mrs. Mynyk testified that she has treated four APR patients. Two have given birth to healthy babies and the third is due in April. ECF No. 179-1, Mynyk Decl. ¶ 24. That's a 75% success rate.

¶ 100 – Mrs. Mynyk tells patients that the continuing rate of pregnancy after mifepristone is "approximately 25 percent," which is within the 20 to 40 percent range. *Id.* at 22:10.

¶ 101 –

## ARGUMENT [2]

"Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Vogt v. McIntosh Cnty., Okla., Bd. of Cnty. Comm'rs*, 98 F.4th 1013, 1016 (10th Cir. 2024) (cleaned up). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Walkingstick Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of Okla. Bd. of Regents*, 125 F.4th 1321, 1333 (10th Cir. 2025). A court should "view facts in the light most favorable to the non-mov[ants] …, resolving all factual disputes and reasonable inferences in their favor." *Id.* (cleaned up). The State has not met its burden of showing that it is entitled to judgment as a

---

[2] In addition to these arguments, Mrs. Mynyk joins and incorporates the Argument Section of the Bella Health's Summary Judgment Brief, including cited exhibits, except for section II.E.

matter of law because (1) Mrs. Mynyk's claims are not barred by sovereign immunity, (2) Mrs. Mynyk's claims are justiciable, (3) Section 2 is not neutral and generally applicable and fails strict scrutiny, (4) Section 1 regulates Mrs. Mynyk's non-commercial speech and a content- and viewpoint-discriminatory manner, and (5) Section 2 is unconstitutionally vague.

## I.   The State is not entitled to summary judgment on Mrs. Mynyk's free exercise claim because the AG is not immune, and the APR Ban is not neutral or generally applicable.

Section 3 of SB 23-190 prohibits licensees from "provid[ing], prescrib[ing], administer[ing] or attempt[ing] medication abortion reversal." Colo. Rev. Stat. § 12-30-120(2)(a). The State does not contest that this provision burdens Mrs. Mynyk's sincere religious beliefs. Instead, the State argues that Mrs. Mynyk's free exercise claim against the Attorney General is barred by sovereign immunity. But that's wrong. What's more, because Section 3 is neither neutral nor generally applicable, it fails strict scrutiny. Thus, no Defendant is entitled to summary judgment on Mrs. Mynyk's free exercise claim.

### A.  Sovereign immunity does not apply to Mrs. Mynyk's Section 3 claim against the Attorney General because he enforces that law.

The Attorney General argues that sovereign immunity bars Mrs. Mynyk's free exercise claim. ECF No. 177, Att'y General's Mot. for Summ. J. 32–37. But as he acknowledges, *id.* at 33, "*Ex parte Young* creates an exception [to state sovereign immunity] for suits seeking prospective injunctive relief" so long as "the named state official has some connection with the enforcement of the challenged action." *Fowler v. Stitt*, 104 F.4th 770, 782 (10th Cir. 2024) (cleaned up).

4

The Attorney General has a connection with the enforcement of Section 3: he "shall prosecute" complaints referred to him by the Colorado State Board of Nursing. Colo. Rev. Stat. § 12-255-119(4)(d). The Attorney General thinks this enforcement authority does not count because he "pursues these referrals solely in the Department of Law's capacity as counsel to the Board Defendants." AG's Mot. 34. But this Court already rejected that argument. Prelim. Inj. Order 28–31. Nothing has changed.

The cases cited by the Attorney General do not require otherwise. In *Whole Woman's Health v. Jackson*, the plaintiffs could not point to "*any* enforcement authority the attorney general possesses." 595 U.S. 30, 43 (2021) (emphasis added). Similarly, in *Hendrickson v. AFSCME Council 18*, there was no specific statute authorizing the governor or attorney general to prosecute claims on behalf of the relevant state agencies. 992 F.3d 950, 966 (10th Cir. 2021). And in *Chamber of Commerce v. Edmonson*, even though the defendant had no duty to enforce one portion of the statute challenged, he lacked sovereign immunity regarding another section of the challenged law because "he drafts contracts for state officials upon request." 594 F.3d 742, 757, 760 (10th Cir. 2010). Finally, in *Doyle v. Hogan*, the Fourth Circuit held that the attorney general lacked sufficient enforcement authority because he was not required to participate in disciplinary hearings. 1 F.4th 249, 256 (4th Cir. 2021). In contrast, General Weiser *must* prosecute complaints referred to him by the Medical and Nursing Boards under Section 3, and "there is no evidence suggesting that the boards will not make such referrals." Prelim. Inj. Order 30.

The Attorney General has more than a general duty to enforce Section 3, and Mrs. Mynyk's free exercise claim is not barred by sovereign immunity.

**B. Section 3 is not neutral or generally applicable because it targets religious health professionals, allows individualized exemptions, and regulates progesterone only for APR.**

### 1. The APR Ban targets religious health professionals.

"Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton v. City of Phila.*, 593 U.S. 522, 533 (2021). The Boards argue that Section 3 does not discriminate against religion on its face. That's inaccurate and "facial neutrality is not determinative." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993). The Boards acknowledge that "the legislative or administrative history" of Section 3 is relevant to its constitutionality. ECF No. 178, Colo. Med. Bd. & Colo. Bd. of Nursing's Joint Mot. for Summ. J. 27. Moreover, "the Free Exercise Clause is not limited to acts motivated by overt religious hostility or prejudice." *Ashaheed v. Currington*, 7 F.4th 1236, 1245 (10th Cir. 2021) (cleaned up).

In *Chiles v. Salazar*, the court held that "nothing in the record suggests the [challenged law]'s aim is to infringe or restrict practices because of their religious motivation." 116 F.4th 1178, 1223 (10th Cir. 2024). But here the legislative record shows SB 23-190 was enacted to target faith-based organizations. For instance, Senator Janice Marchman accused "faith-based organizations" of "trad[ing] on the goodwill of legitimate medicine to defraud patients." ECF No. 94-10, Tr. of Senate Judiciary Hr'g on SB 23-190 at 2–3. And Representative Karen McCormick testified that "religiously affiliated" organizations offer information that is "riddled with … guilt-inducing anti-abortion … messages." ECF No. 94-13, Tr. of House 3d Reading

of SB 23-190 at 13. These comments show "clear and impermissible hostility toward the sincere religious beliefs that motivate[]" Mrs. Mynyk and many other providers of APR. *Masterpiece Cakeshop v. Colo. C.R. Comm'n*, 584 U.S. 617, 634 (2018).

### 2. The APR Ban allows individualized exemptions.

"A law is not generally applicable if it invite[s] the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Fulton*, 593 U.S. at 533. "[A] system of individualized exemptions is one that is designed to make case-by-case, subjective determinations on exemptions from generally applicable rules." *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1301 (10th Cir. 2004). The Nursing Board's rule specifically allows it to investigate APR "on a case-by-case basis." 3 Colo. Code Regs. § 716-1:1.35. That is the same system the Tenth Circuit said allowed for individualized exemptions in *Axson-Flynn*. A school's unwritten policy of granting some students exceptions to objectionable assignments indicated it "maintained a discretionary system of making individualized case-by-case determinations regarding who should receive exemptions from curricular requirements." *Axson-Flynn,* 356 F.3d at 1298–99. The Ninth Circuit agreed, holding that "the very fact that they require a case-by-case analysis is antithetical to a generally applicable policy." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 688 (9th Cir. 2023) (en banc).

The Boards argue that the rule does not permit the Nursing Board to "allow some practitioners to provide [APR] for secular reasons." Bds.' Mot. 34. But nothing in the rule prohibits the Board from considering the religious reasons a licensee prescribed progesterone in its evaluation of the case's "unique set of facts." 3 Colo.

Code Regs. § 716-1:1.35. "[T]he mere existence of a discretionary mechanism to grant exemptions can be sufficient to render a policy not generally applicable, regardless of the actual exercise." *Fellowship of Christian Athletes*, 82 F.4th at 687–88.

### 3. The APR Ban treats religious conduct less favorably than comparable secular conduct.

"A law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 593 U.S. at 534. Section 3 applies only to one specific use of progesterone: APR. The Boards argue that "administering progesterone after mifepristone is incomparable to other off-label uses of progesterone because the current scientific evidence establishes neither its efficacy nor safety for that purpose." Bds.' Mot. 32. But Mrs. Mynyk has presented evidence that APR is both safe and effective. Wubbenhorst Report ¶¶ 29–46. And the State's expert concedes that her "concern was not that [APR] is dangerous." ECF No. 184, Cohen Dep. 125:1–2. Regardless, the State's expert contests the safety and effectiveness of other uses of progesterone, including its use to prevent miscarriage. *Id.* at 45:12–53:25. Yet the State hasn't banned those uses. ECF 182-38, Bd. Defs.' Resp. to Pls.' 6th Set of Disc. Reqs. ¶¶ 16–22. Section 3 is not neutral and generally applicable.

### C. Section 3 fails strict scrutiny.

Because Section 3 "fail[s] either the neutrality or general applicability test, it trigger[s] strict scrutiny." *Does 1-11 v. Bd. of Regents of Univ. of Colo.*, 100 F.4th 1251, 1272 (10th Cir. 2024) (cleaned up). The State has not met its burden of showing that Section 3 is the least restrictive means to achieve a compelling

8

government interest. *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022) (explaining that the burden of proof shifts to the defendant on strict scrutiny).

The State has no compelling interest in prohibiting a safe and effective treatment that saves the lives of unborn children. The Boards rely heavily on Dr. Creinin's study, which was "halted … when three participants sought emergency medical care for hemorrhage." Bds.' Mot. 13. But they fail to mention that the two of the three women requiring medical intervention were from the control group that only received the first abortion drug—not the group receiving progesterone as part of APR. ECF No. 182-17, Michael D. Creinin *et al.*, *Mifepristone Antagonization with Progesterone to Prevent Medical Abortion*, 135 Obstetrics & Gynecology 158, 158 (2020). In contrast, Dr. Delgado's study showed a 68% APR effective rate for women who received a regimen of oral progesterone in the first trimester. Wubbenhorst Report ¶ 41. That study was consistent with institutional research standards. Physicians commonly use case series like Dr. Delgado's when studying pregnancy because of ethical concerns associated with randomized controlled trials. *Id.* ¶ 51. Drugs such as terbutaline and nifedipine, which prevent preterm birth, came into common usage based on data from case series alone. *Id.* ¶ 52

And the State effectively concedes Section 3 is not the *least restrictive means* of achieving its alleged interest in regulating licensed medical professionals and protecting patients. It could have instead enacted an informed consent law to ensure women know about the potential benefits and any alleged risks of APR. *See Nat'l Inst. of Family & Life Advoc. v. Becerra*, 585 U.S. 755, 770 (2018).

The cases cited by the Boards do not require otherwise. *Goldfarb v. Va. State Bar* was not a First Amendment case. So its recognition that States "have broad

9

power to establish standards for licensing practitioners and regulating the practice
of professions" does not mean the standards may disregard free exercise principles.
421 U.S. 773, 792 (1975). Similarly, *Ohralik v. Ohio State Bar Ass'n*'s ruling
upholding state regulation of attorney advertising was not a free exercise case and
was "only marginally affected with First Amendment concerns." 436 U.S. 447, 459
(1978). And in *Chiles*, the Tenth Circuit applied rational basis review, not strict
scrutiny, in part because it found no evidence of religious targeting as here. 116
F.4th at 1215, 1223. Because the State has not met its burden under strict scrutiny
review, it is not entitled to summary judgment on Mrs. Mynyk's free exercise claim.

## II.    The State is not entitled to summary judgment on Mrs. Mynyk's free speech claim because it is justiciable and the APR Ban is content- and viewpoint-based.

### A.  Mrs. Mynyk's free speech claim is justiciable.

#### 1.  Section 1 is enforceable by the Attorney General.

Section 1 provides that the "prohibition on deceptive trade practices" in the
Colorado Consumer Protection Act ("CCPA") "applies to … advertising for or
providing or offering to provide or make available medication abortion reversal."
ECF No. 94-8, SB 23-190 § 1(3)(b). It is uncontested that the Attorney General has
the authority to investigate and enforce the CCPA. Colo. Rev. Stat. §§ 6-1-103, 6-1-
107. Section 1 instructs the Attorney General and courts how to interpret the CCPA
by defining advertising for APR as a deceptive trade practice.

Relying on *Webster v. Reproductive Health Services*, 492 U.S. 490 (1989), the
Attorney General claims that Mrs. Mynyk may not challenge Section 1 because it is
an "uncodified legislative declaration." AG's Mot. 16. But unlike the preamble in
*Webster*, Section 1 *does* restrict Mrs. Mynyk's activities "in some concrete way." 492

10

U.S. at 506. It prevents her from advertising APR by declaring it is a deceptive trade practice. Nor is this case like *California v. Texas*, where the plaintiffs could not get an injunction against the Secretary of Health and Human Services because he had no power to enforce the challenged provision against them. 593 U.S. 659, 673 (2021). General Weiser may bring an enforcement action against APR advertising under Colo. Rev. Stat. section 6-1-105(1)(e) and (1)(rr).

### 2. Mrs. Mynyk has standing to challenge Section 1.

A plaintiff has standing if "[1] he has suffered a concrete and particularized injury [2] that is fairly traceable to the challenged conduct, [3] and is likely to be redressed by a favorable judicial decision." *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1160 (10th Cir. 2023). In the First Amendment pre-enforcement context, "an injury-in-fact exists where a chilling effect arise[s] from an objectively justified fear of real consequences." *Id.* "Circuit and Supreme Court precedent tells us that this is not supposed to be a difficult bar for plaintiffs to clear." *Peck v. McCann*, 43 F.4th 1116, 1133 (10th Cir. 2022).

The language of Section 1 creates a per se violation of the CCPA for advertising APR. The Attorney General argues that "although Plaintiffs have offered and advertised [APR], there is no evidence they have done so in a deceptive manner." AG's Mot. 18. But Section 1 unequivocally states that "[p]hysicians do not and cannot, without misleading them, tell their patients that it may be possible to reverse a medication abortion." SB 23-190 § 1(1)(g) (cleaned up). The chilling effect is "proscriptive … in nature," and Mrs. Mynyk is "presently … subject to the … proscription[]" that she is challenging. *Laird v. Tatum*, 408 U.S. 1, 11 (1972).

11

If the preliminary injunction is lifted, Mrs. Mynyk faces a credible threat that Section 1 may be enforced against her. The Attorney General relies on *Wisness v. Yocum* for the proposition that "an unenforced statute generally does not cause injury." 433 F.3d 727, 728 (10th Cir. 2006). But "[w]here a statute is recently enacted and is not moribund, its existence alone may create a threat that is credible enough to create standing." *Brown v. Herbert*, 850 F. Supp. 2d 1240, 1248 (D. Utah 2012); *see also Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) ("The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise. We conclude that plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them.").

The Attorney General further claims that Mrs. Mynyk's theory of standing is based on a "highly attenuated chain of possibilities." AG's Mot. 17 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)). Not so. All that need happen is for the Attorney General to enforce the CCPA against Mrs. Mynyk's current APR advertisements. The Attorney General admits that he "cannot broadly disavow his authority to take CCPA action based on deceptive conduct." AG's Mot. 20.

Mrs. Mynyk need not wait for an enforcement action before asserting her constitutional rights. *See Wyo. Gun Owners v. Gray*, 83 F.4th 1224, 1239 (10th Cir. 2023) ("We often see pre-enforcement challenges in the First Amendment context.").

12

### 3. Mrs. Mynyk's Section 1 claim is ripe.

A case or controversy is ripe if "the harm asserted has matured sufficiently to warrant judicial intervention." *Kan. Jud. Rev. v. Stout*, 519 F.3d 1107, 1116 (10th Cir. 2008). In the context of a First Amendment challenge, "ripeness analysis is 'relaxed somewhat' … because an unconstitutional law may chill free speech." *Id.* The Tenth Circuit applies a three-factor test in First Amendment cases: "(1) hardship to the parties by withholding review; (2) the chilling effect the challenged law may have on First Amendment liberties; and (3) fitness of the controversy for judicial review." *Stout*, 519 F.3d at 1116.

First, a party suffers hardship if the challenged law creates "a direct and immediate dilemma." *Id.* at 1117. Mrs. Mynyk plans to keep advertising APR. That violates the APR Ban. This is a direct and immediate dilemma. The Attorney General argues that Mrs. Mynyk faces no "direct and immediate dilemma" because he "will not bring a CCPA action under SB 23-190's uncodified legislative declaration." AG's Mot. 27. But an "immediate threat of prosecution" is "not necessary to ripen the claim." *Stout*, 519 F.3d at 1116. And again, the Attorney General has not disclaimed enforcement of the CCPA against APR ads.

Second, the statute has a chilling effect on Mrs. Mynyk's speech. SB 23-190 forced Mrs. Mynyk to remove APR information from her website. Intervenor's Compl. ¶ 117. She resumed publicizing APR when SB 23-190 was enjoined, Mynyk Decl. ¶ 28, but she will have to remove it or face prosecution if that injunction is lifted.

Finally, this case is appropriate for judicial resolution. "[A] first amendment challenge to the facial validity of a statute is a strictly legal question; it does not

13

involve the application of the statute in a specific factual setting." *Stout*, 519 F.3d at
1118 (cleaned up). So there is no need to wait until the Attorney General
investigates Mrs. Mynyk. This case is ripe for decision now.

**B. SB 23-190 restricts Mrs. Mynyk's protected speech.**

"Speech is not unprotected merely because it is uttered by 'professionals.'"
*NIFLA*, 585 U.S. at 767. Instead, the Court "has afforded less protection for
professional speech in two circumstances" that don't apply here: (1) "laws that
require professionals to disclose factual, noncontroversial information in their
commercial speech" and (2) "regulat[ions] of professional conduct." *Id.* at 768.

**1. Section 1 regulates Mrs. Mynyk's non-commercial speech.**

The Attorney General relies on a commercial speech case, *Cent. Hudson Gas
& Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980). But Mrs. Mynyk's
APR speech is not "related *solely* to the economic interests of the speaker and its
audience." *Id.* at 561 (emphasis added). It is uncontested that Mrs. Mynyk provides
all of her services, including APR, for free or at low cost. Mynyk Decl. ¶ 8. She is
"committed to providing the best possible care to all pregnant women," regardless of
their ability to pay. *Id.* ¶ 16. Mrs. Mynyk's speech about APR is motivated not by
profit, but by her religious belief that "all human life … is sacred from conception to
natural death." *Id.* ¶ 12. Nor do Mrs. Mynyk's patients seek information about APR
for economic reasons. *Id.* ¶ 25. Because Mrs. Mynyk's APR speech is unrelated to
any economic interests, it is not commercial speech and *Central Hudson*'s lower
level of scrutiny is inapplicable.

14

### 2.  Section 1 regulates speech, not conduct.

The Attorney General also suggests that Section 1 regulates deceptive conduct and that deceptive conduct is unprotected by the First Amendment. AG's Mot. 28–29. But the Supreme Court has long held that advertising is speech, not conduct. *See Central Hudson*, 447 U.S. at 567 (holding that even commercial advertising is protected speech under the First Amendment). And outside the commercial speech context, the Court has asserted that its "constitutional tradition stands against the idea that we need Oceania's Ministry of Truth." *United States v. Alvarez*, 567 U.S. 709, 722–23 (2012) (plurality).

### C.  Regardless, Section 1 fails even intermediate scrutiny.

The State does not contest that Section 1 is content- and viewpoint-based, which means strict scrutiny applies. *See Reed v. Town of Gilbert*, 576 U.S. 155, 165 (2015). But Section 1 fails even intermediate scrutiny, meaning that the restriction "must serve a substantial interest" and "be narrowly drawn," *Matal v. Tam*, 582 U.S. 218, 245 (2017) (cleaned up). The State has not argued that Section 1 is narrowly drawn to serve any substantial state interest. Indeed, the State has no interest in prohibiting Mrs. Mynyk's truthful speech advertising APR. And the State has not tried less restrictive alternatives before resulting to censorship. *NIFLA*, 585 U.S. at 775. Section 1 fails even intermediate scrutiny.

### III.  The State is not entitled to summary judgment on Mrs. Mynyk's vagueness claims.

Section 2 of SB 23-190 prohibits "any advertisement that indicates that the person provides abortions or emergency contraceptives … when the person knows or reasonably should have known … that the person does not provide those specific services." Colo. Rev. Stat. § 6-1-734(2). Because Mrs. Mynyk's Section 2 claim is

justiciable and because Section 2 is unconstitutionally vague, this Court should deny

summary judgment to the State on Section 2.

### A. Mrs. Mynyk has standing to challenge Section 2.

As with Section 1, the Attorney General refuses to disclaim enforcement of

Section 2. AG's Mot. 24. Instead, he argues that Mrs. Mynyk lacks standing to

challenge Section 2 because she does not advertise abortions or emergency

contraceptives. AG's Mot. 22. But Mrs. Mynyk does advertise "obstetrics care up to

20 weeks gestation." Mynyk Decl. ¶ 28. The Attorney General does not address

whether this advertisement might indicate that Mrs. Mynyk provides abortion or

emergency contraceptives before 20 weeks. Representative McCormick testified that

"[c]omprehensive reproductive care includes … access to contraception, emergency

… contraception … , [and] abortion or referral for abortion." House 3d Reading Tr.

2; ECF No. 94-12, Tr. of House Judiciary Hr'g on SB-23-190 at 2. The Attorney

General argues that this legislative history is irrelevant because the government is

not a "monolith." AG's Mot. 24 (citing *Murthy v. Missouri*, 603 U.S. 43, 69 (2024)).

But in *Murthy* there was no evidence that the challenged governmental pressure on

digital platforms to censor content was ongoing, and there was no facial challenge to

a statute like this case. 603 U.S. at 69. Courts regularly rely on legislative history to

interpret ambiguous statutes. *See McGraw v. Barnhart*, 450 F.3d 493, 499 (10th

Cir. 2006) ("If [a statutory] ambiguity is found, a court may seek guidance from

Congress's intent, a task aided by reviewing the legislative history. A court can also

resolve ambiguities by looking at the purpose behind the statute.").

The very idea of a vagueness challenge means that it is unclear whether the

statute applies to Mrs. Mynyk. A plaintiff has standing to bring a vagueness

challenge even where "there [i]s ambiguity as to whether the plaintiff[']s desired conduct [i]s actually covered by the challenged statute." *ConocoPhillips Co. v. Henry*, 520 F. Supp. 2d 1282, 1300 (N.D. Okla. 2007), *rev'd on other grounds sub. nom. Ramsey Winch, Inc. v. Henry*, 555 F.3d 1199 (10th Cir. 2009). The Attorney General relies on an out-of-circuit case to argue that this Court must resolve Mrs. Mynyk's vagueness claim before determining whether she has standing. AG's Mot. 23 (citing *Cruz v. Abbott*, 849 F.3d 594, 602 (5th Cir. 2017)). But the Tenth Circuit has held that courts "must resolve jurisdictional issues, such as … standing, before addressing the merits." *Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1, Logan Cnty., Okla. v. City of Guthrie*, 654 F.3d 1058, 1068–69 (10th Cir. 2011). Either way, this court can address Section 2's vagueness. Mrs. Mynyk's advertisements need not be clearly proscribed by Section 2 for the court to consider her vagueness challenge.

## B. Mrs. Mynyk's Section 2 claim is ripe.

Mrs. Mynyk's Section 2 claim is ripe for the same reasons her Section 1 claim is. *See supra* Part II.A.3. "[T]he arguable vagueness of a statute greatly militates in favor of finding an otherwise premature controversy to be ripe." *Stout*, 519 F.3d at 1118. And there is a presumption that a recently enacted statute will be enforced. *See Brown*, 850 F. Supp. 2d at 1248.

## C. Section 2 is unconstitutionally vague.

Reasonable people of ordinary intelligence may not know whether Mrs. Mynyk's advertisements stating that she provides obstetrics care up to 20 weeks "indicate[] that [she] provides abortions or emergency contraceptives." Colo. Rev. Stat. § 6-1-734(2). The State does not address this issue, instead focusing on Bella Health's advertisements. AG's Mot. 31–32. Relying on an out-of-circuit case, the

17

Attorney General argues that the word "indicate" is not unconstitutionally vague. *Id.* at 23, 32 (citing *Nat'l Fed'n of the Blind of Ark., Inc. v. Pryor*, 258 F.3d 851, 857 (8th Cir. 2001)). But *Pryor* was a facial vagueness challenge, 258 F.3d at 856, while Mrs. Mynyk brings both facial and as-applied vagueness claims. Intervenor's Compl. 52. Just because some advertisements clearly indicate that an entity does or does not provide abortions does not answer whether Mrs. Mynyk's advertisements might be interpreted to indicate that she offers abortions or emergency contraceptives. Section 2 is vague as applied to Mrs. Mynyk's advertisement that she provides obstetrics care up to 20 weeks.

## CONCLUSION

For these reasons, this Court should deny both the Attorney General's and the Boards' motions for summary judgment.

RESPECTFULLY SUBMITTED THIS 28th day of February 2025.


Gabriella McIntyre
Alliance Defending Freedom
444180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707-4655
gmcintyre@adflegal.org

*s/ Kevin H. Theriot*
Kevin H. Theriot
Julia C. Payne
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
ktheriot@adflegal.org
jpayne@adflegal.org


*Attorneys for Plaintiff-Intervenor Chelsea Mynyk*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 28th, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

_s/ Kevin H. Theriot_
Kevin H. Theriot

**CERTIFICATE OF WORD COUNT**

I hereby certify that the foregoing brief complies with LR 56.1(c). The foregoing

brief contains 4,892 words.

<u>*s/ Kevin H. Theriot*</u>
Kevin H. Theriot