# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| BELLA HEALTH AND WELLNESS, DENISE "DEDE" CHISM, ABBY SINNETT, and KATHLEEN SANDER, on behalf of themselves and their patients,<br><br>*Plaintiffs*,<br><br>CHELSEA M. MYNYK,<br><br>*Plaintiff-Intervenor,*<br>v.<br><br>PHIL WEISER, in his official capacity as Attorney General of Colorado; BERNARD JOSEPH FRANTA, LORI RAE HAMILTON, KARRIE TOMLIN, LENNY ROTHERMUND, KAREN HINOJOS, ALISSA M. SHELTON, PHYLLIS GRAHAM-DICKERSON, BRANDY VALDEZ MURPHY, DIANE REINHARD, NICHELE BRATTON, and AECIAN PENDLETON, in their official capacity as members of the Colorado State Board of Nursing,<br><br>*Defendants*. | **Case No. 1:23-cv-939-DDD-SBP**<br><br>**PLAINTIFF-INTERVENOR'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (ECF 179 FILED 1/31/2025)** |

# TABLE OF CONTENTS

Table Of Authorities ................................................................................................ ii

Introduction............................................................................................................... 1

Response To Defendants' Statement Of Facts ..................................................... 1

Argument................................................................................................................... 2

I.   Mrs. Mynyk is entitled to summary judgment on her religious
     liberty claim. ...................................................................................................... 2

     A.   Mrs. Mynyk's free exercise claim against the Attorney
          General is not barred by sovereign immunity. .............................. 2

     B.   Section 3 is not neutral and generally applicable. ......................... 3

     C.   Section 3 fails strict scrutiny. ........................................................... 6

II.  Mrs. Mynyk is entitled to summary judgment on her free speech
     claim. .................................................................................................................. 7

III. Mrs. Mynyk is entitled to summary judgment on her vagueness
     claim. .................................................................................................................. 9

Conclusion ............................................................................................................... 11

Certificate Of Service............................................................................................. 12

Certificate Of Word Count.................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*Board of Trustees of State University of New York v. Fox,*
  492 U.S. 469 (1989) ............................................................................................... 7

*Brown v. Entertainment Merchants Ass'n,*
  564 U.S. 786 (2011) ............................................................................................... 6

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,*
  447 U.S. 557 (1980) ............................................................................................... 9

*Chiles v. Salazar,*
  116 F.4th 1178 (10th Cir. 2024) ............................................................................ 4

*Chiles v. Salazar,*
   No. 24-539, 2025 WL 746313 (U.S. Mar. 10, 2025) ............................................ 4

*Cressman v. Thompson,*
  719 F.3d 1139 (10th Cir. 2013) ............................................................................ 3

*Darren Patterson Christian Academy v. Roy,*
  No. 1:23-cv-01557, 2025 WL 700628 (D. Colo. Feb. 24, 2025) .................... 5, 6

*First Resort, Inc. v. Herrera,*
  860 F.3d 1263 (2017) ............................................................................................ 7

*Fowler v. Stitt,*
  104 F.4th 770 (10th Cir. 2024) ............................................................................ 2

*Fulton v. City of Philadelphia,*
  593 U.S. 522 (2021) ............................................................................................... 4

*Hendrickson v. American Federation of State County & Municipal Employees
  Council 18,*
  992 F.3d 950 (10th Cir. 2021) ............................................................................ 2

*Lawrence v. Garland,*
  No. 23-cv-02199, 2024 WL 3022906 (D. Colo. Jan. 17, 2024) .................... 3

*Masterpiece Cakeshop v. Colorado Civil Rights Commission,*
  584 U.S. 617 (2018) ......................................................................................... 3, 4

*McCullen v. Coakley,*
  573 U.S. 464 (2014) ............................................................................................... 6

*Montgomery v. City of Ardmore,*
  365 F.3d 926 (10th Cir. 2004) ............................................................................ 3

*National Institute for Family and Life Advocates v. James,*
  746 F. Supp. 3d 100 (W.D.N.Y. 2024) ................................................................ 7

*National Institute of Family & Life Advocates v. Becerra*,
   585 U.S. 755 (2018) .................................................................................................. 6

*National Institute of Family and Life Advocates v. Clark*,
   737 F. Supp. 3d 246 (D. Vt. 2024) ............................................................................ 7

*Peck v. McCann*,
   43 F.4th 1116 (10th Cir. 2022) .................................................................................. 6

*Planned Parenthood of Kansas & Mid-Missouri v. Moser*,
   747 F.3d 814 (10th Cir. 2014) ................................................................................... 8

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) ................................................................................................... 8

*State Board of Medical Examiners v. McCroskey*,
   880 P.2d 1188 (Colo. 1994) ....................................................................................... 5

*United Blood Services, a Division of Blood Systems, Inc. v. Quintana*,
   827 P.2d 509 (Colo. 1992) ......................................................................................... 5

**Statutes**

Colo. Rev. Stat. § 12-255-119 ............................................................................... 1, 2

**Rules**

3 Colo. Code Regs. § 716-1:1.35 ................................................................................. 5

## INTRODUCTION

Defendants concede progesterone is safe and plausibly capable of reversing the effects of the abortion drug mifepristone. Given these concessions, it is not surprising that their opposition briefs fail to justify Colorado's religiously targeted ban on providing and advertising abortion pill reversal (APR). The Attorney General attempts to avoid the merits by asserting he is protected by sovereign immunity. That's wishful thinking. More than just "the Board's attorney," ECF 193, AG's Resp. 22, the Attorney General is required to "prosecute" those who violate SB 23-190's APR ban. Colo. Rev. Stat. § 12-255-119(4)(d). Because there is no genuine dispute of material fact and Mrs. Mynyk is entitled to judgment as a matter of law, this Court should grant her motion for summary judgment.

## RESPONSE TO DEFENDANTS' STATEMENT OF FACTS

Mrs. Mynyk adopts Bella Health's Reply to Undisputed Facts and Bella Health's Reply to Defendants' Responses to Plaintiffs' Statement of Undisputed Facts, including all exhibits cited.

Mrs. Mynyk does not dispute ¶¶ 6–7 of the Attorney General's Statement of Additional Facts, and she adopts Bella Health's responses to ¶¶ 1–5, including all exhibits cited.

Mrs. Mynyk does not dispute ¶¶ 65–66 of the Boards' Statement of Additional Facts, and she adopts Bella Health's responses to ¶¶ 1–3, 9–59, and 73–90, including all exhibits cited. Mrs. Mynyk does not respond to the allegations unique to Bella Health in ¶¶ 4–8, 60–64, and 67–71. Mrs. Mynyk disputes ¶ 72. She believes it is hard to establish causation for any medication, including mifepristone, because

1

## ARGUMENT[1]

### I.  Mrs. Mynyk is entitled to summary judgment on her religious liberty claim.

#### A. Mrs. Mynyk's free exercise claim against the Attorney General is not barred by sovereign immunity.

Mrs. Mynyk's "claims against [the Attorney General] related to enforcement of the … Nurse Practice Act" are not "barred by sovereign immunity," AG's Resp. 23, because he "has some connection with the enforcement of the challenged action." *Fowler v. Stitt*, 104 F.4th 770, 782 (10th Cir. 2024) (cleaned up). More than just "some connection," the Attorney General is required to "prosecute" complaints referred to him by the Colorado State Board of Nursing under Section 3. Colo. Rev. Stat. § 12-255-119(4)(d). Sovereign immunity does not apply.

The Attorney General argues that he hasn't "demonstrated" a "willingness to enforce that duty." AG's Resp. 24 (quoting *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021)). But if the Nursing Board refers a complaint under Section 3 to him, the statute requires him to prosecute it. *See* Colo. Rev. Stat. § 12-255-119(4)(d). The Nursing Board has already received a complaint about Mrs. Mynyk's provision of APR. ECF 179, Mynyk's Mot. 8; AG's Resp. 5. The only thing that prevents the Board from referring this complaint to the Attorney General is the

---

[1] In addition to these arguments Mrs. Mynyk joins and incorporates the Argument Section of Bella Health's reply, including cited exhibits, except for section I.E.

2

preliminary injunction in this case. Nor has the Attorney General ever disclaimed his legal duty to prosecute that complaint if it is so referred.

The cases cited by the Attorney General do not require otherwise. Unlike in *Montgomery v. City of Ardmore*, 365 F.3d 926, 940 (10th Cir. 2004), Mrs. Mynyk does not "lump the actions of all Defendants together." AG's Resp. 23. Instead, she specifically alleges that the Attorney General has the authority and duty to enforce complaints referred to him under Section 3. ECF 140, Mynyk's Compl. ¶ 37. Nor is this case like *Cressman v. Thompson*, in which the Tenth Circuit applied sovereign immunity to bar suit against a hearing officer who only had "the authority to interpret and administer a statute." 719 F.3d 1139, 1146 (10th Cir. 2013). The Attorney General's statutory role in enforcement of the statute is prosecutorial. And unlike the large-capacity magazine ban in *Lawrence v. Garland*, § 12-255-119 contains a "specific directive" that the Attorney General prosecute complaints referred to him by the Nursing Board. No. 23-cv-02199, 2024 WL 3022906, at *4 (D. Colo. Jan. 17, 2024). Because the Attorney General has enforcement authority over Section 3, sovereign immunity does not apply.

### B. Section 3 is not neutral and generally applicable.

Section 3 intentionally targets religious practice. The Boards rationalize this discrimination because the legislators did not "reference a specific religion, sect, or religious practice." ECF 196, Bds.' Resp. 54. But that was also true in *Masterpiece Cakeshop v. Colo. Civ. Rts. Comm'n*, 584 U.S. 617, 634-35 (2018), where the government officials generally referred to the defendant's "religion" and "religious beliefs." The legislators need not have singled out a specific religion for Mrs. Mynyk to establish a free exercise violation. *Chiles v. Salazar* does not require otherwise.

3

The Tenth Circuit held that "nothing in the record suggests the [challenged law]'s aim is to infringe or restrict practices because of their religious motivation." 116 F.4th 1178, 1223 (10th Cir. 2024), *cert. granted*, No. 24-539, 2025 WL 746313 (U.S. Mar. 10, 2025). But here the legislative record shows Section 3 was enacted to target faith-based organizations. *See* ECF 194, Mynyk's Resp. 6–7.

The Boards argue that Section 3 "targets medical practice, not religious conduct." Bds.' Resp. 53. But Mrs. Mynyk's prescribing APR as required by her beliefs is just as religious as becoming a certified foster family, *Fulton v. City of Phila.*, 593 U.S. 522, 530 (2021), or baking a cake, *Masterpiece,* 584 U.S. at 626. Far from "allow[ing] religiously motivated medical professionals to avoid regulation of virtually any medical practice," Bds.' Resp. 53–54, the religious medical professional must show that their beliefs are sincere (uncontested here), that the challenged law is not neutral and generally applicable, and that it fails strict scrutiny. *See Fulton*, 593 U.S. at 533.

Colorado's "asserted interest[]" in Section 3 is "prohibiting the use of an off-label and experimental treatment when it lacks scientific evidence of efficacy and safety for the pregnant person and the child that may result from the pregnancy." Bds.' Resp. 44. But other off-label, common, and unregulated uses of progesterone suffer from the same problems. For instance, many providers prescribe progesterone off-label during pregnancy to prevent miscarriage. ECF 184, Cohen Dep. 45:12–53:25. The State's expert criticized this practice for being off-label, experimental, and lacking sufficient evidence. *Id.* Yet it is not prohibited by Section 3 so long as the woman has not taken mifepristone.

4

The Boards next argue that "Colorado does regulate the use of progesterone and other off-label drugs in other contexts," citing general provisions governing unprofessional conduct. Bds.' Resp. 45. But none of these regulations single out particular uses of progesterone. And they would apply with equal force to APR, which undercuts the need for Section 3's specific ban.

Nor does Section 3 make APR "unprofessional conduct without exemption." Bds.' Resp. 49. The Nursing Board rule specifically states that the Board will review APR complaints on "a case-by-case basis. . . [because] [e]ach instance of nursing care will involve its own unique set of facts that the Board must evaluate against the backdrop of evidence-based practice standards." 3 Colo. Code Regs. § 716-1:1.35(D). That's not an objective test. In fact, that's no test at all. And the cases cited by the Boards confirm that they have "*discretion* to determine the generally accepted standard of medical practice" and are "accorded the authority to define the grounds for medical discipline on a case-by-case basis." *State Bd. of Med. Examiners v. McCroskey*, 880 P.2d 1188, 1195 (Colo. 1994); *see also United Blood Servs., Inc. v. Quintana*, 827 P.2d 509, 522 (Colo. 1992) (holding professional standards of care vary depending on "the particular circumstances of [a] case").

This system allows for individualized exemptions. "Where a law invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions, however, it is not generally applicable and strict scrutiny applies." *Darren Patterson Christian Academy v. Roy*, No. 1:23-cv-01557, 2025 WL 700628, at *5 (D. Colo. Feb. 24, 2025) (cleaned up). Finally, the fact that a "licensee can assert an as-applied constitutional challenge" if the Board disciplines her for providing APR, Bds.' Resp. 52, does not mean she cannot bring a

5

pre-enforcement facial challenge in federal court before being disciplined. *See Peck v. McCann*, 43 F.4th 1116, 1133 (10th Cir. 2022).

### C. Section 3 fails strict scrutiny.

Because Section 3 is not neutral and generally applicable, strict scrutiny applies. First, the Boards concede they could find no complaints about APR before SB 23-190's enactment, Bds.' Resp. 11–12, so there was no problem needing solving. *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 799 (2011).

Second, the Boards' "broadly formulated" interest in "regulating licensed medical professionals' conduct," Bds.' Resp. 55, does not "demonstrate why they have a compelling interest in denying an exception to Plaintiff." *Darren Patterson*, 2025 WL 700628, at *6 (D. Colo. Feb. 24, 2025) (cleaned up). The Boards have asserted no harm that would arise from allowing the Plaintiffs in this case to provide APR.

Third, Defendants do not even attempt to argue Section 3 is the least restrictive means of furthering the State's interest in regulating the medical profession. *McCullen v. Coakley*, 573 U.S. 464, 478 (2014). Colorado could have enacted a less restrictive law requiring specific information to be given to women considering APR, rather than banning the practice altogether. *See Nat'l Inst. of Family & Life Advoc. v. Becerra*, 585 U.S. 755, 770 (2018). Nor has the State articulated any rational basis for treating APR differently from other progesterone treatments for pregnant women. So Section 3 fails any level of scrutiny.

6

## II. Mrs. Mynyk is entitled to summary judgment on her free speech claim.

### A. Section 1 regulates Mrs. Mynyk's non-commercial speech.

Section 1 does not limit its application to commercial speech. It prohibits "providing or offering to provide or make available medication abortion reversal," whether commercial or not. ECF 94-8, SB 23-190 § 1(3)(b). And Mrs. Mynyk's speech about APR isn't commercial because she doesn't charge for her services. ECF No. 179-1, Mynyk Decl. ¶ 8. Her advertisements do not "propose a commercial transaction." *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 473 (1989).

The Attorney General relies heavily on *First Resort, Inc. v. Herrera*, an outlier, out-of-circuit case that held that "because [the plaintiff pregnancy centers] utilize advertising to maintain a patient base, which in turn can generate income, … [the centers] have an economic motivation for advertising their services." 860 F.3d 1263, 1273 (2017). But Defendant can't cite similar facts here. Mrs. Mynyk is a medical professional who doesn't charge for her APR services, so she receives no economic benefit from advertising it. Mynyk Decl. ¶ 8.

Two other federal district courts recently held that speech like Mrs. Mynyk's is not commercial. In *Nat'l Inst. for Fam. & Life Advoc. v. James*, the court held that pregnancy centers' speech advertising referrals for APR was not commercial because "[a]ll referrals for progesterone treatment … are offered free of charge." 746 F. Supp. 3d 100, 120 (W.D.N.Y. 2024) (cleaned up). Similarly, in *Nat'l Inst. of Fam. & Life Advoc. v. Clark*, the court explained that "it is difficult to categorize solicitations as 'proposed transactions' when the target audience is not charged." 737 F. Supp. 3d 246, 262 (D. Vt. 2024). Those cases show Mrs. Mynyk's speech

7

about her free APR treatment is not commercial and the Attorney General's attempt to distinguish them is futile.

### B. Section 1 is content- and viewpoint-based.

Section 1 is content-based since it "applies to particular speech because of the topic discussed," namely, APR. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). The Attorney General does not deny that Section 1 is content-based. He relies on his mischaracterization of Mrs. Mynyk's speech as commercial. And Section 1's legislative findings show that it is also viewpoint-based: "[p]hysicians do not, and cannot, without misleading them, tell their patients that it may be possible to reverse a medication abortion." SB 23-190 § 1(1)(g); *see also* Mynyk's Resp. 10–12. The Attorney General argues that "statements legislators made are immaterial to Plaintiffs' Free Speech Challenge." AG's Resp. 32 (citing *Planned Parenthood of Kan. & Mid-Mo. v. Moser*, 747 F.3d 814, 839–43 (10th Cir. 2014)). But unlike *Moser*, Section 1 is an "explicit restriction on speech," *id.* at 842, and viewpoint discrimination is evident from the enacted legislative declaration in the statute itself.

Finally, the Attorney General concedes that courts may "look to the statements of legislators for guidance as to the meaning of an unclear statute." AG's Resp. 33. Mrs. Mynyk's vagueness claim shows that is the case here.

Section 1 is subject to strict scrutiny because it prohibits speech expressing a specific viewpoint about APR. It cannot clear that high bar, as shown above.

### C. Section 1 fails even intermediate scrutiny.

The Attorney General argues that heightened scrutiny does not apply because Section 1 "regulates only commercial speech that is misleading, false, or

8

deceptive." AG's Resp. 27. But Section 1 prohibits *all* advertising for provision of APR, even if truthful. SB 23-190 § 1(3)(b).

Nor does Section 1 regulate professional conduct as the Attorney General suggests. AG's Resp. 28 n.9. Section 1 explicitly regulates *advertising*, SB 23-190 § 1(3)(b), which the Supreme Court has held is speech. *See Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 567 (1980). "Commercial speech is no exception" to the principle that "[t]he First Amendment requires heightened scrutiny whenever the government creates a regulation of speech because of disagreement with the message it conveys." *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 566 (2011) (cleaned up). So even if Section 1 only regulates commercial speech, it "must serve a substantial interest" and "be narrowly drawn." *Matal v. Tam*, 582 U.S. 218, 245 (2017) (cleaned up). The State does not even bother to argue that Section 1 survives intermediate or strict scrutiny, and as Mrs. Mynyk explained in her previous briefs, it does not. Mynyk's Mot. 17–18; Mynyk's Resp. 15.

### III. Mrs. Mynyk is entitled to summary judgment on her vagueness claim.

Section 2 is unconstitutionally vague because reasonable people of ordinary intelligence may not know whether Mrs. Mynyk's advertisement of "obstetrics care up to 20 weeks," Mynyk Mot. 3, suggests that she provides abortion or emergency contraceptives or referrals for abortion or emergency contraceptives. The Attorney General has not responded to this argument, instead claiming that he "cannot disclaim whether advertisements do or do not constitute a deceptive trade practice in a vacuum." AG's Resp. 37.

9

The Attorney General relies on an out-of-circuit case defining "indicate" as "to show or make known with a fair degree of certainty" or "reveal in a fairly clear way." *Id.* at 35 (citing *Nat'l Fed'n of the Blind of Ark., Inc. v. Pryor*, 258 F.3d 851, 857 (8th Cir. 2001)). But in *Pryor*, the attorney general had issued an authoritative and "reasonable interpretation" of the challenged provision, thus "provid[ing] relevant assurance that the statute will not be subject to arbitrary and discriminatory enforcement." 258 F.3d at 857. The Attorney General has offered no such interpretive guidance here. And the legislative history suggests that Mrs. Mynyk's advertisements could be interpreted to suggest that she provides abortion or emergency contraception. Representative McCormick claimed that "[c]omprehensive reproductive care includes [] access to contraception, emergency contraception, … abortion [and] referral for abortion." ECF 180, Bella Health's Mot. ¶ 119. The statute's failure to define "indicate" "encourages arbitrary and discriminatory enforcement." *United States v. Lesh*, 107 F.4th 1239, 1247 (10th Cir. 2024) (cleaned up).

Mrs. Mynyk is entitled to summary judgment on her vagueness claim.

## CONCLUSION

For these reasons, this Court should grant summary judgment to Mrs. Mynyk and make its preliminary injunction permanent.

RESPECTFULLY SUBMITTED THIS 21st day of March, 2025.

|  |  |
|---|---|
| Gabriella McIntyre | *s/ Kevin H. Theriot* |
| Alliance Defending Freedom | Kevin H. Theriot |
| 444180 Riverside Pkwy | Julia C. Payne |
| Lansdowne, VA 20176 | Alliance Defending Freedom |
| (571) 707-4655 | 15100 N. 90th Street |
| gmcintyre@adflegal.org | Scottsdale, AZ 85260 |
|  | (480) 444-0020 |
|  | ktheriot@adflegal.org |
|  | jpayne@adflegal.org |

*Attorneys for Plaintiff-Intervenor Chelsea Mynyk*

11

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 21, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                                *s/ Kevin H. Theriot*
                                                Kevin H. Theriot

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing brief complies with LR 56.1(c). The foregoing brief contains 2,697 words.

*s/ Kevin H. Theriot*
Kevin H. Theriot
